JS 44 CAND (Rev. 02/11)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

ALI ASGHARI, individually, and on behalf of a class of similarly situated individuals

**DEFENDANTS**

VOLKSWAGEN GROUP OF AMERICA, INC., VOLKSWAGEN AG, AND AUDI AG

**(b)** County of Residence of First Listed Plaintiff   Los Angeles, CA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Fairfax, VA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Neda Roshanian (SBN 225337); Michael Coats (SBN 258941);
Law Offices of Mark Yablonovich;
1875 Century Park E., Ste. 700, Los Angeles, CA 90067; 310-286-0246

Attorneys *(If Known)*

12-2177 JSL

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☒ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | (Prisoner Petition) | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
USC § 2301, CA CLRA § 1750, CA Comm. Code § 2313, CA B&P Code § 17200, NY CPDAP Act § 349

Brief description of cause:
Class Action for violation of consumer protection statutes.

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**
Exceeds $ 5,000,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE   Donna M. Ryu          DOCKET NUMBER   4:12-cv-01156-DMR

## IX. DIVISIONAL ASSIGNMENT (Civil L.R. 3-2)
*(Place an "X" in One Box Only)*

☒ SAN FRANCISCO/OAKLAND   ☐ SAN JOSE   ☐ EUREKA

DATE   05/01/2012          SIGNATURE OF ATTORNEY OF RECORD

FILED BY FAX

1  LAW OFFICES OF MARK YABLONOVICH
   Neda Roshanian, Esq., SBN 225337
2  neda@yablonovichlaw.com
   Michael Coats, Esq., SBN 258941
3  michael@yablonovichlaw.com
   1875 Century Park East, Suite 700
4  Los Angeles, California 90067-2508
   Telephone: (310) 286-0246 • Fax: (310) 407-5391
5
6  Attorneys for Plaintiff Ali Asghari

7

8                    UNITED STATES DISTRICT COURT

9       NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

10                                          Case No.:

11  ALI ASGHARI, individually, and on       **CLASS ACTION COMPLAINT**
    behalf of a class of similarly situated  **FOR:**
12  individuals,
                                            (1)  **Violations Of California**
13              Plaintiff,                        **Consumer Legal Remedies Act;**
                                            (2)  **Violations Of Unfair Business**
14          vs.                                   **Practices Act;**
                                            (3)  **Violation Of New York**
15  VOLKSWAGEN GROUP OF                          **Consumer Protection From**
    AMERICA, INC., VOLKSWAGEN                    **Deceptive Acts And Practices**
16  AG, AND AUDI AG,                             **Act;**
                                            (4)  **Violation Of Magnuson-Moss**
17              Defendant.                        **Warranty Act;**
                                            (5)  **Breach Of Express Warranty**
18                                               **under Cal. Com. Code § 2313;**
                                                 **and**
19                                          (6)  **Violations of Express Warranty**
                                                 **Pursuant to N.Y. U.C.C. Law**
20                                               **§§ 2-31.3**

21                                          **JURY TRIAL DEMANDED**

22

23

24

25

26

27

28

                          CLASS ACTION COMPLAINT

INTRODUCTION

1.     Plaintiff ALI ASGHARI ("Plaintiff") brings this action individually and on behalf of all similarly situated persons ("Class Members") who purchased or leased certain defective Volkswagen or Audi vehicles that were designed, manufactured, distributed, marketed, sold, and leased by Defendants, Volkswagen Group of America, Inc., Volkswagen AG, and Audi AG (collectively "Volkswagen" or "Defendants").

2.     Defendants designed, manufactured, distributed, marketed, sold, and leased vehicles equipped with 2.0-liter turbocharged engines ("Class Vehicles" or "Vehicles")[1] to Plaintiff and Class Members.

3.     Defendants knew or should have known that the Class Vehicles contain one or more design and/or manufacturing defects, including but not limited to defects contained in the Class Vehicles' engine that cause it to consume abnormally high rates of oil (the "excessive oil consumption defect.")

4.     Motor oil functions as an essential lubricant for the moving parts in internal combustion engines.  The oil creates a film separating surfaces of adjacent moving parts to minimize direct contact, thereby decreasing heat caused by friction and reducing wear.  Motor oil also has important cleaning and sealing functions, and serves as an important medium for dissipating heat throughout the engine.

5.     The excessive oil consumption defect causes excessive amount of oil to be consumed within the engine.   In the Class Vehicles, the rate of consumption is as high as one (1) quart of oil per 500 miles driven for some Class Members. The excessive oil consumption defect thus requires the addition

---

[1] The Class Vehicles are any 2007 through 2012 model year Audi or Volkswagen vehicles equipped with a 2.0 liter turbocharged engine. On information and belief, these vehicles include, but are not limited to, the following Audi models: TT, A3, A4, A5, A5 Cabrio, A6, and Q6; and the following Volkswagen models: GTI, GLI, Tiguan, EOS, Passsat/CC, and Jetta.

LAW OFFICES OF
MARK YABLONOVICH
LOS ANGELES

1  of substantial amounts of oil between maintenance scheduled oil changes and
2  can result in engine damage.

3       6.     The oil consumption defect is a safety concern because it prevents
4  the engine from maintaining the proper level of engine oil, and causes
5  voluminous oil consumption that cannot be reasonably anticipated or predicted.
6  Therefore, this excessive oil consumption defect is unreasonably dangerous
7  because it can cause engine failure while the Class Vehicles are in operation at
8  any time and under any driving conditions or speeds, thereby exposing the Class
9  Vehicle drivers, their passengers and others who share the road with them to
10 serious risk of accidents and injury.

11      7.     Prior to purchasing the Class Vehicles, Plaintiff and other Class
12 Members did not know that the Class Vehicles suffered from an excessive oil
13 consumption defect and did not contemplate that the Class Vehicles' engines
14 would be unable to prevent substantial amounts of oil from being consumed due
15 to defects contained therein and thereby requiring costly supplemental oil to be
16 added between scheduled oil changes, as well as other related repairs that can
17 cost hundreds to thousands of dollars.

18      8.     Plaintiff is informed and believes and based thereon alleges that
19 Defendants knew or should have known that the Class Vehicles are defective and
20 suffer from the excessive oil consumption defect and are not fit for their intended
21 purpose of providing consumers with safe and reliable transportation.
22 Nevertheless, Defendants have actively concealed and failed to disclose this
23 defect from Plaintiff and the Class Members at the time of purchase or lease and
24 thereafter.

25      9.     Defendants knew and concealed the excessive oil consumption
26 defect that is contained in every Class Vehicle, along with the attendant
27 dangerous safety problems and associated costs, from Plaintiff and Class
28 Members at the time of sale and thereafter. This undisclosed defect has caused

LAW OFFICES OF
MARK YABLONOVICH
LOS ANGELES

1    Plaintiff and prospective class members to experience the excessive oil
2    consumption defect throughout the life of the Class Vehicles, which includes use
3    within the warranty period. Had Plaintiff and the Class Members known about
4    this defect at the time of sale or lease, as well as the associated costs related to
5    this defect, Plaintiff and the Class Members would not have purchased the Class
6    Vehicles or would have paid less for them.

7        10.    As a result of their reliance on Defendants' omissions and/or
8    misrepresentation, owners and/or lessees of the Class Vehicles have suffered
9    ascertainable loss of money, property, and/or loss in value of their Class
10   Vehicles.

11                              PARTIES

12   **PLAINTIFF ALI ASGHARI**:

13       11.    Plaintiff ALI ASGHARI is a California citizen who lives in Los
14   Angeles, California. Mr. Asghari leased a new 2010 Audi A5 from Audi dealer,
15   Atlantic Imports, Inc., d.b.a. Atlantic Audi West, in West Islip, New York, on
16   December 29, 2009. Mr. Asghari purchased this vehicle primarily for his
17   personal, family, or household purposes. This vehicle was designed,
18   manufactured, sold, distributed, advertised, marketed, and warranted by
19   Volkswagen.

20       12.    Plaintiff on several occasions has paid out of pocket to add
21   supplemental oil between oil changes.

22       13.    On or around September 7, 2010, with approximately 8,887 miles
23   on the odometer, Plaintiff visited Audi dealer, Santa Monica Audi, informing the
24   dealer that he had to add oil when the oil light came on.

25       14.    On or around August 15, 2011, with approximately 20,116 miles on
26   the odometer, Plaintiff returned to the Audi dealer complaining of excessive oil
27   consumption. In response, the dealer conducted an "oil consumption test" on
28   Plaintiff's vehicle and verified Plaintiff's excessive oil consumption concerns.

MARK Y. ABLONOVICH
LAW OFFICES OF
LOS ANGELES

Page 3

1    15.    Specifically, the dealer found that Plaintiff's vehicle was consuming
2 0.76 quarts per 1,000 miles driven (or approximately (1) quart per 1300-1400
3 miles) and as a result kept Plaintiff's vehicle over a two week period to conduct
4 engine repairs.

5    16.    At all times, Plaintiff, like all Class Members, has driven his
6 vehicle in a foreseeable manner and in the manner in which it was intended to be
7 used.

8 **Defendants**:

9    17.    Volkswagen Group of America, Inc. is a corporation organized and
10 in existence under the laws of the State of New Jersey and registered with the
11 California Department of Corporations to conduct business in California. At all
12 times relevant herein, Volkswagen Group of America, Inc. was engaged in the
13 business of designing, manufacturing, constructing, assembling, marketing,
14 distributing, and selling automobiles and other motor vehicles and motor vehicle
15 components in California and throughout the United States of America.

16    18.    Volkswagen AG is a foreign corporation headquartered at Berliner
17 Ring 2 38440 Wolfsburg, Federal Republic of Germany. At all relevant times,
18 Volkswagen AG took part in designing, engineering, manufacturing, testing,
19 marketing, supplying, selling, and distributing motor vehicles, including Class
20 Vehicles, in San Francisco County, California, and throughout the United States
21 of America. Through its wholly owned subsidiaries and agents, Volkswagen AG
22 markets its products in a continuous manner in the United States, including
23 California. Volkswagen AG maintains a Detroit Office and a Volkswagen AG
24 Investor Relations office in Herndon, Virginia.

25    19.    Audi AG is a foreign corporation located at Auto-Union-Str. 2 D-
26 85045, Ingolstadt, Germany. At all relevant times, Audi AG took part in
27 designing, engineering, manufacturing, testing, marketing, supplying, selling,
28 and distributing motor vehicles, including Class Vehicles, in San Francisco

LAW OFFICES OF
MARK YABLONOVICH
LOS ANGELES

1   County, California, and throughout the United States of America. Through its

2   subsidiary, Audi of America, LLC, Audi AG markets its products in a

3   continuous manner in the United States, including California. Audi of America,

4   LLC is the entity through which Audi AG sells Audi Vehicles in the United

5   States. Audi AG maintains its principle place of business in Herndon, Virginia.

6                                JURISDICTION

7        20.   This is a class action.

8        21.   Members of the Proposed Class are citizens of states different from

9   the home states of Defendants.

10       22.   On information and belief, aggregate claims of individual Class

11   Members exceed $5,000,000.00, exclusive of interests and costs.

12       23.   Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

13                                  VENUE

14       24.   Volkswagen, through its business of distributing, selling, and

15   leasing the Class Vehicles, has established sufficient contacts in this district such

16   that personal jurisdiction is appropriate. Defendant is deemed to reside in this

17   district pursuant to 28 U.S.C. § 1391. Plaintiff's counsel's Declaration, as

18   required under California Civil Code section 1780 (d) is also attached as Exhibit

19   1.

20       25.   Venue is proper in this District under 28 U.S.C. § 1391 (a).

21                    FACTUAL ALLEGATIONS

22       26.   For years, Volkswagen has designed, manufactured, distributed,

23   sold, and leased the Class Vehicles. Upon information and belief, it has sold,

24   directly or indirectly through dealers and other retail outlets, hundreds of

25   thousands of Class Vehicles nationwide.

26       27.   The Class Vehicles contain one or more design and/or

27   manufacturing defects, including but not limited to defects contained in the Class

28   Vehicles' engines that cause them to experience abnormally high rates of oil

LAW OFFICES OF
MARK YABLONOVICH
LOS ANGELES

1    consumption (the "excessive oil consumption defect.")

2      28.    Plaintiff is informed and believes and based thereon alleges that
3 Volkswagen acquired its knowledge of the excessive oil consumption defect
4 through sources not available to Class Members, including but not limited to pre-
5 release testing data, early consumer complaints about the excessive oil
6 consumption to Defendant and its dealers about the Class Vehicles as well as
7 other earlier model year versions of such vehicles, testing conducted in response
8 to those complaints, aggregate data from Volkswagen's dealers, and from other
9 internal sources.

10      29.    Volkswagen has a duty to disclose the excessive oil consumption
11 defect and the associated out-of-pocket repair costs to Class Vehicles owners,
12 among other reasons, because the defect poses an unreasonable safety hazard;
13 because Volkswagen had and has exclusive knowledge or access to material
14 facts about the Class Vehicles and engines that were and are not known or
15 reasonably discoverable by Plaintiff and Class Members; and because
16 Volkswagen has actively concealed the excessive oil consumption defect from its
17 customers.

18      30.    Hundreds, if not thousands, of purchasers and lessees of the Class
19 Vehicles have experienced the excessive oil consumption defect. Complaints
20 filed by consumers with the NHTSA and posted on the Internet demonstrate that
21 the defect is widespread. The complaints also indicate Volkswagen's awareness
22 of the defect and its potential danger (note that spelling and grammar mistakes
23 remain as found in the original):

24      • NHTSA Complaint: [2007 AUDI A4] AFTER
LEASING THE CAR 2 MONTHS LATER I HAD
25      TO ADD OIL TO IT. THE ENGINE BURNS OIL
LIKE CRAZY. 1 QUART OF OIL PER MONTH
26      TO MONTH AND A HALF. THE ENGINE OIL
WARNING LIGHT HAS COME SEVERAL TIMES
27      CAUSING ME TO PULL OFF THE ROAD INTO
THE CLOSEST GAS STATION TO BUY SOME
28      OIL. DEPENDING OF WHEN IT HAPPENS, THIS

LAW OFFICES OF
MARK YABLONOVICH
LOS ANGELES

LAW OFFICES OF
MARK Y. ABLONOVICH
LOS ANGELES

HAS BEEN SOMEWHAT STRESSFUL. I HAVE BEEN TOLD THIS IS NORMAL. I DO NOT THINK SO. IF THEY HAD TOLD ME THIS, I WOULD NOT HAVE LEASED THIS CAR! *TR

- NHTSA Complaint: [2009 AUDI A4] THIS AUDI WAS A LEMON FROM THE START AND BOTCHED REPAIRS AT THE DEALER HAVE ONLY MADE IT WORSE. ONE THE 2ND DAY WE OWNED THE CAR THE OIL LIGHT CAME ON AND WE HAD TO RETURN IT TO THE DEALER FOR MORE OIL. OVER THE NEXT 2 YEARS THE CAR BURNED AN EXCESSIVE AMOUNT OF OIL STARTING AT 1 QRT EVERY 2500 MILES AND DETERIORATING TO 1 QRT EVERY 800 MILES. ALL ALONG THE DEALER TOLD US THIS WAS "NORMAL". IN MAY 2011, DEALER TOLD US THAT AUDI HAD INITIATED A TESTING PROGRAM AND IF THE CAR FAILED THEY WOULD DO SOMETHING. IN JUNE 2011, THE CAR FAILED TEST AND THE DEALER KEPT THE CAR FOR 3+ WEEKS CONDUCTING MAJOR ENGINE SURGERY.

- NHTSA Complaint: I RECENTLY PURCHASED A 2008 AUDI A4 2.0 WITH APPROXIMATELY 37,000 MILES ON IT. I'VE DRIVEN THE CAR LESS THAN 3000 MILES AND HAD TO ADD 1 QUART OF OIL EVERY MONTH OF OWNERSHIP (3). AUDI DEALERSHIP SAYS THIS IS NORMAL. LIKE THE PREVIOUS COMPLAINT LISTED ON THIS TOPIC, I TOO HAVE SEE A NUMBER OF BLOGS ON THE SUBJECT OF THE 2008 A4'S HAVING ISSUES WITH EXCESSIVE OIL CONSUMPTION. I'VE ALSO SEEN MENTION OF A TECHNICAL SERVICE BULLETIN BEING ISSUED BY AUDI ON THIS BUT I'VE YET TO FIND IT. *TR

- NHTSA Complaint: I PURCHASED THE A4 USED WITH ONLY 19K MILES ON IT. I NOTICED THAT AFTER DRIVING 1,000 MILES, 1 QUART OF OIL WAS GONE. I FILLED IT BACK UP AND DROVE ANOTHER 1,000 MILES. THE SAME THING. I HAVE A FAMILY RELATIVE WHO OWNS A VW PASSAT WITH THE SAME ENGINE AND HER CAR BURNED OIL TOO. AUDI SAYS THAT THIS IS A COMMON PROBLEM AND THAT IT'S SOMETHING THE OWNER WILL HAVE TO GET USED TO. THIS IS NOT NORMAL, SOMETHING IS WRONG WITH THE ENGINES. THERE ARE SO MANY FORUMS AND SITES DEDICATED TO THE VW/AUDI 2.0T ENGINES CONSUMING OIL. *KB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
MARK YABLONOVICH
LOS ANGELES

- NHTSA Complaint: PURCHASED 2008 AUDI A4 NEW FROM DEALERSHIP IN OCTOBER 2007. TWO MONTHS AFTER PURCHASE, NOTICE OIL CONSUMPTION PROBLEM AT 1QT EVERY 1,000 MILES. DEALERSHIP SAYS THIS IS NORMAL BUT MY MECHANIC SAID IT IS NOT. WITH THE HELP OF A PRO-BONO ATTORNEY, CONTACTED AUDI AND DEMANDED REPAIR AT 12,000 MILES. AUDI REPLACED RINGS AND CAR WAS FINE FOR 24,000 MILES. AT 36,000 MILES, LOW OIL LIGHT CAME ON - 1 QT LOW AGAIN. HAD OIL CHANGED BY MY MECHANIC AND TWO DAYS LATER A NEW PROBLEM - LOW OIL PRESSURE LIGHT COMES ON. HAD CAR TOWED TO DEALERSHIP AND THEY FOUND NOTHING WRONG WITH CAR (NO CODES, DRIVES FINE). I DEMAND THROUGH AUDI AN OIL PRESSURE TEST. TEST CAME BACK NORMAL. THEY TOLD ME TO DRIVE THE CAR AND THAT THERE IS NOTHING WRONG WITH IT. THE LOW OIL PRESSURE LIGHT IS STILL COMING ON EVERY 20 MINUTES OF DRIVING. THE CAR GOES BACK IN THE SHOP AGAIN THIS WEEK. CAR IS OBVIOUSLY DEFECTIVE AND I AM CONCERNED ABOUT MAJOR ENGINE DAMAGE. *TR

- NHTSA Complaint: VW PASSAT 2008, LOW OIL LIGHT COME ON BEFORE SCHEDULE OIL CHANGE FREQUENTLY. THE CAR BURNS OIL BECAUSE OF THE TURBO ENGINE. AND THE EMISSION SYSTEM HAS A VALVE FAILURE TOO. *TR

- NHTSA Complaint: MY '08 PASSAT WITH A 2.0 T ENGINE BURNS THROUGH A GREAT DEAL OF OIL. ABOUT 1/2 LITER PER 1,000 MILES. IT IS A NEW CAR (NOW 28,000 MILES) AND SHOULD NOT BURN OIL! VW STATES THIS OIL CONSUMPTION IS NORMAL, BUT I DISAGREE. I LEASE THE CAR AND HAVE HAD ALL MAINTENANCE DONE AT THE DEALER. I MUST FREQUENTLY ADD OIL TO THE ENGINE AND HAVE BROUGHT IT IN TO BE SERVICED FOR THIS OIL CONSUMPTION ISSUE SEVERAL TIMES. FROM RESEARCH DONE ONLINE, THIS IS NOT A PROBLEM UNIQUE TO ME. PLEASE HELP! *TR

- NHTSA Complaint: [2008 VW PASSAT] OWNED THE CAR FOR 9 MONTHS . . . CAR BURNS EXCESSIVE OIL. NEED TO ADD OIL BETWEEN SCHEDULED OIL CHANGES. IN APRIL 2010, OIL PRESSURE LIGHT CAME ON. DEALER

Page 8

ADDED 2 QTS OF OIL AND TANK WAS STILL NOT FULL. STILL HAD 1,000 MILES TO GO BEFORE NEXT SCHEDULED OIL CHANGE. HAVE HAD OIL ADDED ON TWO OTHER OCCASIONS BETWEEN OIL CHANGES. 4. CAR IS SLUGGISH, ESPECIALLY WHEN GOING UP HILLS. NO RESPONSE OR RESOLUTION FOR THIS, BUT THE CAR HAS A TURBO ENGINE NOTE: THIS CAR HAS ONLY BEEN SERVICED BY VW DEALERSHIPS. *TR

- NHTSA Complaint: [2008 VW GTI] THE ENGINE CONSUMES 3-4 EXTRA QUARTS OF SYNTHETIC OIL BETWEEN 5,000 MILE OIL CHANGE INTERVALS AS INSTRUCTED BY MANUFACTURER. ITS A 2.0T ENGINE THAT USES SYNTHETIC OIL. I HAD PREVIOUS VERSION OF 1.8T AND IT DID NOT CONSUME ANY OIL AT ALL. IF THE OIL IS NOT ADDED, THE CAR WOULD TAKE 2-3 TIMES TO START UP (DOESN'T MATTER WHICH SEASON) AND ITS HORRIBLE ON GAS MILEAGE. WENT TO DEALERSHIP 5 TIMES ALREADY AND EVERY TIME THEY TELL ME THAT THIS IS NORMAL CONSUMPTION. I INFORMED THAT I HAVE TO ADD OIL TO KEEP THE CAR GOING, THEY TOLD ME THAT ITS NOT THEIR PROBLEM UNTIL THE ENGINE CEASES AT WHICH TIME THEY WILL LOOK INTO IT. AS A CONSUMER, I HAVE NO CHOICE BUT TO KEEP ON ADDING THE SYNTHETIC OIL. I THOUGHT THAT SYNTHETIC OIL IS HARD TO BREAK DOWN AND YES I USED THE RECOMMENDED GRADE. VW IS TAKING ME FOR A RIDE. DOES ANYBODY HAVE ANY SUGGESTIONS? *TR

- NHTSA Complaint: I HAVE AN AUDI A4 2007 . . . . . THIS CAR BURNS OIL THROUGH EVERY 1200-1500 MILES. AUDI IS AWARE OF THIS PROBLE . . . . I AM NOT THE ONLY ONE WHO HAS HAD THE SAME ISSUES. THIS YEAR OF CAR IS UNSAFE, AND SHOULD BE RECALLED TO FIX THE OIL CONSUMPTION ISSUES BEFORE THE DAMAGE OCCURS TO THE ENGINES. *TR

- NHTSA Complaint: [2007 AUDI A4] SINCE I BOUGHT MY AUDI, I HAVE HAD TO PUT OIL IN IT MANY TIMES, AND HAVE BEEN TOLD THIS IS NORMAL FOR A TURBO. I THINK THAT IS CRAZY, AND EVEN AN AUDI SERVICE MAN TOLD ME NOT ALL OF THE TURBOS DO THAT. I HAVE ALSO HAD AN ISSUE WITH THE CAR SEEMING TO LOSE POWER AND JERK ABOUT TWICE A MONTH

LAW OFFICES OF
MARK YABLONOVICH
LOS ANGELES

WHEN I AM USUALLY AROUND 70 MPH. IT'S ALMOST AS IF THE IGNITION IS TURNED OFF FOR 1 SECOND, THEN IT ACTS FINE. THIS IS VERY STARTLING WHEN IT HAPPENS. *TR

- Online Complaint: I have a 2008 Audi A4 with oil consumption problems. It burns one quart of oil every 1,000 miles. The dealer said that this is a common problem and it has no solution. They said that I would have to get used to it. This is extremely common in the 2.0T engines throughout Audi and VW.

There are many websites and forums dedicated to this topic. Audi needs to issue a recall.

- Online Complaint: I bought an Audi A5 in march 2011, 2 ltr TSFI petrol model. Yes, this drinks oil like nothing. So far it has done only 2000 miles and had to top up the oil for 4 times...which is nearly 4 lts. This is way above their specifications. They changed the crank valve but still the problem exists. Audi admits that there is a problem with TFSI 2 ltr petrol engines. But they dont' admit that there is a problem in my car.....I know one dealer in UK went to the extent of exchanging the vehicle and replaced with a brand new one again. Another, they kept on sending oil cans to their resident for replacements. All these shows that there is a problem with these engines.

Clever thing they do is, they do the oil test and say its within your specifications. They never admit until your warrenty period is over. I think this is a world wide issue as mine is UK base. You need to push audi dealer to do somehting about it or contact your solicitors. Its no joke....there is a problem in these engines and its your money!!

- Online Complaint: I bought an Audi 3 in July 2010. After only a few months, I already noticed a problem with the oil. There was always a red warning light. After referring the problem to Germany, they replaced all the piston rings and engine gasket. They have also replaced the battery, and recently, the ignition switch, because the car would not start after several attempts.

It was very embarrassing to have an Audi, which only over a year old, to be towed because it won't start. With all these abnormal malfunctions in a 16 month old car, it is obviously a lemon. Of course, the car dealer would not admit that it is defective. I am demanding a replacement, but they refused. I was informed that the 2-year warranty covers only parts and service, but not replacement . It is totally

LAW OFFICES OF
MARK YABLONOVICH
LOS ANGELES

disappointing to have a car that claims to have high end technology, but would not start! Is there no manufacturer's warranty from Audi? I no longer want to use a car that can compromise my safety!

- Online Complaint: I purchased a 2007 Audi A4 2.0 Turbo in May of this year with 40k miles on it. Vet checked clean. The oil light has come on several times, I had it checked by Audi and was told "The car is within spec to burn 1 qt per 1,000 miles". I replaced the battery and now fighting with the tail light.

- Online Complaint: I have had repeated mechanical problems with my 2009 Audi A-4 from the inception of the lease. . . . I need to monthly have my oil "topped" off, and I am being inconvenienced by having to drive to the dealership monthly, to have oil put into the vehicle. That is very frustrating, and I am putting unnecessary mileage on my vehicle, just to have it the oil level maintained at the proper level.

- Online Complaint: We leased a 2008 Audi A4, I noticed that every 500-700 miles, I would have to add a quart of oil to it. I called Audi, and have taken it in several times for this issue, all to just be told that every Audi 2.0 turbo, would have to have oil added to it, there would be nothing anyone could do. I have had this vehicle at the dealership several times over this, and was constantly told to "stop by we will add oil to it" (that is not convenient at all.) Why should I have to have it constantly filled, its a 2008 "luxury" vehicle.

- Online Complaint: I purchased a 2010 Audi A4 on May 24, 2010 with 22 miles on it. I have had to return the vehicle to the dealer for a quart of oil at 1800 miles, 3100 miles, and again at 4300 miles. The dealer is telling me that it is within their specifications that the car burns 1 quart of oil every 1000 miles. The car is burning excessive oil and they want me to accept that as normal. When I know it really means early signs of more serious engine problems.

Audi markets this vehicle as not requiring an oil change but every 10,000 miles. It is contradictory to require oil every 1300 miles, but doesn't need an oil change but every 10,000 miles. I believe their marketing tactics are misleading. Based upon my driving pattern and the need for this vehicle to require a quart of oil every 1300 - 1800 I have to take it to the dealer 3 - 4 weeks (once a month) which poses as a great inconvenience. Additionally, I don't feel safe traveling long distances in the car because of the

Page 11

LAW OFFICES OF
MARK YABLONOVICH
LOS ANGELES

frequent replacement of oil. Not to mention the specialty oil that it requires.

- Online Complaint: I bought a demo A4 Audi in June 07 with 7,000 miles on it. Since I first had the card it burned a lot of oil. This is my third Audi I have owned and thought it was strange that about every 1,000 miles I had to add a quart of oil. First the Audi serviceman said 2,000 miles was normal. I began to keep record and this last time I went 1,673 miles and went through 3 quarts of oil which averages out to 557 miles per quart. I complained to the service department and they ordered an oil consumption test and found it burned 7/10 of a quart of oil for 1,000 miles which now they say is acceptable standards by Audi.

I own a Quaker State oil change and three of our technicians have said they never seen a car burn this much oil and claims there is a problem with the engine. Audi will not do anything about the problem. The other day driving the car it lost power going up a hill and the engine light flashed on then everything was ok. I am a 53 year old women on the road driving by myself afraid something will happened to the car. Is there any legal action I can take to help resolve this problem?

The econimic damage is that I paid $40,000 for a car that has an engine problem. I am fearful of driving the car especially when I have to drive out of state alone.

- Online Complaint: My 2008 Audi A4 burns oil at a rate of 1 quart per 1000 miles. I took it back to Tischer Audi three times after the oil pressure warning indicator came on at 6000, 10000 and 14000 miles. Each time they merely checked for leaks and reported that it was operating normally. On the third occasion Audi began a 2 part oil burn off test which involved adding a precise measure of oil and required that I return the car after 600 miles to complete the test. I returned the car as directed and after 8 days my Audi was returned to me with a finding that it had burned off 0.57 quarts of oil. Tischer Audi informed me that this was well within Audi specifications. Recently I expressed my feelings to Audi Customer Relations that this problem is indicative of poor workmanship and contrary to the advanced engineering that they advertise.

I'm dissappointed that Audi is selling a car with a problematic engine such as this that forces the owner to keep a watchful eye on the oil level in order to avoid a castrophe which should never be a concern.

Page 12

- Online Complaint: I purchased a brand new 2010 A6 2.0 T in Oct. 2009. I have had the car since then and encountered some odd problems in the past 3 to 6 months. Initially, the car used to burn the engine oil faster than usual since I would have to top up the oil level almost every month, which I found really weird. A few months ago, the car started to basically shake when I would barely be driving at 80 km per hour.

- Online Complaint: I've seen other posts regarding the excessive oil consumption issue and we have the [2006 Passat 2.0T] car in the shop (again) for another check. Our car has ~40K miles and has had this issue since new. We just keep adding oil, 2 quarts at a time when the emergency light goes on.

  They have performed oil consumption tests 2x and do not see any issues. However, this issue seems intermittent because we find that driving the car ~2000 miles can burn a few quarts of oil. There's no hint of oil in our driveway.

- Online Complaint: [2008 VW Jetta] I have had the exact same issues, 3 oil test, rings and seal replaced, same issue still, more test and a year later still waiting a response from VW. I use about 3 litres (quarts) of oil between changes and have even run out a couple of times. I love my car but am getting a little frustrated. The latest "wet & dry" test revealed nothing. At one point it was suggested a new engine, but if they all have the same issue what is the point. My car by the way is an 08' Jetta 2.0T.

- Online Complaint: My 2006 Passat 2.0T uses about 1 qt of oil every 1200-1500 miles. The dealer claims this is "normal". At over $7 per qt for synthetic oil, I don't consider it normal. It's no wonder they only require oil changes every 10K. By then, you've nearly replaced the oil twice.

  Does anyone know of a recall, class action suit, or fix for this.

- Online Complaint: [2008 VW EOS] Dropping a $100.00 every 2 months on a synthetic oil change for an 08 Eos is a little pricey. If you have to add a liter of oil every 1000 kilometers then the motor has a design flaw. Volkswagen should step up to the plate and make it right.

31.     When owners or lessees of Class Vehicles specifically complain to Volkswagen or its dealers about the excessive oil consumption problem, Volkswagen's policy is to deny that there is a known problem and to assert that

Page 13

1   losing as much as one (1) quart of oil per 1,000 miles driven is normal!

2       32.    Customers have reported the excessive oil consumption defect in the

3   Class Vehicles to Volkswagen directly and through its dealers. Defendants are

4   fully aware of the oil consumption defect contained in the Class Vehicles.

5   Despite this, Defendants have failed to disclose and actively concealed the

6   existence and nature of the defect from Plaintiff and the Class Members at the

7   time of purchase and thereafter. Specifically, Defendants have:

8           (a)    failed to disclose, at and after the time of purchase and

9                  thereafter, any and all known material defects or material

10                  nonconformities of the Class Vehicles, including the

11                  excessive oil consumption defect and, among others, the

12                  frequent supplemental oil costs between regularly scheduled

13                  oil changes;

14          (b)    failed to disclose at the time of purchase that the Class

15                  Vehicles and their engines were not in working order, were

16                  defective, and were not fit for their intended purpose; and

17          (c)    failed to disclose or actively concealed the fact that the Class

18                  Vehicles and their engines were defective, despite the fact that

19                  Defendants learned of such defects as early as, if not before,

20                  the first Class Vehicles were sold.

21      33.    Defendants have caused Plaintiff and Class Members to expend

22   money at its dealerships or other third-party repair facilities and/or take other

23   remedial measures related to the excessive oil consumption defect in the Class

24   Vehicles such as carrying containers of oil supply with them at all times.

25      34.    Defendants have not recalled the Class Vehicles to repair the

26   defective engines, and have not offered to reimburse Class Vehicle owners and

27   leaseholders who incurred costs relating to excessive oil consumption and related

28   problems.

Page 14

35.    Plaintiff and Class Members are reasonable consumers and do not expect their vehicles to require the addition of several quarts of oil between regularly scheduled oil changes.

36.    Plaintiff and Class Members expect and assume that Defendants will not sell or lease vehicles with known defects, such as the excessive oil consumption defect, and will disclose any such defects to its consumers before they purchase the Class Vehicles. They do not expect Defendants to fail to disclose the excessive oil consumption defect to them, or to continually deny the defect.

37.    Consequently, Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

38.    As a result of the oil consumption defect, the value of the Class Vehicles has diminished, including without limitation the resale value of the Class Vehicles.

## TOLLING OF THE STATUTE OF LIMITATIONS

39.    Because the defects in the design or manufacturer of the Class Vehicles and their engines cannot be detected until the vehicle has been driven and begins to consume excessive oil, Plaintiff and the Class Members were not reasonably able to discover the problem until after purchasing or leasing the Class Vehicles, despite their exercise of due diligence.

40.    Plaintiff and the Class Members had no realistic ability to discern that the Class Vehicles and their engines are defective until their oil levels began dropping. In addition, despite their due diligence, Plaintiff and the Class Members could not reasonably have been expected to learn or discover that they were deceived and that material information concerning the Class Vehicles and their oil consumption issues were concealed from them. Therefore, the discovery rule is applicable to the claims asserted by Plaintiff and the Class Members.

LAW OFFICES OF
MARK YABLONOVICH
LOS ANGELES

1    41.    In addition, even after class members contacted Volkswagen and/or
2    its authorized dealers for vehicle repairs concerning the defective nature of the
3    Class Vehicles, Plaintiff and Class Members were routinely told by Volkswagen
4    and/or through its authorized agents for vehicle repairs that the Class Vehicles
5    are not defective and that the oil consumption was within acceptable limits.

6    42.    Any applicable statute of limitation has therefore been tolled by
7    Volkswagen's knowledge, active concealment, and denial of the facts alleged
8    herein. Volkswagen is further estopped from relying on any statute of limitation
9    because of its concealment of the defective nature of the Class Vehicles and their
10   engines.

11                       CLASS ACTION ALLEGATIONS

12   43.    Plaintiff brings this lawsuit as a class action on behalf of himself
13   and all others similarly situated as members of the proposed Plaintiff Class
14   pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and/or (b)(2). This
15   action satisfies the numerosity, commonality, typicality, adequacy,
16   predominance, and superiority requirements of those provisions.

17   44.    The Class and Sub-Class are defined as:

18   Class:                   All current and former owners or lessees
19                            of any 2007 through 2012 model year Audi
                              or Volkswagen vehicles equipped with a
20                            2.0 liter turbocharged engine ("the
21                            Nationwide Class").

22   California Sub-Class:    All Members of the Nationwide Class who
23                            reside in the state of California ("the
                              California Sub-Class").
24
25   New York Sub-Class:      All Members of the Nationwide Class who
                              purchased the Class Vehicles in the state of
26                            New York ("the New York Sub-Class").

27   45.    Excluded from the Class and Sub-Class are: (1) Defendants, any
28   entity or division in which Defendants have a controlling interest, and its legal

LAW OFFICES OF
MARK YABLONOVICH
LOS ANGELES

1   representatives, officers, directors, assigns, and successors; (2) the Judge to

2   whom this case is assigned and the Judge's staff; and (3) those persons who have

3   suffered personal injuries as a result of the facts alleged herein. Plaintiff reserves

4   the right to amend the Class and Sub-Class definitions if discovery and further

5   investigation reveal that the Class and Sub-Class should be expanded or

6   otherwise modified.

7       46.   Numerosity: Although the exact number of Class Members is

8   uncertain and can only be ascertained through appropriate discovery, the number

9   is great enough such that joinder is impracticable. The disposition of the claims

10   of these Class Members in a single action will provide substantial benefits to all

11   parties and to the Court. The Class Members are readily identifiable from

12   information and records in Defendants' possession, custody, or control, as well

13   as from records kept by the Department of Motor Vehicles of various states.

14       47.   Typicality: The claims of representative Plaintiff are typical of the

15   claims of the Class in that the representative Plaintiff, like all Class Members,

16   purchased and leased Class Vehicles designed, manufactured, and distributed by

17   Volkswagen in which the engines were defective. The representative Plaintiff,

18   like all Class Members, has been damaged by Defendants' misconduct in that he

19   has incurred or will incur the cost of purchasing extra synthetic motor oil to

20   replace the oil consumed by the defective engine. Furthermore, the factual bases

21   of Volkswagen's misconduct are common to all Class Members and represent a

22   common thread of fraudulent, deliberate, and negligent misconduct resulting in

23   injury to all Class Members.

24       48.   Commonality: There are numerous questions of law and fact

25   common to Plaintiff and the Class that predominate over any question affecting

26   only individual Class Members. These common legal and factual issues include

27   the following:

28           (a)   Whether the Class Vehicles and their engines are defectively

LAW OFFICES OF
MARK YABLONOVICH
LOS ANGELES

1            designed or manufactured such that they are not suitable for

2            their intended use;

3        (b)   whether the fact that the Class Vehicle suffer from an

4            excessive oil consumption defect would be considered

5            material by a reasonable consumer;

6        (c)   whether as a result of Defendant's concealment or failure to

7            disclose material facts, Plaintiff and Class Members acted to

8            their detriment by purchasing Class Vehicles manufactured by

9            Defendants;

10       (d)   Whether Defendant was aware of the excessive oil

11           consumption defect

12       (e)   whether the excessive oil consumption defect constitutes an

13           unreasonable safety risk;

14       (f)   whether Defendants breached the express warranties with

15           respect to the Class Vehicles;

16       (g)   whether Defendants have a duty to disclose the defective

17           nature of the Class Vehicles and their excessive oil

18           consumption defect to Plaintiff and Class Members;

19       (h)   whether Plaintiff and the other Class Members are entitled to

20           equitable relief, including but not limited to a preliminary

21           and/or permanent injunction; and

22       (i)   Whether Defendant violated the consumer protection statutes

23           of California and New York when it sold to consumer Class

24           Vehicles that suffered from the excessive oil consumption

25           defect.

26      49.     Adequate Representation: Plaintiff will fairly and adequately

27 protect the interests of the Class Members. Plaintiff has retained attorneys

28 experienced in the prosecution of class actions, including consumer and product

LAW OFFICES OF
MARK YABLONOVICH
LOS ANGELES

1  defect class actions, and Plaintiff intends to prosecute this action vigorously.

2  50.  Predominance and Superiority: Plaintiff and the Class Members
3  have all suffered and will continue to suffer harm and damages as a result of
4  Defendants' unlawful and wrongful conduct.  A class action is superior to other
5  available methods for the fair and efficient adjudication of the controversy.
6  Absent a class action, most Class Members would likely find the cost of
7  litigating their claims prohibitively high and would therefore have no effective
8  remedy at law.  Because of the relatively small size of the individual Class
9  Members' claims, it is likely that only a few Class Members could afford to seek
10  legal redress for Defendants' misconduct.  Absent a class action, Class Members
11  will continue to incur damages, and Defendants' misconduct will continue
12  without remedy.  Class treatment of common questions of law and fact would
13  also be a superior method to multiple individual actions or piecemeal litigation in
14  that class treatment will conserve the resources of the courts and the litigants and
15  will promote consistency and efficiency of adjudication.

16  FIRST CAUSE OF ACTION

17  (Violation of California's Consumer Legal Remedies Act,

18  California Civil Code § 1750, *et seq.*)

19  51.  Plaintiff hereby incorporates by reference the allegations contained
20  in the preceding paragraphs of this Complaint.

21  52.  Plaintiff brings this cause of action on behalf of himself and on
22  behalf of the members of the Nationwide Class, or, in the alternative, on behalf
23  of the members of the California Sub-Class.

24  53.  Defendants are "persons" as defined by California Civil Code §
25  1761(c).

26  54.  Plaintiff and Class Members are "consumers" within the meaning of
27  California Civil Code § 1761(d).

28  55.  By failing to disclose and concealing the defective nature of the

Page 19

MARK YABLONOVICH
LAW OFFICES OF
LOS ANGELES

1  Class Vehicles and their engines from Plaintiff and prospective Class Members,
2  Defendants violated California Civil Code § 1770(a), as it represented that its
3  Class Vehicles and their engines had characteristics and benefits that they do not
4  have, and represented that its Class Vehicles and their engines were of a
5  particular standard, quality, or grade when they were of another. *See* Cal. Civ.
6  Code §§ 1770(a)(5) & (7).

7  56.  Defendants' unfair and deceptive acts or practices occurred
8  repeatedly in Defendants' trade or business, were capable of deceiving a
9  substantial portion of the purchasing public, and imposed a serious safety risk on
10 the public.

11 57.  Defendants knew that its Class Vehicles and their engines suffered
12 from an inherent defect, were defectively designed or manufactured, would fail
13 prematurely, and were not suitable for their intended use.

14 58.  Defendants were under a duty to Plaintiff and the Class Members to
15 disclose the defective nature of the Class Vehicles and their engines and/or the
16 associated maintenance costs because:

17      (a)  Defendants were in a superior position to know the true state
18           of facts about the safety defects contained the Class Vehicles
19           and their engines;

20      (b)  Plaintiff and the Class Members could not reasonably have
21           been expected to learn or discover that their engines have a
22           dangerous safety defect until after they purchased the Class
23           Vehicles; and

24      (c)  Defendants knew that Plaintiff and the Class Members could
25           not reasonably have been expected to learn about or discover
26           the safety defect.

27 59.  In failing to disclose the excessive oil consumption defect,
28 Defendants have knowingly and intentionally concealed material facts and

**CLASS ACTION COMPLAINT**

LAW OFFICES OF
MARK YABLONOVICH
LOS ANGELES

1 | breached their duty not to do so.

2 |     60.    The facts concealed or not disclosed by Defendants to Plaintiff and
3 | the Class Members are material in that a reasonable person would have
4 | considered them to be important in deciding whether or not to purchase
5 | Defendants' Class Vehicles, or to pay less for them. Had Plaintiff and other
6 | Class Members known that the Class Vehicles' contained safety defects in the
7 | engines that would cause oil to be consumed at rates of up to one (1) quart per
8 | 500 miles, thus requiring the addition of substantial amounts of oil between
9 | scheduled oil changes, they would not have purchased the Class Vehicles or
10 | would have paid less for them.

11 |     61.    Plaintiff and the Class Members are reasonable consumers who do
12 | not expect their engines to consume substantial amounts of oil. Plaintiff and
13 | Class Members do not expect to have to purchase and add costly synthetic motor
14 | oil, sometimes in quantities of one (1) quart of oil per 500 miles driven. Plaintiff
15 | and Class Members further expect and assume that Volkswagen will not sell or
16 | lease vehicles with known safety defects, such as the excessive oil consumption
17 | defect, and will disclose any such defect to its consumers when it learns of the
18 | defect.

19 |     62.    As a result of Defendants' misconduct, Plaintiff and Class Members
20 | have been harmed and have suffered actual damages.

21 |     63.    As a direct and proximate result of Defendants' unfair or deceptive
22 | acts or practices, Plaintiff and Class Members have suffered and will continue to
23 | suffer actual damages.

24 |     64.    Plaintiff and the Class are entitled to equitable relief.

25 |     65.    Plaintiff has provided all Defendants with notice of their alleged
26 | violations of the CLRA pursuant to California Civil Code § 1782(a). If, within
27 | 30 days of the date of the notification letter, Defendants fail to provide
28 | appropriate relief for its violation of the CLRA, Plaintiff will amend this

LAW OFFICES OF
MARK YABLONOVICH
LOS ANGELES

1 | Complaint to seek monetary, compensatory, and punitive damages, in addition to
2 | the injunctive and equitable relief that he seeks now.

3 | SECOND CAUSE OF ACTION

4 | (Violation of California Business & Professions Code §§ 17200, *et seq.*)

5 | 66.     Plaintiff hereby incorporates by reference the allegations contained
6 | in the preceding paragraphs of this Complaint.

7 | 67.     Plaintiff brings this cause of action on behalf of himself and on
8 | behalf of the Nationwide Class, or, in the alternative, on behalf of the California
9 | Sub-Class.

10 | 68.     California Business & Professions Code § 17200 prohibits acts of
11 | "unfair competition," including any "unlawful, unfair or fraudulent business act
12 | or practice" and "unfair, deceptive, untrue or misleading advertising."

13 | 69.     Defendants knew that the Class Vehicles and their engines suffered
14 | from an inherent defect that caused excessive oil consumption, were defectively
15 | designed or manufactured, and were not suitable for their intended use.

16 | 70.     In failing to disclose the excessive oil consumption defect,
17 | Defendants have knowingly and intentionally concealed material facts and
18 | breached their duty not to do so.

19 | 71.     Defendants were under a duty to Plaintiff and the Class Members to
20 | disclose the defective nature of the Class Vehicles and their defective engines
21 | because:

22 | (a)     Defendants were in a superior position to know the true state
23 | of facts about the safety defect in the Class Vehicles and their
24 | engines;

25 | (b)     Defendants made partial disclosures about the quality of the
26 | Class Vehicles without revealing the defective nature of the
27 | Class Vehicles and their engines; and

28 | (c)     Defendants actively concealed the defective nature of the

Page 22

LAW OFFICES OF<br>MARK YABLONOVICH<br>LOS ANGELES

1  Class Vehicles and their engines from Plaintiff and Class
2  Members.

3      72.    The facts concealed or not disclosed by Defendants to Plaintiff and
4  the Class Members are material in that a reasonable person would have
5  considered them to be important in deciding whether or not to purchase
6  Defendants' Class Vehicles, or to pay less for them. Had Plaintiff and other
7  Class Members known that the Class Vehicles suffered from an excessive oil
8  consumption defect, they would not have purchased the Class Vehicles or would
9  have paid less for them.

10      73.    Defendants continue to conceal the defective nature of the Class
11  Vehicles and their excessive oil consumption defect even after Class Members
12  began to report problems. Indeed, Defendants continue to cover up and conceal
13  the true nature of the problem by asserting that losing quarts of oil between
14  regularly scheduled oil changes is normal.

15      74.    By their conduct, Defendants have engaged in unfair competition
16  and unlawful, unfair, and fraudulent business practices.

17      75.    Defendants' unfair or deceptive acts or practices occurred
18  repeatedly in Defendants' trade or business, and were capable of deceiving a
19  substantial portion of the purchasing public.

20      76.    As a direct and proximate result of Defendants' unfair and deceptive
21  practices, Plaintiff and the Class have suffered and will continue to suffer actual
22  damages.

23      77.    Defendants have been unjustly enriched and should be required to
24  make restitution to Plaintiff and the Class pursuant to §§ 17203 and 17204 of the
25  Business & Professions Code.

26  ///
27  ///
28  ///

LAW OFFICES OF
MARK YABLONOVICH
LOS ANGELES

THIRD CAUSE OF ACTION

(Asserted on Behalf of the New York Sub-Class for Violations of the

Consumer Protection From Deceptive Acts and Practices Act)

(N.Y. Gen. Bus. Law §§ 349, *et seq.)*

78.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

79.    Plaintiff brings this cause of action on behalf of himself and on behalf of the New York Sub-Class against all Defendants.

80.    Plaintiff and Class Members are consumers who purchased and/or leased Class Vehicles for personal, family, or household use.

81.    Defendants engaged in unlawful conduct, made affirmative misrepresentations, or otherwise violated N.Y. Gen. Bus. Law §§ 349, *et seq.* Specifically, Defendants were aware that the Class Vehicles suffered from a excessive oil consumption defect that required supplemental addition of oil in quantities sometimes as high as one (1) quart per 500 miles driven for some Class Members. However, Defendants purposely failed to disclose this to Plaintiffs and Class Members during the purchase or lease of the vehicle or thereafter.

82.    Defendants also engaged in unlawful conduct in violation of N.Y. Gen. Bus. Law §§ 349, *et seq.* by making knowing and intentional omissions. Defendants purposefully and knowingly failed to disclose the defect in the Class Vehicles in order to secure the sale of these vehicles at a premium price and also to mislead owners during the limited warranty period to avoid having to perform their contractual duties under the warranty.

83.    Defendants did not fully and truthfully disclose to its customers the true nature of the inherent defect in the Class Vehicles, which was not readily discoverable upon purchase.

84.    Defendants intended that Plaintiffs and all Class Members rely on

Page 24

1   the acts of concealment and omissions, so that they would purchase the Class
2   Vehicles.

3       85.    As a result of Defendants' conduct, Plaintiff and Class Members
4   have suffered an ascertainable loss. In addition to direct monetary losses
5   incurred through having to purchase high quality synthetic oil as often as one (1)
6   quart per 500 miles driven for some Class Members, Plaintiff and Class
7   Members have also suffered an ascertainable loss by receiving less than what
8   was promised.

9       86.    A causal relationship exists between Defendants' unlawful conduct
10  and the ascertainable losses suffered by Plaintiffs and the Class Members. Had
11  Plaintiff and other Class Members known that the Class Vehicles suffered from a
12  excessive oil consumption defect, thus requiring the addition of substantial
13  amounts of oil between scheduled oil changes, they would not have purchased
14  the Class Vehicles or would have paid less for them. Had Plaintiff and Class
15  Members known about the oil consumption defect, they would not have
16  purchased the Class Vehicles or would have paid less for them.

17      87.    As a direct and proximate result of Defendants' violations of N.Y.
18  Gen. Bus. Law §§ 349, *et seq.*, as set forth above, Plaintiff and the members of
19  the New York Sub-Class have suffered an ascertainable loss of money and are
20  therefore entitled to relief, including damages, plus triple damages, costs, and
21  attorneys' fees under section 349(h) of the New York Consumer Protection from
22  Deceptive Acts and Practices Act.

23                      FOURTH CAUSE OF ACTION
24  (Breach of Written Warranty under the Magnuson-Moss Warranty Act, 15
25                      U.S.C. § 2301 *et seq.)*

26      88.    Plaintiff hereby incorporates by reference the allegations contained
27  in the preceding paragraphs of this Complaint.

28      89.    Plaintiff brings this action on behalf of himself and on behalf of the

LAW OFFICES OF
MARK YABLONOVICH
LOS ANGELES

Page 25

1  Nationwide Class against Defendant Volkswagen Group of America, Inc., only.

2      90.    Plaintiff and the other Class Members are "consumers" within the

3  meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

4      91.    Volkswagen is a "supplier" and "warrantor" within the meaning of

5  15 U.S.C. §§ 2301(4)-(5).

6      92.    The Class Vehicles are "consumer products" within the meaning of

7  15 U.S.C. § 2301(1).

8      93.    Volkswagen's express warranty is a "written warranty" within the

9  meaning of 15 U.S.C. § 2301(6).

10     94.    Volkswagen breached the express warranty by:

11              (d)    Extending a 4-year/50,000 mile New Vehicle Limited

12                     Warranty[2] with the purchase or lease of the Class Vehicles,

13                     thereby warranting to repair or replace any part defective in

14                     material or workmanship at no cost to the owner or lessee;

15              (e)    Selling and leasing Class Vehicles with engines that were

16                     defective in material and workmanship, requiring repair or

17                     replacement within the warranty period; and

18              (f)    Refusing to honor the express warranty by repairing or

19                     replacing, free of charge, the engine or any of its component

20                     parts and instead charging for the repair and replacement

21                     parts.

22     95.    Volkswagen's breach of the express warranty has deprived the

23  Plaintiff and the other Class members of the benefit of their bargain.

24     96.    The amount in controversy of the Plaintiff's individual claims meet

25  or exceeds the sum or value of $25,000. In addition, the amount in controversy

26  meets or exceeds the sum or value of $50,000 (exclusive of interests and costs)

27     _____
        [2] The express warrant terms with respect to the New Vehicle Limited
28  Warranties for other Class Vehicles are substantially similar.

LAW OFFICES OF
MARK YABLONOVICH
LOS ANGELES

1 | computed on the basis of all claims to be determined in this suit.

2 |     97.    Volkswagen has been afforded a reasonable opportunity to cure its

3 | breach of written warranty, including when Plaintiff and other Class Members

4 | brought their vehicles in for diagnoses and repair of their engines.

5 |     98.    As a direct and proximate cause of Volkswagen's breach of written

6 | warranty, Plaintiff and Class members sustained damages and other losses in an

7 | amount to be determined at trial. Volkswagen's conduct damaged Plaintiff and

8 | Class Members, who are entitled to recover actual damages, consequential

9 | damages, specific performance, diminution in value, costs, attorneys' fees,

10 | and/or other relief as appropriate.

11 | FIFTH CAUSE OF ACTION

12 | (Breach of Express Warranty under Cal. Comm. Code § 2313)

13 |     99.    Plaintiff hereby incorporates by reference the allegations contained

14 | in the preceding paragraphs of this Complaint.

15 |     100.  Plaintiff brings this cause of action against Volkswagen Group of

16 | America, Inc., on behalf of himself and on behalf of the Nationwide Class or, in

17 | the alternative, California sub-class.

18 |     101.  Volkswagen provided all purchasers and lessees of the Class

19 | Vehicles with the express warranty described herein, which became part of the

20 | basis of the bargain. Accordingly, Volkswagen's express warranty is an express

21 | warranty under California law.

22 |     102.  The 2.0 liter turbocharged engines and their component parts were

23 | manufactured and/or installed and/or distributed by Volkswagen in the Class

24 | Vehicles and are covered by the express warranty.

25 |     103.  Volkswagen breached the express warranty by:

26 |

27 |

28 |

Page 27

LAW OFFICES OF
MARK YABLONOVICH
LOS ANGELES

a. Extending a 4-year/50,000 mile New Vehicle Limited
Warranty[3] with the purchase or lease of the Class Vehicles,
thereby warranting to repair or replace any part defective in
material or workmanship at no cost to the owner or lessee;

b. Selling and leasing Class Vehicles with engines that were
defective in material and workmanship, requiring repair or
replacement within the warranty period; and

c. Refusing to honor the express warranty by repairing or
replacing, free of charge, the engines or any of their
component parts affected by the excessive oil consumption
defect, and instead charging for the repair and replacement
parts.

104. Plaintiff and the Class Members (or the prior owners of their Class Vehicles) notified Volkswagen of the breach within a reasonable time and/or were not required to do so. Volkswagen was also on notice of the excessive oil consumption defect from the complaints and service requests for excessive oil consumption they received from Class Members and their dealers.

105. As a direct and proximate cause of Volkswagen's breach, Plaintiff and the other Class Members have suffered damages and continue to suffer damages, including economic damages at the point of sale or lease, *i.e.* the difference between the value of the vehicle as promised and the value of the vehicle as delivered. Additionally, Plaintiff and the other Class Members either have incurred or will incur economic damages related to the excessive oil consumption defect described herein.

106. Plaintiff and the other Class Members are entitled to legal and equitable relief against Volkswagen, including damages, consequential damages,

---

[3] The terms of the New Vehicle Limited Warranties for Class Vehicles are substantially similar.

1  specific performance, attorneys' fees, costs of suit, and other relief as
2  appropriate.

3                       SIXTH CAUSE OF ACTION

4  (Violations of Express Warranty Pursuant to N.Y. U.C.C. Law §§ 2-313.)

5      107. Plaintiff hereby incorporates by reference the allegations contained
6  in the preceding paragraphs of this Complaint.

7      108. Plaintiff brings this cause of action against Volkswagen Group of
8  America, Inc., on behalf of himself and on behalf of the New York Sub-Class.

9      109. Volkswagen provided all purchasers and lessees of the Class
10 Vehicles with the express warranty described herein, which became part of the
11 basis of the bargain. Accordingly, Volkswagen's express warranty is an express
12 warranty under the state law express warranty statutes referred to herein.

13     110. The 2.0 liter turbocharged engines and their component parts were
14 manufactured and/or installed and/or distributed by Volkswagen in the Class
15 Vehicles and are covered by the express warranty.

16     111. Volkswagen breached the express warranty by:

17             d. Extending a 4-year/50,000 mile New Vehicle Limited
18                Warranty[4] with the purchase or lease of the Class Vehicles,
19                thereby warranting to repair or replace any part defective in
20                material or workmanship at no cost to the owner or lessee;

21             e. Selling and leasing Class Vehicles with engines that were
22                defective in material and workmanship, requiring repair or
23                replacement within the warranty period; and

24             f. Refusing to honor the express warranty by repairing or
25                replacing, free of charge, the engines or any of their
26                component parts affected by the excessive oil consumption

27         [4] The terms of the New Vehicle Limited Warranties for Class Vehicles are
28 substantially similar.

LAW OFFICES OF
MARK YABLONOVICH
LOS ANGELES

1                       defect, and instead charging for the repair and replacement

2                                      parts.

3       112. Plaintiff and Class Members (or the prior owners of their Class

4 Vehicles) notified Volkswagen of the breach within a reasonable time and/or

5 were not required to do so. Volkswagen was also on notice of the excessive oil

6 consumption defect from the complaints and service requests for excessive oil

7 consumption they received from Class Members at their dealers.

8       113. As a direct and proximate cause of Volkswagen's breach, Plaintiff

9 and the other Class Members have suffered damages and continue to suffer

10 damages, including economic damages at the point of sale or lease, *i.e.* the

11 difference between the value of the vehicle as promised and the value of the

12 vehicle as delivered. Additionally, Plaintiff and the other Class Members either

13 have incurred or will incur economic damages related to the excessive oil

14 consumption defect described herein.

15       114. Plaintiff and the other Class Members are entitled to legal and

16 equitable relief against Volkswagen, including damages, consequential damages,

17 specific performance, attorneys' fees, costs of suit, and other relief as

18 appropriate.

19       115. The New York Sub-Class: Volkswagen's practices, as alleged, were

20 in violation of N.Y. U.C.C. Law §§ 2-313.

21                            RELIEF REQUESTED

22       116. Plaintiff, on behalf of himself, and all others similarly situated,

23 requests the Court to enter judgment against Defendants, and accordingly,

24 request the following:

25             (a)   An order certifying the proposed Class and Sub-Classes,

26                       designating Plaintiff as named representative of the Class, and

27                       designating the undersigned as Class Counsel;

28             (b)   A declaration that Defendants are financially responsible for

LAW OFFICES OF
MARK YABLONOVICH
LOS ANGELES

1    notifying all Class Members about the defective nature of the

2    Class Vehicles and their engines;

3    (c)   An order enjoining Defendants from further deceptive

4    distribution, sales, and lease practices with respect to its Class

5    Vehicles, and to remove and replace Plaintiff and Class

6    Members' engines with a suitable alternative product and

7    repair all other damages to the Class Vehicles caused by the

8    defective engines;

9    (d)   An award to Plaintiff and the Class of compensatory, actual

10    exemplary, and statutory damages, including interest, in an

11    amount to be proven at trial, except that for now, Plaintiff

12    seeks only equitable and injunctive relief with respect to his

13    claims under California's Consumer Legal Remedies Act,

14    California Civil Code section 1750 *et seq.*;

15    (e)   A declaration that Defendants must disgorge, for the benefit

16    of the Class, all or part of the ill-gotten profits it received

17    from the sale or lease of its Class Vehicles, or make full

18    restitution to Plaintiff and Class Members;

19    (f)   An award of attorneys' fees and costs, as allowed by law;

20    (g)   An award of attorneys fees and costs pursuant to California

21    Code of Civil Procedure § 1021.5;

22    (h)   An award of pre-judgment and post-judgment interest, as

23    provided by law;

24    (i)   Leave to amend the Complaint to conform to the evidence

25    produced at trial; and

26    (j)   Such other relief as may be appropriate under the

27    circumstances.

28    ///

Page 31

LAW OFFICES OF
MARK YABLONOVICH
LOS ANGELES

1

## DEMAND FOR JURY TRIAL

2

117.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff

3

demands a trial by jury of any and all issues in this action so triable of right.

4

5   Dated: May 1, 2012                                   Respectfully submitted,
                                                         LAW OFFICES OF MARK YABLONOVICH

6

7                                               By:

8                                                    Neda Roshanian
                                                     Michael Coats
9                                                    Attorneys for Plaintiff Ali Asghari

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Page 32