# EXHIBIT 1

Payam Shahian (SBN 228406)
pshahian@slpattorney.com
Karen Nakon (SBN 278423)
knakon@slpattorney.com
STRATEGIC LEGAL PRACTICES, APC
1875 Century Park East, Suite 700
Los Angeles, California 90067
Telephone:  (310) 277-1040
Facsimile:   (310) 943-3838

Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Capstone Law APC
1840 Century Park East, Suite 450
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:     (310) 943-0396
Attorneys for Plaintiffs Ali Asghari,
Daniel Tran, and Katrina Noble

Larry W. Lee (SBN 228175)
lwlee@diversitylaw.com
DIVERSITY LAW GROUP, APC
444 South Flower Street, Suite 1370
Los Angeles, California 90071
Telephone:  (213) 488-6555
Facsimile:   (213) 488-6554

Attorneys for Plaintiff Yung Kim

*Additional attorneys listed on signature page*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALI ASGHARI, DANIEL TRAN, YUNG KIM, ARA DERSARKISSIAN, and KATRINA NOBLE, individually, and on behalf of a class of similarly situated individuals,<br><br>         Plaintiffs,<br><br>         vs.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC., VOLKSWAGEN AG, AND AUDI AG,<br><br>         Defendants. | Case No.: 2:13-cv-02529-MMM-VBK<br><br>**FOURTH AMENDED CLASS ACTION COMPLAINT FOR:**<br>**(1) Violations of California Consumer Legal Remedies Act;**<br>**(2) Violations of Unfair Business Practices Act;**<br>**(3) Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty Act;**<br>**(4) Breach of Written Warranty Under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*;**<br>**(5) Violations of Various States' Express Warranty Statutes;**<br>**(6) Violations of Various States' Implied Warranty Statutes and**<br>**(7) Violations of Various States' Consumer Protection Statutes**<br><br>**JURY TRIAL DEMANDED** |

# INTRODUCTION

1.      Plaintiffs ALI ASGHARI, DANIEL TRAN, YUNG KIM, ARA DERSARKISSIAN, and KATRINA NOBLE (collectively "Plaintiffs") bring this action individually and on behalf of all similarly situated persons ("Class Members") who purchased or leased certain defective Audi vehicles that were designed, manufactured, distributed, marketed, sold, and leased by Defendants, Volkswagen Group of America, Inc., Volkswagen AG, and Audi AG (collectively "Volkswagen" or "Defendants").

2.      Defendants designed, manufactured, distributed, marketed, sold, and leased vehicles equipped with 2.0-liter turbocharged engines ("Class Vehicles" or "Vehicles")[1] to Plaintiffs and Class Members.

3.      Since 2009, if not before, Defendants knew that the Class Vehicles contain one or more design and/or manufacturing defects, including but not limited to defects contained in the Class Vehicles' engine that cause them to be unable to properly utilize the engine oil and, in fact, to improperly burn off and/or consume abnormally high amounts of oil (the "oil consumption defect.")

4.      Motor oil functions as an essential lubricant for the moving parts in internal combustion engines.  The oil creates a film separating surfaces of adjacent moving parts to minimize direct contact, thereby decreasing heat caused by friction and reducing wear.  Motor oil also has important cleaning and sealing functions, and serves as an important medium for dissipating heat throughout the engine. As a result, the Class Vehicles need the proper amount of engine oil in order for the engine and its related parts to function safely.

5.      Thus, the oil consumption defect is a safety concern because it prevents the engine from maintaining the proper level of engine oil, and causes

---

[1] The Class Vehicles are any 2009 through 2011 model year Audi vehicles equipped with a 2.0 liter turbocharged engines bearing Audi's internal engine code CAEB.

voluminous oil consumption that cannot be reasonably anticipated or predicted. Therefore, this oil consumption defect is unreasonably dangerous because it can cause engine failure while the Class Vehicles are in operation at any time and under any driving conditions or speeds, thereby exposing the Class Vehicle drivers, their passengers and others who share the road with them to serious risk of accidents and injury.

6.     Moreover, because the oil consumption defect can cause the Class Vehicles to consume unacceptably high amounts of engine oil, the rate of oil consumption for some Class Vehicles can be as high as one (1) quart of oil per 500 miles driven.  The oil consumption defect thus requires the addition of substantial amounts of oil between scheduled oil changes and can result in engine damage. Indeed, as a result of the oil consumption defect, the potential safety hazards, and Defendants' refusal to acknowledge its existence and fix the problem, many consumers have reported that they have resorted to purchasing extra supplies of oil and carrying it with them in their trunk at all times when driving.

7.     Plaintiffs and Class Members reasonably expected that their Class Vehicles would not experience the oil consumption defect during foreseeable and normal usage, including, but not limited to, the expectation that the Class Vehicles would not require unreasonably frequent oil changes/additions between scheduled oil changes and that the Class Vehicles would not suffer from a dangerous defect that could cause the Class Vehicles to unexpectedly seize during operation, thereby causing the potential for accidents and injuries. These are the reasonable and objective expectations of consumers.

8.     Prior to purchasing the Class Vehicles, Plaintiffs and other Class Members did not know that the Class Vehicles suffered from an oil consumption defect and did not contemplate that the Class Vehicles' engines would be unable to prevent substantial amounts of oil from being consumed due to defects

contained therein and thereby requiring costly supplemental oil to be added between scheduled oil changes, as well as other related repairs that can cost hundreds to thousands of dollars.

9.      Plaintiffs are informed and believe and based thereon allege that Defendants knew or should have known that the Class Vehicles are defective and suffer from the oil consumption defect and are not fit for their intended purpose of providing consumers with safe and reliable transportation.  Nevertheless, Defendants have actively concealed and failed to disclose this defect from Plaintiffs and the Class Members at the time of purchase or lease and thereafter.

10.     Defendants knew and concealed the oil consumption defect that is contained in every Class Vehicle, along with the attendant dangerous safety problems and associated costs, from Plaintiffs and Class Members at the time of sale and thereafter.  This undisclosed defect has caused Plaintiffs and prospective class members to experience the oil consumption defect throughout the life of the Class Vehicles, which includes use within the warranty period.  Had Plaintiffs and the Class Members known about the oil consumption defect at the time of sale or lease, as well as the associated costs related to this defect and/or the safety hazards described herein, Plaintiffs and the Class Members would not have purchased the Class Vehicles or would have paid less for them.

11.     Moreover, despite notice of the oil consumption defect from various internal sources, Defendants have not recalled the Class Vehicles to repair the oil consumption defect, have not offered all of its customers a suitable repair or replacement free of charge, and have not offered to reimburse all Class Vehicles owners and leaseholders who incurred costs relating to the oil consumption defect, including costs related to inspections/diagnosis, repairs, and unreasonably frequent oil changes/additions between scheduled oil changes.

12.     As a result of their reliance on Defendants' omissions and/or misrepresentation, owners and/or lessees of the Class Vehicles have suffered

ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

## PARTIES

**Plaintiff Ali Asghari**:

13.     Plaintiff Ali Asghari is currently a California citizen who lives in Los Angeles, California.  Mr. Asghari leased a new 2010 Audi A5 from Audi dealer, Atlantic Imports, Inc., d.b.a. Atlantic Audi West, in West Islip, New York, on December 29, 2009.  Mr. Asghari leased this vehicle primarily for his personal, family, or household purposes.  This vehicle was designed, manufactured, sold, distributed, advertised, marketed, and warranted by Volkswagen.

14.     Mr. Asghari relied on the existence and length of Defendants' New Vehicle Limited Warranty in deciding to lease his vehicle.

15.     Mr. Asghari on several occasions has paid out of pocket to add supplemental oil between oil scheduled changes.

16.     On or around September 7, 2010, with approximately 8,887 miles on the odometer, Mr. Asghari visited Audi dealer, Santa Monica Audi, informing the dealer that he had to add oil when the oil light came on.

17.     On or around August 15, 2011, with approximately 20,116 miles on the odometer, Mr. Asghari returned to the Audi dealer complaining of excessive oil consumption.  In response, the dealer conducted an "oil consumption test" on Mr. Asghari's vehicle and verified his excessive oil consumption concerns.

18.     Specifically, the dealer found that Mr. Asghari's vehicle was consuming 0.76 quarts per 1,000 miles driven (or approximately (1) quart per 1300-1400 miles) and performed engine repairs, including repairs to the engine's piston rings and pressure regulating valve.

19.     At all times, Mr. Asghari, like all Class Members, has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be

1   used.

2   **Plaintiff Daniel Tran:**

3       20.     Plaintiff Daniel Tran is a California citizen who lives in California.

4   In or around August 2009, Mr. Tran leased a new 2010 Audi A4 from an

5   authorized Audi dealer in California.

6       21.     Mr. Tran leased this vehicle primarily for his personal, family, or

7   household purposes.  This vehicle was designed, manufactured, sold, distributed,

8   advertised, marketed, and warranted by Volkswagen.

9       22.     Mr. Tran relied on the existence and length of Defendants' New

10  Vehicle Limited Warranty in deciding to lease his vehicle.

11      23.     On or around April 27, 2010, with approximately 13,500 miles on

12  the odometer, Mr. Tran brought his vehicle to an authorized Audi dealer,

13  complaining that his oil level was low.  The dealer told Mr. Tran that this was

14  normal for this kind of engine, and instructed him to purchase a quart of oil and

15  add it to the engine.  Mr. Tran purchased a quart of oil from the dealer at an out

16  of pocket cost of $8.73.

17      24.     On several subsequent occasions, Mr. Tran has paid out of pocket to

18  add supplemental oil between scheduled oil changes.

19      25.     On or around April 26, 2012, Mr. Tran took his vehicle to an

20  authorized Audi dealer in Santa Ana, California, complaining that he had to

21  frequently add oil to his vehicle, including two (2) quarts of oil in the past 4,000

22  miles.  The dealer verified Mr. Tran's complaints and performed engine repairs,

23  including replacing the pressure regulating valve.

24      26.     At all times, Mr. Tran, like all Class Members, has driven his

25  vehicle in a foreseeable manner and in the manner in which it was intended to be

26  used.

27  **Plaintiff Yung Kim**:

28      27.     Plaintiff Yung Kim is a California citizen who lives in Los Angeles

County, State of California.  On or about June 14, 2010, Mr. Kim entered into a written agreement (the "Agreement") for the lease of a new 2010 Audi A4 with a 2.0-liter turbocharged engine, Vehicle Identification Number WAUEFAFL4AN059114.

28.     Mr. Kim relied on the existence and length of Defendants' New Vehicle Limited Warranty in deciding to purchase his vehicle.

29.     Shortly after taking possession of his vehicle, Mr. Kim began experiencing problems with his vehicle's oil system.  Specifically, the "low oil" light would activate on numerous occasions, even when the vehicle's oil had been recently changed.  Mr. Kim took his vehicle in to a Volkswagen-authorized service center on numerous occasions.  However, rather than attempting to make any repairs, the Volkswagen representatives advised Mr. Kim that it was "normal" for his vehicle to burn through one (1) quart of oil every 1,000 miles. The Volkswagen representatives also advised Mr. Kim that Volkswagen would not make any repair attempts, would not put the oil in for him, and would not pay for the costs for any costs associated with this issue, including the out-of-pocket costs that Mr. Kim has incurred when he added supplemental oil between scheduled oil changes.

30.     At all times, Mr. Kim, like all Class Members, has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Plaintiff Ara Dersarkissian:**

31.     Plaintiff Ara Dersarkissian is an individual residing in Los Angeles County, California.  Mr. Dersarkissian leased a new 2010 Audi A5 on or about Mary 13, 2010, from an authorized Audi dealer in California.  The vehicle was manufactured, sold, or otherwise delivered to Plaintiff Dersarkissian by Defendant Volkswagen Group of America, Inc.

32.     During his ownership of the subject vehicle, Mr. Derkarkissian

1   experienced the oil consumption defect alleged herein.

2     33. At all times, Mr. Dersarkissian, like all Class Members, has driven

3   his vehicle in a foreseeable manner and in the manner in which it was intended to

4   be used.

5   **Plaintiff Katrina Noble**

6     34. Plaintiff Katrina Noble is a Nevada citizen who lives in Nevada.  In

7   or around February 2012, Ms. Noble purchased a used 2009 Audi A4 from an

8   authorized Audi dealer in Nevada.

9     35. Ms. Noble relied on the existence and length of Defendants' express

10   warranty in deciding to purchase her vehicle.

11     36. Since purchasing the subject vehicle, Ms. Noble has experienced

12   and complained to the dealer about the oil consumption defect alleged herein.  In

13   addition, Ms. Noble has incurred out of pocket costs in connection with adding

14   supplemental oil between scheduled oil changes, as well as for replacing her

15   vehicle's crankcase ventilation valve.

16     37. At all times, Ms. Noble, like all Class Members, has driven her

17   vehicle in a foreseeable manner and in the manner in which it was intended to be

18   used.

19   **Defendants**:

20     38. Volkswagen Group of America, Inc. is a corporation organized and

21   in existence under the laws of the State of New Jersey and registered with the

22   California Department of Corporations to conduct business in California.  At all

23   times relevant herein, Volkswagen Group of America, Inc. was engaged in the

24   business of designing, manufacturing, constructing, assembling, marketing,

25   distributing, and selling automobiles and other motor vehicles and motor vehicle

26   components in California and throughout the United States of America.

27     39. Volkswagen AG is a foreign corporation headquartered at Berliner

28   Ring 2 38440 Wolfsburg, Federal Republic of Germany.  At all relevant times,

1   Volkswagen AG took part in designing, engineering, manufacturing, testing,

2   marketing, supplying, selling, and distributing motor vehicles, including Class

3   Vehicles, in San Francisco County, California, and throughout the United States

4   of America.  Through its wholly owned subsidiaries and agents, Volkswagen AG

5   markets its products in a continuous manner in the United States, including

6   California.  Volkswagen AG maintains a Detroit Office and a Volkswagen AG

7   Investor Relations office in Herndon, Virginia.

8       40.    Audi AG is a foreign corporation located at Auto-Union-Str. 2 D-

9   85045, Ingolstadt, Germany.  At all relevant times, Audi AG took part in

10  designing, engineering, manufacturing, testing, marketing, supplying, selling,

11  and distributing motor vehicles, including Class Vehicles, in San Francisco

12  County, California, and throughout the United States of America.  Through its

13  subsidiary, Audi of America, LLC, Audi AG markets its products in a

14  continuous manner in the United States, including California.  Audi of America,

15  LLC is the entity through which Audi AG sells Audi Vehicles in the United

16  States.  Audi AG maintains its principle place of business in Herndon, Virginia.

## JURISDICTION

18      41.    This is a class action.

19      42.    Members of the Proposed Class are citizens of states different from

20  the home states of Defendants.

21      43.    On information and belief, aggregate claims of individual Class

22  Members exceed $5,000,000.00, exclusive of interests and costs.

23      44.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

## VENUE

25      45.    Volkswagen, through its business of distributing, selling, and

26  leasing the Class Vehicles, has established sufficient contacts in this district such

27  that personal jurisdiction is appropriate.

28      46.    Defendant is deemed to reside in this district pursuant to 28 U.S.C. §

1391.

47.     Venue is proper in this District under 28 U.S.C. § 1391 (a).

## FACTUAL ALLEGATIONS

48.     For years, Volkswagen has designed, manufactured, distributed, sold, and leased the Class Vehicles.  Upon information and belief, it has sold, directly or indirectly through dealers and other retail outlets, hundreds of thousands of Class Vehicles nationwide.

49.     The Class Vehicles contain one or more design and/or manufacturing defects, including but not limited to defects contained in the Class Vehicles' engines that cause them to consume abnormally high amounts of oil.

50.     Plaintiffs are informed and believe and based thereon allege that Volkswagen acquired its knowledge of the oil consumption defect since 2009, if not before, through sources not available to Class Members, including but not limited to pre-release testing data, early consumer complaints about the oil consumption defect to Defendants and their dealers about the Class Vehicles, testing conducted in response to those complaints, aggregate data from Volkswagen and Audi dealers, including dealer repair orders and high warranty reimbursement rates that can cost in the thousand dollars for each class vehicle, and from other internal sources.

51.     Volkswagen has a duty to disclose the oil consumption defect and the associated out-of-pocket repair costs to Class Vehicles owners, among other reasons, because the defect poses an unreasonable safety hazard; because Volkswagen had and has exclusive knowledge or access to material facts about the Class Vehicles and engines that were and are not known or reasonably discoverable by Plaintiffs and Class Members; and because Volkswagen has actively concealed the oil consumption defect from its customers.

52.     Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced the oil consumption defect.  Complaints filed by

consumers with the NHTSA and posted on the Internet demonstrate that the defect is widespread.  The complaints also indicate Volkswagen's awareness of the defect and its potential danger (note that spelling and grammar mistakes remain as found in the original):

- NHTSA Complaint:   [2009 AUDI A4] THIS AUDI WAS A LEMON FROM THE START AND BOTCHED REPAIRS AT THE DEALER HAVE ONLY MADE IT WORSE. ONE THE 2ND DAY WE OWNED THE CAR THE OIL LIGHT CAME ON AND WE HAD TO RETURN IT TO THE DEALER FOR MORE OIL. OVER THE NEXT 2 YEARS THE CAR BURNED AN EXCESSIVE AMOUNT OF OIL STARTING AT 1 QRT EVERY 2500 MILES AND DETERIORATING TO 1 QRT EVERY 800 MILES. ALL ALONG THE DEALER TOLD US THIS WAS "NORMAL". IN MAY 2011, DEALER TOLD US THAT AUDI HAD INITIATED A TESTING PROGRAM AND IF THE CAR FAILED THEY WOULD DO SOMETHING. IN JUNE 2011, THE CAR FAILED TEST AND THE DEALER KEPT THE CAR FOR 3+ WEEKS CONDUCTING MAJOR ENGINE SURGERY.

- Online Complaint:  I bought an Audi A5 in march 2011, 2 ltr TSFI petrol model. Yes, this drinks oil like nothing. So far it has done only 2000 miles and had to top up the oil for 4 times...which is nearly 4 lts. This is way above their specifications. They changed the crank valve but still the problem exists. Audi admits that there is a problem with TFSI 2 ltr petrol engines. But they dont' admit that there is a problem in my car.....I know one dealer in UK went to the extent of exchanging the vehicle and replaced with a brand new one again. Another, they kept on sending oil cans to their resident for replacements. All these shows that there is a problem with these engines.

  Clever thing they do is, they do the oil test and say its within your specifications. They never admit until your warrenty period is over. I think this is a world wide issue as mine is UK base. You need to push audi dealer to do somehting about it or contact your solicitors. Its no joke....there is a problem in these engines and its your money!!

- Online Complaint:   I have had repeated mechanical problems with my 2009 Audi A-4 from the inception of the lease. . . . I need to monthly have my oil "topped" off, and I am being inconvenienced by having to drive to the dealership monthly, to have oil put into the vehicle. That is very frustrating, and I am

putting unnecessary mileage on my vehicle, just to have it the oil level maintained at the proper level.

- Online Complaint:  I purchased a 2010 Audi A4 on May 24, 2010 with 22 miles on it. I have had to return the vehicle to the dealer for a quart of oil at 1800 miles, 3100 miles, and again at 4300 miles. The dealer is telling me that it is within their specifications that the car burns 1 quart of oil every 1000 miles. The car is burning excessive oil and they want me to accept that as normal. When I know it really means early signs of more serious engine problems.

Audi markets this vehicle as not requiring an oil change but every 10,000 miles. It is contradictory to require oil every 1300 miles, but doesn't need an oil change but every 10,000 miles. I believe their marketing tactics are misleading. Based upon my driving pattern and the need for this vehicle to require a quart of oil every 1300 - 1800 I have to take it to the dealer 3 - 4 weeks (once a month) which poses as a great inconvenience. Additionally, I don't feel safe traveling long distances in the car because of the frequent replacement of oil. Not to mention the specialty oil that it requires.

53.    Despite its knowledge of the oil consumption defect, when owners or lessees of Class Vehicles specifically complain to Volkswagen about the oil consumption defect, Volkswagen's policy is to first deny that there is a known problem and to assert that losing abnormally high amount of oil is just normal.

54.    Customers have reported the oil consumption defect in the Class Vehicles to Volkswagen directly and through its dealers.  Defendants are fully aware of the oil consumption defect contained in the Class Vehicles.  Despite this, Defendants have failed to disclose and actively concealed the existence and nature of the defect from Plaintiffs and the Class Members at the time of purchase and thereafter.  Specifically, Defendants have:

(a)    failed to disclose, at and after the time of purchase and thereafter, any and all known material defects or material nonconformities of the Class Vehicles, including the oil consumption defect and, among others, the frequent

1         supplemental oil costs between regularly scheduled oil

2         changes;

3     (b)    failed to disclose at the time of purchase that the Class

4         Vehicles and their engines were not in good working order,

5         were defective, and were not fit for their intended purpose;

6         and

7     (c)    failed to disclose or actively concealed the fact that the Class

8         Vehicles and their engines were defective as a result of the oil

9         consumption defect, despite the fact that Defendants learned

10        of such defects prior to the first Class Vehicles being sold.

11      55.    Defendants have caused Plaintiffs and Class Members to expend

12  money at their dealerships or other third-party repair facilities and/or take other

13  remedial measures related to the oil consumption defect in the Class Vehicles

14  such as carrying containers of oil with them at all times.

15      56.    Defendants have not recalled the Class Vehicles to repair the

16  defective engines and their oil consumption defect and have not offered to

17  reimburse Class Vehicle owners and leaseholders who incurred costs relating to

18  oil consumption and related problems.

19      57.    Plaintiffs and Class Members are reasonable consumers and do not

20  expect their vehicles to require the addition of several quarts of oil between

21  regularly scheduled oil changes

22      58.    Plaintiffs and Class Members expect and assume that Defendants

23  will not sell or lease vehicles with known defects, such as the oil consumption

24  defect, and that Defendants will disclose any such defects to its consumers

25  before they purchase the Class Vehicles.  They do not expect Defendants to fail

26  to disclose the oil consumption defect to them, or to continually deny the defect.

27      59.    Consequently, Class Members have not received the value for which

28  they bargained when they purchased or leased the Class Vehicles.

Stipulation page 018

60.     As a result of the oil consumption defect, the value of the Class Vehicles has diminished, including without limitation the resale value of the Class Vehicles.

## TOLLING OF THE STATUTE OF LIMITATIONS

61.     Because the defects in the design or manufacturer of the Class Vehicles and their engines cannot be detected until the vehicle has been driven and begins to consume excessive oil, Plaintiffs and the Class Members were not reasonably able to discover the problem until after purchasing or leasing the Class Vehicles, despite their exercise of due diligence.

62.     Plaintiffs and the Class Members had no realistic ability to discern that the Class Vehicles and their engines are defective until they experienced the oil consumption defect.  In addition, despite their due diligence, Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that they were deceived and that material information concerning the Class Vehicles and their oil consumption issues were concealed from them.  Therefore, the discovery rule is applicable to the claims asserted by Plaintiffs and the Class Members.

63.     In addition, even after class members contacted Volkswagen and/or its authorized dealers for vehicle repairs concerning the defective nature of the Class Vehicles, Plaintiffs and Class Members were routinely told by Volkswagen and/or through its dealers that the Class Vehicles are not defective and that consumption of high amounts of oil between scheduled oil changes is normal.

64.     Therefore, any applicable statute of limitation has therefore been tolled by Volkswagen's knowledge, active concealment, and denial of the facts alleged herein.  Volkswagen is further estopped from relying on any statute of limitation because of its concealment of the defective nature of the Class Vehicles and their engines.

FOURTH AMENDED CLASS ACTION COMPLAINT

## CLASS ACTION ALLEGATIONS

65.     Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Plaintiffs Class pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and/or (b)(2).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

66.     The Class Plaintiffs seek to represent is defined as follows:

All persons who purchased or leased, in the United States of America, any 2009 model year Audi A4 vehicle, 2010 model year Audi A4 and Audi A5 vehicle, and 2011 model year Audi A4, Audi A5 and Audi Q5 vehicle, originally equipped with a factory-installed 2.0 liter engine bearing Audi internal engine code CAEB ("CAEB Engine"), imported and distributed by Defendant Volkswagen Group of America, Inc. for sale or lease in the United States of America or Puerto Rico (the "Class").

California Sub-Class:     All Members of the Nationwide Class who reside in the state of California (the "California Sub-Class").

Implied Warranty Sub-Class:   All Members of the Class who purchased or leased their vehicles in the state of California (the "Implied Warranty Sub-Class").

67.     Excluded from the Class and Sub-Class are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have claims for personal injuries as a result of the facts alleged herein.

68.     Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all

1    parties and to the Court.  The Class Members are readily identifiable from

2    information and records in Defendants' possession, custody, or control, as well

3    as from records kept by the Department of Motor Vehicles of various states.

4         69.    Typicality: The claims of representative Plaintiffs are typical of the

5    claims of the Class in that the representative Plaintiffs, like all Class Members,

6    purchased and leased Class Vehicles designed, manufactured, and distributed by

7    Volkswagen in which the engines were defective.  The representative Plaintiffs,

8    like all Class Members, has been damaged by Defendants' misconduct in that

9    they have incurred or will incur the cost of purchasing extra synthetic motor oil

10   to replace the oil consumed by the defective engine.  Furthermore, the factual

11   bases of Volkswagen's misconduct are common to all Class Members and

12   represent a common thread of fraudulent, deliberate, and negligent misconduct

13   resulting in injury to all Class Members.

14        70.    Commonality: There are numerous questions of law and fact

15   common to Plaintiffs and the Class that predominate over any question affecting

16   only individual Class Members.  These common legal and factual issues include

17   the following:

18              (a)    Whether the Class Vehicles and their engines are defectively

19                     designed or manufactured such that they are not suitable for

20                     their intended use;

21              (b)    whether the fact that the Class Vehicles suffer from an oil

22                     consumption defect would be considered material by a

23                     reasonable consumer;

24              (c)    whether as a result of Defendants' concealment or failure to

25                     disclose material facts, Plaintiffs and Class Members acted to

26                     their detriment by purchasing Class Vehicles manufactured by

27                     Defendants;

28              (d)    Whether Defendants were aware of the oil consumption

1      defect;

2      (e)    whether the oil consumption defect constitutes an

3             unreasonable safety risk;

4      (f)    whether Defendant VWGOA breached the express warranties

5             laws of various states with respect to the Class Vehicles;

6      (g)    whether Defendants violated California's Song-Beverly

7             Consumer Warranty Act with respect to the Class Vehicles;

8      (h)    whether Defendants breached the implied warranties laws of

9             various states with respect to the Class Vehicles;

10     (i)    whether Defendants have a duty to disclose the defective

11            nature of the Class Vehicles and their oil consumption defect

12            to Plaintiffs and Class Members;

13     (j)    whether Plaintiffs and the other Class Members are entitled to

14            equitable relief, including but not limited to a preliminary

15            and/or permanent injunction;

16     (k)    Whether Defendants violated California's Consumers Legal

17            Remedies Act with respect to the Class Vehicles; and

18     (l)    Whether Defendant violated the consumer protection statutes

19            of various states when it sold to consumers Class Vehicles

20            that suffered from the oil consumption defect.

21     71.    Adequate Representation:  Plaintiffs will fairly and adequately

22     protect the interests of the Class Members.  Plaintiffs have retained attorneys

23     experienced in the prosecution of class actions, including consumer and product

24     defect class actions, and Plaintiffs intend to prosecute this action vigorously.

25     72.    Predominance and Superiority: Plaintiffs and the Class Members

26     have all suffered and will continue to suffer harm and damages as a result of

27     Defendants' unlawful and wrongful conduct.  A class action is superior to other

28     available methods for the fair and efficient adjudication of the controversy.

Page 16

1  Absent a class action, most Class Members would likely find the cost of
2  litigating their claims prohibitively high and would therefore have no effective
3  remedy at law.  Because of the relatively small size of the individual Class
4  Members' claims, it is likely that only a few Class Members could afford to seek
5  legal redress for Defendants' misconduct.  Absent a class action, Class Members
6  will continue to incur damages, and Defendants' misconduct will continue
7  without remedy.  Class treatment of common questions of law and fact would
8  also be a superior method to multiple individual actions or piecemeal litigation in
9  that class treatment will conserve the resources of the courts and the litigants and
10  will promote consistency and efficiency of adjudication.

<div align="center">

**FIRST CAUSE OF ACTION**

**(Violations of California Consumer Legal Remedies Act,**

**California Civil Code § 1750, *et seq.*)**

</div>

14  73.    Plaintiffs hereby incorporate by reference the allegations contained
15  in the preceding paragraphs of this Complaint.

16  74.    Plaintiffs Tran, Dersakissian, and Kim bring this cause of action on
17  behalf of themselves and on behalf of the members of the Nationwide Class, or,
18  in the alternative, on behalf of the members of the California Sub-Class against
19  all Defendants.

20  75.    Defendants are "persons" as defined by California Civil Code §
21  1761(c).

22  76.    Plaintiffs and Class Members are "consumers" within the meaning
23  of California Civil Code § 1761(d).

24  77.    By failing to disclose and concealing the defective nature of the
25  Class Vehicles and their engines with respect to the oil consumption defect from
26  Plaintiffs and prospective Class Members, Defendants violated California Civil
27  Code § 1770(a), as they represented that their Class Vehicles and their engines
28  had characteristics and benefits that they do not have, and represented that their

Class Vehicles and their engines were of a particular standard, quality, or grade when they were of another.  *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

78.     Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

79.     Defendants knew that their Class Vehicles and their engines suffered from an inherent defect because they were prone to consuming abnormally high amounts of oil, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

80.     Defendants were under a duty to Plaintiffs and the Class Members to disclose the defective nature of the Class Vehicles and their engines and/or the associated costs because:

(a)     Defendants were in a superior position to know the true state of facts about the safety defects contained the Class Vehicles and their engines;

(b)     Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their engines have a dangerous safety defect that cause them to consume abnormally high amounts of oil until after they purchased the Class Vehicles; and

(c)     Defendants knew that Plaintiffs and the Class Members could not reasonably have been expected to learn about or discover the safety defect.

81.     In failing to disclose the oil consumption defect contained in the Class Vehicles and their engines, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

82.     The facts concealed or not disclosed by Defendants to Plaintiffs and

the Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase Defendants' Class Vehicles, or to pay less for them.  Had Plaintiffs and other Class Members known that the Class Vehicles' suffer from an oil consumption defect, they would not have purchased the Class Vehicles or would have paid less for them.

83.   Plaintiffs and the Class Members are reasonable consumers who do not expect their engines to consume substantial amounts of oil between scheduled oil changes.  Plaintiffs and Class Members do not expect to have to purchase and add costly synthetic motor oil repeatedly between oil changes. Plaintiffs further expect and assume that Volkswagen will not sell or lease vehicles with known safety defects, such as the oil consumption defect, and will disclose any such defect to its consumers when it learns of the defect.

84.   As a result of Defendants' misconduct, Plaintiffs and Class Members have been harmed and have suffered actual damages.

85.   Plaintiffs and the Class are entitled to injunctive and equitable relief, including actual repairs to the Class Vehicles, to remedy the oil consumption defect.

86.   Plaintiffs have provided all Defendants with notice of their alleged violations of the CLRA pursuant to California Civil Code § 1782(a).  Defendants have failed to provide appropriate relief for their violation of the CLRA. Accordingly, Plaintiffs seek monetary, compensatory, and punitive damages, in addition to the injunctive and equitable relief that they initially sought.

## SECOND CAUSE OF ACTION

### (Violations of Unfair Business Practices Act,

### California Business & Professions Code §§ 17200, *et seq.*)

87.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

88.    Plaintiffs Tran, Dersarkissian and Kim bring this cause of action on behalf of themselves and on behalf of the Nationwide Class, or, in the alternative, on behalf of the California Sub-Class against all Defendants.

89.    California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

90.    Defendants knew that the Class Vehicles and their engines suffered from an inherent defect that caused them to consume unusually high amounts of oil, were defectively designed or manufactured, and were not suitable for their intended use.

91.    In failing to disclose the oil consumption defect, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

92.    Defendants were under a duty to Plaintiffs and the Class Members to disclose the defective nature of the Class Vehicles and their defective engines because:

   (a) Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles and their engines;

   (b) Defendants made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and their engines; and

   (c) Defendants actively concealed the defective nature of the Class Vehicles and their engines from Plaintiffs and Class Members.

93.    The facts concealed or not disclosed by Defendants to Plaintiffs and the Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase

Page 20

1  Defendants' Class Vehicles, or to pay less for them.  Had Plaintiffs and other

2  Class Members known that the Class Vehicles and their engines suffered from an

3  oil consumption defect, they would not have purchased the Class Vehicles or

4  would have paid less for them.

5  94.  Defendants continued to conceal the defective nature of the Class

6  Vehicles and their oil consumption defect even after Class Members began to

7  report problems.  Indeed, Defendants continue to cover up and conceal the true

8  nature of the problem by asserting that losing quarts and quarts of oil between

9  regularly scheduled oil changes is normal.

10  95.  By their conduct, Defendants have engaged in unfair competition

11  and unlawful, unfair, and fraudulent business practices.

12  96.  Defendants' unfair or deceptive acts or practices occurred

13  repeatedly in Defendants' trade or business, and were capable of deceiving a

14  substantial portion of the purchasing public.

15  97.  As a direct and proximate result of Defendants' unfair and deceptive

16  practices, Plaintiffs and the Class have suffered. damages.

17  98.  Defendants have been unjustly enriched and should be required to

18  make restitution to Plaintiffs and the Class pursuant to §§ 17203 and 17204 of

19  the Business & Professions Code.

20  **THIRD CAUSE OF ACTION**

21  **(Breach of Implied Warranty Pursuant to Song-Beverly Consumer**

22  **Warranty Act, California Civil Code §§ 1792 and 1791.1, *et seq.*)**

23  99.  Plaintiffs hereby incorporate by reference the allegations contained

24  in the preceding paragraphs of this Complaint.

25  100.  Plaintiffs Tran, Dersarkissian and Kim bring this cause of action on

26  behalf of themselves and on behalf of the California Sub-Class against all

27  Defendants.

28  101.  Defendants were at all relevant times the manufacturer, distributor,

Stipulation page 027

1    warrantor, and/or seller of the Class Vehicles.  Defendants knew or had reason to

2    know of the specific use for which the Class Vehicles were purchased.

3           102.   Defendants provided Plaintiffs and Class Members with an implied

4    warranty that the Class Vehicles and any parts thereof are merchantable and fit

5    for the ordinary purposes for which they were sold.  However, the Class Vehicles

6    are not fit for their ordinary purpose of providing reasonably reliable and safe

7    transportation because, inter alia, the Class Vehicles and their engines suffered

8    from an inherent defect at the time of sale that causes the consumer an

9    abnormally high amount of oil; to wit, the oil consumption defect herein alleged.

10   Therefore, the Class Vehicles are not fit for their particular purpose of providing

11   safe and reliable transportation.

12          103.   Defendants impliedly warranted that the Class Vehicles were of

13   merchantable quality and fit for such use.  This implied warranty included,

14   among other things: (i) a warranty that the Class Vehicles and their engines were

15   manufactured, supplied, distributed, and/or sold by Volkswagen were safe and

16   reliable for providing transportation and would not consumer abnormally high

17   amount of oil between scheduled oil changes; and (ii) a warranty that the Class

18   Vehicles and their engines would be fit for their intended use while the Class

19   Vehicles were being operated.

20          104.   Contrary to the applicable implied warranties, the Class Vehicles

21   and their engines at the time of sale and thereafter were not fit for their ordinary

22   and intended purpose of providing Plaintiff and the Class Members with reliable,

23   durable, and safe transportation.  Instead, the Class Vehicles are defective,

24   including but not limited to the defective design and/or manufacture of their

25   engines that suffer from the oil consumption defect alleged herein.

26          105.   Defendants' actions, as complained of herein, breached the implied

27   warranty that the Class Vehicles were of merchantable quality and fit for such

28   use in violation of California Civil Code §§ 1792 and 1791.1.

**FOURTH CAUSE OF ACTION**

**(Breach of Written Warranty Under the Magnuson-Moss Warranty Act,**

**15 U.S.C. § 2301 *et seq.*)**

106. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

107. Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Nationwide Class against Defendant Volkswagen Group of America, Inc. ("VWGOA"), only.

108. Plaintiffs and the other Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

109. VWGOA is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

110. The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

111. VWGOA's express warranty is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

112. VWGOA breached the express warranty by:

    (a)    Extending a 4-year/50,000 mile New Vehicle Limited Warranty[2] with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in

---

[2] The express warranty terms with respect to the New Vehicle Limited Warranties for other Class Vehicles are substantially similar.

For example, the express warranty for 2009 Audi vehicles states that "Audi provides Limited New Vehicle Warranty coverage for your vehicle. The warranty duration is 4 years or 50,000 miles from your vehicle's in-service date, whichever occurs first, and covers defects in manufacturer's material and workmanship."

The express warranty further provides that "The warranty covers any repair or replacement to correct a defect in manufacturer's material and workmanship. Your authorized Audi dealer will repair the defective part or replace it with a new or remanufactured Genuine Audi Part free of charge."

| | |
|---|---|
| 1 | material or workmanship at no cost to the owner or lessee; |
| 2 | (b)   Selling and leasing Class Vehicles with engines that were |
| 3 | defective in material and workmanship, requiring repair or |
| 4 | replacement within the warranty period; and |
| 5 | (c)   Refusing and/or failing to honor the express warranty by |
| 6 | repairing or replacing, free of charge, the engine or any of its |
| 7 | component parts |

113.   Plaintiffs and the other Class Members relied on the existence and length of the express warranty in deciding to purchase or lease the Class Vehicles.

114.   VWGOA's breach of the express warranty has deprived the Plaintiffs and the other Class Members of the benefit of their bargain.

115.   The amount in controversy of the Plaintiffs' individual claims meet or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

116.   VWGOA has been afforded a reasonable opportunity to cure its breach of written warranty and/or Plaintiffs and Class Members were not required to do so because affording VWGOA a reasonable opportunity to cure its breach of written warranty would have been futile.  VWGOA was also on notice of the alleged defect from the complaints and service request it received from Class Members, as well as from its own warranty data.

117.   As a direct and proximate cause of VWGOA's breach of written warranty, Plaintiffs and Class Members sustained damages and other losses in an amount to be determined at trial.  VWGOA's conduct damaged Plaintiffs and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees and/or other relief as appropriate.

**FIFTH CAUSE OF ACTION**

**(Violations of Various States' Express Warranty Statutes)**

118.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

119.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Nationwide Class under the warranty statutes of the states in which Plaintiffs and members of the Nationwide Class purchased the Class Vehicles.

120.   VWGOA provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became part of the basis of the bargain.  Accordingly, VWGOA's express warranty is an express warranty under state law express warranty statutes referred to herein.

121.   The engine and its component parts were manufactured and/or installed and/or distributed by Defendants in the Class Vehicles and are covered by the express warranty.

122.   VWGOA breached the express warranty by:

(a)     Extending a warranty to owners or lessees of the Class Vehicles, thereby warranting to repair or replace any defect in material or workmanship at no cost to the owner or lessee;

(b)     Selling and leasing Class Vehicles with engines that were defective in material and workmanship, requiring repair or replacement within the warranty period; and

(c)     Refusing to honor the express warranty by repairing or replacing, free of charge, the engine or any of its component parts affected by the oil consumption defect, and instead charging for repair and replacement parts.

123.   Plaintiffs (or the prior owners of their Class Vehicles) notified VWGOA of the breach within a reasonable time, and/or were not required to do so because affording them a reasonable opportunity to cure its breach of written

warranty would have been futile.  VWGOA was also on notice of the oil consumption defect from the complaints and service requests it received from Class Members, from repairs and/or replacements of the engines, and through its own maintenance records.

124.   As a direct and proximate cause of VWGOA's breach, Plaintiffs and the other Class Members have suffered damages and continue to suffer damages, including economic damages at the point of sale or lease, *i.e.*, the difference between the value of the vehicle as promised and the value of the vehicle as delivered.  Additionally, Plaintiffs and the other Class Members either have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

125.   Plaintiffs and the other Class Members are entitled to legal and equitable relief against VWGOA, including damages, consequential and incidental damages, specific performance, rescission, attorneys' fees, costs of suit, and other relief as appropriate.

## SIXTH CAUSE OF ACTION

### (Violations of Various States' Implied Warranty Statutes))

126.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

127.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Nationwide Class under the implied warranty statutes of the states in which Plaintiffs and members of the Nationwide Class purchased the Class Vehicles.

128.   Defendants were at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased.

129.   Defendants provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit

Page 26

1  for the ordinary purposes for which they were sold.  However, the Class Vehicles

2  are not fit for their ordinary purpose of providing reasonably reliable and safe

3  transportation because, *inter alia*, the Class Vehicles and their engines suffered

4  from an inherent defect at the time of sale that causes the consumption of an

5  abnormally high amount of oil—to wit, the oil consumption defect herein

6  alleged.  Therefore, the Class Vehicles are not fit for their particular purpose of

7  providing safe and reliable transportation.

8      130.  Defendants impliedly warranted that the Class Vehicles were of

9  merchantable quality and fit for such use.  This implied warranty included,

10  among other things: (i) a warranty that the Class Vehicles and their engines were

11  manufactured, supplied, distributed, and/or sold by Defendants were safe and

12  reliable for providing transportation and would not consume abnormally high

13  amounts of oil between scheduled oil changes; and (ii) a warranty that the Class

14  Vehicles and their engines would be fit for their intended use while the Class

15  Vehicles were being operated.

16      131.  Contrary to the applicable implied warranties, the Class Vehicles

17  and their engines at the time of sale and thereafter were not fit for their ordinary

18  and intended purpose of providing Plaintiffs and the Class Members with

19  reliable, durable, and safe transportation.  Instead, the Class Vehicles are

20  defective, including but not limited to the defective design and/or manufacture of

21  their engines that suffer from the oil consumption defect alleged herein.

<center>**SEVENTH CAUSE OF ACTION**</center>

23  <center>**(Violations of Various States' Consumer Protection Statutes)**</center>

24      132.  Plaintiffs hereby incorporate by reference the allegations contained

25  in the preceding paragraphs of this Complaint.

26      133.  Plaintiffs bring this cause of action on behalf of themselves and on

27  behalf of the Nationwide Class under the consumer protection statutes of the

28  states in which Plaintiffs and members of the Nationwide Class purchased the

<center>Page 27</center>

Class Vehicles.

134.   Plaintiffs and the other Class Members are consumers who bought or leased the Class Vehicles for personal, family, or household purposes.

135.   The Class Vehicles and their parts and replacement parts are goods or merchandise, and Plaintiffs' purchases and leases of the Class Vehicles constitute transactions.  Defendants' sale, lease, and/or repair of Class Vehicles through its authorized dealers occur in the regular course of Defendants' business.

136.   By failing to disclose and concealing the defective nature of the Class Vehicles and their engines with respect to the oil consumption defect from Plaintiffs and prospective Class Members, Defendants have engaged in deceptive, unfair, fraudulent, and misleading acts and practices in connection with consumer transactions, as they represented that their Class Vehicles and their engines had characteristics and benefits that they do not have, and represented that their Class Vehicles and their engines were of a particular standard, quality, or grade when they were of another.

137.   Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

138.   Defendants knew that their Class Vehicles and their engines suffered from an inherent defect because they were prone to consuming abnormally high amounts of oil, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

139.   Defendants were under a duty to Plaintiffs and the Class Members to disclose the defective nature of the Class Vehicles' and their engines and/or the associated repair costs because:

(d)     Defendants were in a superior position to know the true state

1      of facts about the safety defects contained the Class Vehicles
2      and their engines;

3      (e)    Plaintiffs and the Class Members could not reasonably have
4             been expected to learn or discover that their engines have a
5             dangerous safety defect that cause them to consume
6             abnormally high amounts of oil until after they purchased the
7             Class Vehicles; and

8      (f)    Defendants knew that Plaintiffs and the Class Members could
9             not reasonably have been expected to learn about or discover
10            the safety defect.

11     140.   By failing to disclose the oil consumption defect, Defendants have
12     knowingly and intentionally concealed material facts and breached their duty not
13     to do so.

14     141.   The facts concealed or not disclosed by Defendants to Plaintiffs and
15     the Class Members are material because a reasonable consumer would have
16     considered them to be important in deciding whether or not to purchase the Class
17     Vehicles, or to pay less for them.  Had Plaintiffs and other Class Members
18     known that the Class Vehicles suffer from an oil consumption defect, they would
19     not have purchased the Class Vehicles or would have paid less for them.

20     142.   Plaintiffs and the Class Members are reasonable consumers who do
21     not expect their engines to consume substantial amounts of oil between
22     scheduled oil changes.  Plaintiffs and Class Members do not expect to have to
23     purchase and add costly synthetic motor oil repeatedly between oil changes.
24     Plaintiffs further expect and assume that Defendants will not sell or lease
25     vehicles with known safety defects, such as the oil consumption defect, and that
26     Defendants will disclose any such defect to its consumers when it learns of the
27     defect.

28     143.   As a result of Defendants' misconduct, Plaintiffs and Class

1   Members have been harmed and have suffered actual damages.

2      144.   As a direct and proximate result of Defendants' unfair or deceptive

3   acts or practices, Plaintiffs and Class Members have suffered and will continue

4   to suffer actual damages.

5      145.   Plaintiffs and the other Class Members are entitled to legal and

6   equitable relief against Defendants, including damages, consequential damages,

7   specific performance, rescission, attorneys' fees, costs of suit, and other relief as

8   appropriate.

9                          **RELIEF REQUESTED**

10      146.   Plaintiffs, on behalf of themselves and all others similarly situated,

11   request the Court to enter judgment against Defendants, and accordingly request

12   the following:

13         (a)   An order certifying the proposed Class and Sub-Classes,

14               designating Plaintiffs as named representative of the Class,

15               and designating the undersigned as Class Counsel;

16         (b)   A declaration that Defendants are financially responsible for

17               notifying all Class Members about the defective nature of the

18               Class Vehicles and their engines and offer to repair and

19               remedy the oil consumption defect alleged herein;

20         (c)   A further order enjoining Defendants from the conduct

21               alleged herein, including an order enjoining Defendants from

22               concealing the existence of the oil consumption defect during

23               distribution, sales, advertisement, and during customer and

24               warranty service visits for the Class Vehicles;

25         (d)   An award to Plaintiffs and the Class of compensatory, actual

26               exemplary, and statutory damages, including interest, in an

27               amount to be proven at trial;

28         (e)   A declaration that Defendants must disgorge, for the benefit

Page 30

1          of the Class, all or part of the ill-gotten profits they received

2          from the sale or lease of their Class Vehicles, or make full

3          restitution to Plaintiffs and Class Members;

4        (f)   An award of attorneys' fees and costs, as allowed by law;

5        (g)   An award of attorneys fees and costs pursuant to California

6          Code of Civil Procedure § 1021.5;

7        (h)   An award of pre-judgment and post-judgment interest, as

8          provided by law;

9        (i)   Any and all remedies provided pursuant to the Song-Beverly

10         Act, including California Civil Code section 1794;

11       (j)   Leave to amend the Complaint to conform to the evidence

12         produced at trial; and

13       (k)   Such other relief as may be appropriate under the

14         circumstances.

15

16                 **DEMAND FOR JURY TRIAL**

17       147.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs

18   demand a trial by jury of any and all issues in this action so triable of right.

19

20   Dated: July 7, 2014           Respectfully submitted,

21                            STRATEGIC LEGAL PRACTICES, APC

22

23                            By: /s/ Karen E. Nakon
                              Payam Shahian (SBN 228406)
                              pshahian@slpattorney.com

24                            Karen Nakon (SBN 278423)
                              knakon@slpattorney.com

25                            STRATEGIC LEGAL PRACTICES, APC
                              1875 Century Park East, Suite 700

26                            Los Angeles, California 90067
                              Telephone:  (310) 277-1040

27                            Facsimile:   (310) 943-3838

28                            Jordan L. Lurie (SBN 130013)

Jordan.Lurie@capstonelawyers.com
Cody R. Padgett (SBN 277775)
Cody.Padgett@capstonelawyers.com
Capstone Law APC
1840 Century Park East, Suite 450
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

Dara Tabesh (SBN 230434)
dara.tabesh@ecotechlaw.com
EcoTech Law Group, P.C.
333 First St. Ste. C
San Francisco, CA 94105
Telephone:  (415) 503-9194
Facsimile:  (415) 651-8639

Attorneys for Plaintiffs Ali Asghari, Daniel Tran, and Katrina Noble

Dated: July 7, 2014

Respectfully submitted,
DIVERSITY LAW GROUP, APC


By:/s/ Larry W. Lee (authorized on 7/7/14)
Larry W. Lee (SBN 228175)
lwlee@diversitylaw.com
DIVERSITY LAW GROUP, APC
444 South Flower Street, Suite 1370
Los Angeles, California 90071
Telephone:   (213) 488-6555
Facsimile:    (213) 488-6554

Edward W. Choi (SBN 211334)
Edward.choi@calaw.biz
CHOI & ASSOC.
3435 Wilshire Blvd., Suite 2410
Los Angeles, CA 90010

Attorneys for Plaintiff Yung Kim

Dated: July 7, 2014

Respectfully submitted,
THE MARGARIAN LAW FIRM

By: /s/ (authorized on 7/7/14)
Hovanes Margarian (SBN 246359)
hovanes@margarianlaw.com
801 N. Brand Blvd., Suite 210
Glendale, California 91203
Telephone:  (818) 990-0418
Facsimile:   (818) 990-1418

1

Attorneys for Plaintiff Ara Dersarkissian

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOURTH AMENDED CLASS ACTION COMPLAINT