1 SEAN K. COLLINS, ATTY. AT LAW
SEAN K. COLLINS (255198)
184 High Street, Suite 503
2 Boston, MA 02110
Telephone: 617/320-8485
3 617/227-2843 (fax)
sean@neinsurancelaw.com
4
5 Attorney for Objector Michael Ghozland

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| ALI ASGHARI, DANIEL TRAN, YUNG KIM, ARA DERSARKISSIAN, and KATRINA NOBLE individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC., VOLKSWAGEN AG and AUDI AG,<br><br>Defendants. | Case No. CV13-02529-MMM-(JEMx)<br><br>**CLASS ACTION**<br><br>Hon. Margaret M. Morrow<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OBJECTION TO CLASS ACTION SETTLEMENT**<br><br>Date: May 4, 2015<br>Time: 10:00 am<br>Place: Courtroom 780 |

## I. PRELIMINARY STATEMENT

Michael F. Ghozland ("Objector"), a Settlement Class Member and former lessee and owner of an Audi A4 2.0T,[1] hereby objects to the proposed Settlement of this action, the terms of which are set forth in the Settlement Agreement and Class Notice filed with this Court on October 2, 2014. [Doc. 155].

As set forth below, the Settlement should not be approved because it completely ignores a significant sub-class of Settlement Class Members who are being asked to release the defendants for no consideration in exchange. If approved, named Plaintiffs, on behalf of a Settlement Class consisting of approximately **126,000 current** and **103,851 former** owners and lessees of Settlement Class Vehicles ("SCVs"), will release any and all oil consumption defect related claims against defendants Volkswagen Group of America, Inc., Volkswagen AG, and Audi AG (collectively, "Defendants"). Settlement Agreement, § IIIV.D [Doc. 155]. As consideration for this broad release, the proposed Settlement provides: (1) a provision under which Settlement Class members who paid an "authorized Audi deal" out of pocket to perform a "service adjustment" may seek reimbursement for parts and labor; (2) a provision whereby *current owners* of SCVs are entitled to a free service adjustment at an authorized Audi dealer; and (3) an extended warranty for *current SCV owners*. Settlement Agreement, § II.B & C. The remainder of Settlement Class Members – those *former* owners and lessees who did not pay an authorized Audi dealer out of pocket for a service adjustment (the "Sub-Class") – *are entitled to nothing under the terms of the proposed Settlement*.[2]

The Sub-Class therefore consists of all former owners and lessees who either (1) never had a "service adjustment" performed, (2) had a "service adjustment" performed by Audi at no

---

[1] Objector Michael F. Ghozland's Declaration setting forth the information requested by the Class Notice is filed contemporaneously herewith. *See* Declaration of Michael F. Ghozland in Support of Objection to Class Action Settlement ("Ghozland Decl."), ¶¶1-7.

[2] The number of Settlement Class Members who fall into the Sub-Class is likely over 100,000 people of the 229,851 person Settlement Class.

- 1 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OBJECTION TO CLASS ACTION SETTLEMENT

1 cost to them, or (3) had the "service adjustment" performed by an independent repair shop. The
2 only benefit available to former owners and lessees under the proposed Settlement is for a small
3 subset who paid an authorized Audi dealer out-of-pocket for the "service adjustment."[3]  Despite
4 incurring economic harm due to Defendants' conduct, the rest of the former owners and lessees
5 (i.e. the Sub-Class) are eligible for nothing, but are still included in the Settlement Class.

6       Given that very few former owners likely paid an "authorized Audi dealer" out of pocket
7 for a service adjustment, the Sub-Class is likely to consist of nearly all 100,000+ former
8 owners/lessees of the SCVs included in the proposed Settlement Class.

9       The fact that the Sub-Class was left out in the cold is significant because former owners
10 and lessees, who did not pay Audi out-of-pocket for a "service adjustment," still suffered
11 damages as a result of Defendants' conduct, including economic damages at the point of sale or
12 lease, i.e., the difference between the value of the vehicle as promised and the value of the
13 vehicle as delivered. Additionally, Objector and the Sub-Class have incurred out-of-pocket costs
14 from the ongoing need to add oil to the engine between oil changes.  Further, given that by
15 definition the Sub-Class consists of just former owners, the Sub-Class has been harmed by the
16 diminution of value in their vehicles at the time of resale as a direct result of the Oil
17 Consumption issues that plague the SCVs and which are widely known to the consuming public
18 in the market for a used Audi.  In retrospect however, that the interests of the Sub-Class were
19 neither advanced nor protected during settlement negotiations is not surprising.  Plaintiffs, as
20 putative class representatives, all currently hold title to SCVs,[4] meaning that their interests

---

[3] While no information has been provided by the named Plaintiffs as to how many former owners or lessees paid an authorized Audi dealer for a service adjustment, this is likely to be a small group of former owners given that (1) Defendants denied the existence of an oil consumption problem for years and (2) when Defendants finally did start offering fixes to the oil consumption issue, many of the adjustments would have been covered under the SCVs' warranty.

[4] According to the declarations submitted in support of final approval of the Settlement, Settlement Class Representatives Ali Asghari, Daniel Tran, Yung Kim, Ara Dersarkissian, and Katrina Noble (collectively "Plaintiffs"), are all *current* owners of Settlement Class Vehicles. *See* Declaration of Ari Asghari in Support of Plaintiffs' Motion for Final Approval of Class

- 2 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OBJECTION TO CLASS ACTION SETTLEMENT

1 conflict with those of the Sub-Class they purportedly represent. Defendants are interested in
2 minimizing the cost of the Settlement while securing as broad a release as possible. It is patently
3 unfair for a class action settlement to forever release a defendant from all claims, yet provide a
4 certain group, i.e. the Sub-Class, with absolutely nothing in return.

5       As a former lessee and owner, Objector seeks to represent the Sub-Class and concurrently
6 filed a Motion to Intervene in this Action.  As such, Objector respectfully requests that the Court
7 not approve the Settlement unless and until the issues raised in the Objection are resolved and the
8 Settlement provides relief to all Settlement Class Members, including the Sub-Class.

## II.    FACTUAL BACKGROUND

### A.    The Litigation

11       On May 1, 2012, this Action was initially filed as a putative class action in the Northern
12 District of California.  The Action was eventually transferred to this Court and consolidated with
13 several related actions.  After the Settlement Agreement was executed by Plaintiffs in June
14 2014[5], Plaintiffs Ali Asghari, Daniel Tran, Yung Kim, Ara Dersarkissian and Katrina Noble filed
15 a Fourth Amended Complaint ("FAC") on behalf of a nationwide class, against Defendants.  By
16 definition of the Class, the FAC covers claims of current and former owners or lessees of the
17 SCVs. ¶ 66 of FAC. The FAC alleges in part that the SCVs suffer from a design defect that

---

Action Settlement; and for Award of Attorneys' Fees, Costs, and Expenses, and Enhancement Awards to Class Representatives ("Asghari Decl."), ¶4 [Doc. 159-10]; Declaration of Ara Dersarkissian in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement; and for Award of Attorneys' Fees, Costs, and Expenses, and Enhancement Awards to Class Representatives ("Dersarkissian Decl."), ¶2 [Doc. 159-11]; Declaration of Daniel Tran in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement; and for Award of Attorneys' Fees, Costs, and Expenses, and Enhancement Awards to Class Representatives ("Tran Decl."), ¶4 [Doc. 159-12]; Declaration of Katrina Noble in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement; and for Award of Attorneys' Fees, Costs, and Expenses, and Enhancement Awards to Class Representatives ("Noble Decl."), ¶4 [Doc. 159-13]; Declaration of Yung Kim in Support of Plaintiffs' Motion for Class Representative Service Award ("Kim Decl.") [Doc. 159-14].

[5] The Defendants executed the Settlement Agreement on July 14, 2014, one week after the FAC was filed.

1 causes them to consume excessive oil, that Defendants knew of the problem, and that Defendants
2 have refused to adequately redress the harm the problem has caused the Class.

3 Given that the FAC complaint's Class definition includes all current and former owners
4 and lessees, and the FAC explicitly mentions the type of economic harm faced by the Sub-Class,
5 it appeared that the former owners and lessees interests were represented in the litigation. *See* ¶ 6
6 of FAC ("The oil consumption defect thus requires the addition of substantial amounts of oil
7 between scheduled oil changes … as a result of the oil consumption defect… and Defendants'
8 refusal to acknowledge its existence and fix the problem, many consumers have reported that
9 they have resorted to purchasing extra supplies of oil and carrying it with them in their trunk at
10 all times when driving."); ¶ 11 ("…[Defendants] have not offered to reimburse all Class Vehicles
11 owners and leaseholders who incurred costs relating to the oil consumption defect, including
12 costs related to…unreasonably frequent oil changes/additions between scheduled oil changes.");
13 ¶ 15 ("Mr. Asghari on several occasions has paid out of pocket to add supplemental oil between
14 oil scheduled (sic) changes."); ¶ 23 ("Mr. Tran purchased a quart of oil from the dealer at an out
15 of pocket cost of $8.73); ¶ 29 ( Defendants refused to pay for "the out-of-pocket costs that Mr.
16 Kim has incurred when he added supplemental oil between scheduled oil changes."); ¶ 36 ("In
17 addition, Ms. Noble has incurred out of pocket costs in connection with adding supplemental oil
18 between scheduled oil changes…"); ¶ 60 ("As a result of the oil consumption defect, the value of
19 the Class Vehicles has diminished, including without limitation the resale value of the Class
20 Vehicles."); ¶ 117 ("VWGOA's conduct damaged Plaintiffs and Class Members, who are
21 entitled to recover … diminution in value[.]"); and ¶ 124 ("As a direct and proximate cause of
22 VWGOA's breach, Plaintiffs and the other Class Members have suffered damages and continue
23 to suffer damages, including economic damages at the point of sale or lease, i.e., the difference
24 between the value of the vehicle as promised and the value of the vehicle as delivered.").

25 The proposed Settlement purports to be on behalf of Settlement Class Members defined
26 as "All persons and entities who purchased or leased a Settlement Class Vehicle, as defined in
27 Section I.G. of this Agreement, in the United States of America.". *See* Settlement Agreement at 3

28

- 4 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OBJECTION TO CLASS ACTION SETTLEMENT

[Doc. 155]. The purported benefits of the Settlement are (1) current and former owners or lessees are entitled to reimbursement for the Service Adjustment if it was performed by an authorized Audi dealer and the consumer paid out of pocket, (2) a free Service Adjustment for current owners or lessees and (3) a warranty extension for current owners or lessees. *See* Settlement Agreement at 7-11 [Doc. 155]. The "Service Adjustment" is defined as follows: "'Service Adjustment' shall mean the following service by an authorized Audi dealer with respect to the Settlement Class Vehicles: (1) replacement of the crankcase pressure regulating valve, front crankshaft seal and front crankshaft bolt and (2) updating the Engine Control Module (ECM) software to match the new part(s) referred to in (1) above, consistent with any applicable Audi Technical Service Bulletin that is in effect at the time the Service Adjustment is performed." *See* Settlement Agreement at 5 [Doc. 155].

In exchange, the Settlement Agreement offers a very broad release to all Defendants releasing them from any and all claims by "any and all Settlement Class Members based on Oil Consumption of Settlement Class Vehicles." Settlement Agreement, at 5-6 [Doc. 155]. No benefit is offered to former owners and lessees who did not pay Audi out of pocket for the Service Adjustment even though this Sub-Class is likely to exceed 100,000 people in the 229,851 person Settlement Class.

**B.      Objector Ghozland**

Objector is a former lessee of a SCV 2009 Audi A4 2.0T, which he leased from 2009 to 2012, purchased in March 2012 after his lease term expired, and then sold in October 2013. Ghozland Decl., ¶4.  Objector's Audi, like all SCVs, suffered from significant issues related to excessive and improper engine oil consumption.  *Id*., ¶¶11-16.  Objector's vehicle suffered from excessive oil consumption resulting in his expending significant out of pocket funds to add oil in between scheduled oil changes. *Id*., ¶12.  Eventually at the advice of an Audi dealer, Objector began carrying a case of oil in the trunk of his Audi.  *Id*., ¶14.   During 2012 and 2013, Objector took his car to multiple Audi dealerships to complain about the Oil Consumption issue, and each

time he was told the oil consumption was normal and no fix was performed. *Id*., ¶11-17. Objector sold his vehicle in October 2013 to a used car dealer. *Id*., ¶18.

After receiving Notice of the proposed Settlement on or about February 5, 2015, Objector noted that the terms of the Settlement offered no benefit to him and others similarly situated but would forever extinguish any and all claims he had or could have against defendants from the Oil Consumption defects. *Id*., ¶22. Objector files this Objection to the proposed Settlement, along with the Motion to Intervene, in order to protect his rights and those of the substantial Sub-Class he seeks to represent.

### III.  OBJECTIONS TO THE SETTLEMENT

#### A.  The Sub-Class Gets Nothing Under the Settlement

The Settlement provides no benefits for the Sub-Class – former owners and lessees of SCVs who did not pay Audi out-of-pocket for the Service Adjustment. Members of the Sub-Class likely had the same or similar experience as Objector when taking their vehicle in to fix the Oil Consumption issue and were told by Defendants that the vehicle's excessive and inappropriate oil consumption was normal. Like Objector, many members of the Sub-Class likely drove their defective vehicles that burned excessive amounts of oil for months or years without ever receiving a fix since Defendants initial strategy was to deny a problem existed. Further, even those members of the Sub-Class who eventually did receive a Service Adjustment from Audi under their vehicle's warranty after months of complaining receive nothing under the Settlement in exchange for their release – no reimbursement for out-of-pocket expenses related to adding oil, and no reimbursement for the diminution in value of their vehicle.

As a result of Defendants' alleged misconduct, Objector and the members of the Sub-Class suffered cognizable economic damages. First, the Sub-Class suffered damages at the point of sale or lease of their Settlement Class Vehicles, *i.e.*, the difference between the value of the vehicle as promised and the value of the vehicle as delivered. Collins Decl., ¶5. Second, the Oil Consumption defects caused Objector and the other Sub-Class members to expend money on supplemental oil purchases at their dealerships or other third-party repair facilities and/or take

1 other remedial measures related to the defects. *Id.*, ¶6. And third, the Sub-Class suffered
2 diminution in the value of their Settlement Class Vehicles at the time of resale because of
3 widespread online complaints from Audi owners all over the world, including even a Facebook[6]
4 page dedicated to the issue, resulting in public awareness of the oil consumption defects that
5 plague the SCVs decrease their resale value. *Id.*, ¶7. Now the Sub-Class members are being
6 asked to approve a Settlement that gives them nothing while forever relinquishing any and all
7 claims they have or could have against the Defendants.

8 The Supreme Court's decision in *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 627, 117
9 S.Ct. 2231, (1997) is instructive. In *Amchem*, the Court affirmed the rejection of a class action
10 settlement that "achieved a global compromise with no structural assurance of fair and adequate
11 representation for the diverse groups and individuals affected." *Amchem*, 521 U.S. at 627, 117
12 S.Ct. 2231. The Court found that the settlement terms were "designed to confine compensation
13 and to limit defendants' liability." *Id*. Importantly, the Court expressly noted that, much like the
14 proposed Settlement here, certain class members' claims would be "extinguished with no
15 compensation" if the settlement gained approval. *Id*. The Court further noted that "where there
16 are significant differences among subgroups within the class, 'the members of each subgroup
17 cannot be bound to a settlement except by consents given by those who understand that their role
18 is to represent solely the members of their respective subgroups.'" *Id.*; *see also Smith v. Sprint
19 Communs. Co., L.P.*, 387 F.3d 612, 613 (7th Cir. 2004); *In re General Motors Corp. Pick–Up
20 Truck Fuel Tank Prods. Liability Litig*. ("*GM Pick–Up*"), 55 F.3d 768, 808 (3rd Cir.1995) ("One
21 sign that a settlement may not be fair is that some segments of the class are treated differently
22 from others."); s*ee also Managing Class Action Litigation: A Pocket Guide for Judges* at p. 15
23 (Fed. Jud. Ctr. 2005) (providing that the release of liability without providing a remedy is a "hot
24 button indicator" establishing unfairness of a class settlement).

---

[6] https://www.facebook.com/pages/Audi-Oil-Consumption-Problems/662574380479847

Moreover, the lack of relief available to the Sub-Class in the Settlement is similar to that offered in a proposed settlement rejected by the court in *Acosta v. Trans Union, LLC*, 243 F.R.D. 377 (C.D.Cal.2007).  There, the court considered a settlement where "economic relief" was available to only a certain subclass, whereas over two-thirds of the settlement class would be completely ineligible for any economic relief. *Id*. Compounding the issue was that within the class members ineligible for economic relief, there existed a further sub-set of class members who would not benefit from the settlement's injunctive relief provisions. *Id*. The court denied approval of the settlement, stating:

> For these millions of class members, the Settlement therefore provides zero opportunity for any relief whatsoever. The Settlement nevertheless would absolve them of all possible claims unless they have both the good fortune to receive notice of the Settlement and the sagacity to take affirmative opt out action in order to protect claims of which they may be unaware.
>
> This compromise is unacceptable. The Court is aware of no case in which a settlement was allowed that partitioned a class so as to provide relief to one segment and to deny it completely to another.

*Id*.; *see also True v. Am. Honda Motor Co*., 749 F. Supp. 2d 1052, 1069 (C.D. Cal. 2010) (rejecting proposed automotive defect settlement as "patently unfair" because it made "an arbitrary distinction among class members with identical legal claims and injuries" where some class members were entitled to receive a cash award, and others only a DVD and limited rebate).

Here, as in *Acosta*, the Settlement provides members of the Sub-Class no relief in exchange for a broad release of claims against Defendants. As such, the Court should not approve the Settlement until its terms are renegotiated to ensure the Sub-Class has received consideration in exchange for such a release.

**B.     The Named Plaintiffs Do Not Adequately Represent the Sub-Class**

As a result of the disparate treatment of the Sub-Class described above, the named Plaintiffs have not adequately represented all Settlement Class Members. Indeed, not a single

- 8 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OBJECTION TO CLASS ACTION SETTLEMENT

1  named Plaintiff is a *former* owner or lessee of a Settlement Class Vehicle.[7]  Rather, the named
2  Plaintiffs are all *current* owners and, as such, none of the named representatives fall into the
3  Sub-Class of Settlement Class Members that Objector seeks to represent.  As a result of this
4  distinction, none of the named Plaintiffs can adequately represent and protect the interests of the
5  Sub-Class.  It thus comes as no surprise that the Sub-Class is receiving no consideration from the
6  proposed Settlement.

7  "To represent adequately a class, class representatives' interests must align with all
8  putative class members' interests...." *Andrews Farms v. Calcot, Ltd.*, No. CV–F–07–0464 LJO,
9  2009 WL 1211374, at *11 (E.D.Cal. May 1, 2009); *see True*, 749 F. Supp. 2d at 1065 (rejecting
10 settlement based in part on a finding that "the proposed settlement here seems to create a conflict
11 between the representative plaintiffs and those class members not eligible for Option C" and
12 expressing misgivings "about their adequacy as representatives.").  As the 7th Circuit noted in
13 vacating class certification in the context of a class settlement:

> [S]ettlement is not a cure-all: "[The] other specifications of [Rule 23]—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context." [quoting *Amchem*, 521 U.S. at 620]. These include the requirement that the class representatives' claims be typical of those of the class and that the representatives will adequately protect the class's interests. FED. R. CIV. P. 23(a)(3), (4).

*Smith v. Sprint Communs. Co., L.P.*, 387 F.3d 612, 613 (7th Cir. 2004); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) (stating that due to the nature of the claims the class required division into subclasses with separate representation); *In re Community Bank of N. Va.*, 418 F.3d 277, 307-08 (3d Cir. 2005) ("[W]e are not convinced based on the present record that the named plaintiffs adequately represent the interests of the entire class. At the very least,

---

[7] To the extent that Ara Dersarkissian is a former owner and Sub-Class member, his declaration is somewhat vague on this detail, then Dersarkissian is not an adequate representative of the Sub-Class as he agreed to the terms of a settlement that offered him nothing, while seeking a class representative incentive award of $2,500. This is completely improper and demonstrates Dersarkissian's inadequacy as a Sub-Class representative. Collins Decl., ¶9.

- 9 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OBJECTION TO CLASS ACTION SETTLEMENT

1 consideration should have been given to the feasibility of dividing the class into sub-classes so
2 that a court examining the proposed settlement could have judged the fairness of the settlement
3 as it applied to similarly situated class members").

4 Here, the significant interests of Objector and the Sub-Class have not and cannot be
5 adequately represented by the named representatives in the Action. The fundamental conflict
6 between the objectives of the named representatives and the Settlement Class they purport to
7 represent calls for the Court to not approve the Settlement unless and until these conflicts are
8 resolved.

### C. Comparable Settlements Do Not Support Approval

10 In support of final approval, Plaintiffs cite to several automotive defect class action
11 settlements that were approved by district courts in California. *See* Plaintiffs' Motion for Final
12 Approval of Class Action Settlement at 14-17. [Doc. 158]. However, a review of these cases
13 shows that the settling parties involved either kept the class definition narrow and excluded
14 former owners, or they achieved some consideration for the entire Class. Consider, for example,
15 *Browne v. Am. Honda Motor Co.*, No. CV 09-06750 MMM DTBX, 2010 WL 9499072, at *1
16 (C.D. Cal. July 29, 2010), in which this Court approved a settlement on behalf of a class defined
17 as "residents of the United States, the Commonwealth of Puerto Rico, U.S. Virgin Islands, and
18 Guam who currently own or lease specific Honda vehicles." In the present case the Settlement
19 Agreement does not limit the Class to current owners, using the following language instead: "All
20 persons and entities who purchased or leased a Settlement Class Vehicle, as defined in Section
21 I.G. of this Agreement, in the United States of America." Settlement Agreement at 3. It is not
22 typical in cases of this nature to include former owners in the class definition but provide them
23 with no consideration - former owners are either excluded from the class definition, as in
24 *Browne*, or if included in the Class all former owners receive some consideration for their
25 release. Cases cited by Plaintiffs in their final approval papers support this basic concept. *See*
26 *Kearney v. Hyundai Motor Am.*, No. SACV 09-1298-JST, 2013 WL 3287996 (C.D. Cal. June 28,
27 2013) (approving settlement and certifying settlement class of ***eligible vehicle owners***); *Eisen v.*
28

- 10 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OBJECTION TO CLASS ACTION SETTLEMENT

*Porsche Cars N. Am., Inc.*, No. 2:11-CV-09405-CAS, 2014 WL 439006, at *1 (C.D. Cal. Jan. 30, 2014), appeal dismissed (Sept. 22, 2014) (approving settlement that provided "enhanced repairs to *owners* of Porsche automobiles covered by the settlement"); *Sadowska v. Volkswagen Grp. of Am., Inc*., No. CV 11-00665-BRO AGRX, 2013 WL 9600948 (C.D. Cal. Sept. 25, 2013) (approving settlement that established a reimbursement program for former owners of class vehicles who sold or traded their vehicles at a loss due to the alleged defect); *Aarons v. BMW of N. Am., LLC*, No. CV 11-7667 PSG CWX, 2014 WL 4090564, at *3 (C.D. Cal. Apr. 29, 2014) (approving settlement that provided reimbursements for class members who sold their vehicles as a result of CVT failures); *Browne v. Am. Honda Motor Co*., No. CV 09-06750 MMM DTBX, 2010 WL 9499072, at *1 (C.D. Cal. July 29, 2010) (approval settlement on behalf of class consisting of "750,000 residents of the United States, the Commonwealth of Puerto Rico, U.S. Virgin Islands, and Guam *who currently own or lease* specific Honda vehicles").

Simply put, and contrary to Plaintiffs' assertions, the Settlement before the Court is significantly inferior to similar automotive defect settlements approved by courts because it fails completely to provide any relief to the Sub-Class.  Typical settlements of cases of this type provide relief to former owners of class vehicles, or exclude such individuals from the class so as not to release their claims.  Collins Decl., ¶10.  By contrast, the Settlement here wantonly comprises the claims of likely over one hundred thousand Settlement Class Members and should not be approved.

**IV. CONCLUSION**

The proponents of the Settlement have not met their burden to establish that it is fair, reasonable and adequate.  Nor have Plaintiffs established their own adequacy in seeking to settle this action on behalf of the Settlement Class. The Court should deny final approval of the Settlement.

DATED:  March 23, 2015          Respectfully submitted,


                                   /s/ Sean K. Collins
                                ────────────────────────
                                    SEAN K. COLLINS

                                SEAN K. COLLINS, ATTORNEY AT LAW
                                184 High Street, Suite 503
                                Boston, MA 02110
                                Telephone:  617/320-8485
                                617/227-2843 (fax)
                                sean@neinsurancelaw.com


                                AMIRI LAW FIRM P.C.
                                ARSHAN AMIRI
                                2692 Piantino Circle
                                San Diego, CA 92108
                                Telephone: 619/684-5153
                                617/227-2843 (fax)
                                arshan@amirifirm.com


                                Counsel for Objector Michael F. Ghozland

- 12 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OBJECTION TO CLASS ACTION SETTLEMENT