CRAIG L. WINTERMAN (Bar No. 75220)
Email: cwinterman@hrllp-law.com
L. DEAN SMITH, JR. (Bar No. 248678)
Email: dsmith@hrllp-law.com
HERZFELD & RUBIN LLP
1925 Century Park East, Suite 900
Los Angeles CA 90067
Telephone: (310) 553-0451 Facsimile: (310) 553-0648

JEFFREY L. CHASE
Email: jchase@herzfeld-rubin.com
MICHAEL B. GALLUB
Email: mgallub@herzfeld-rubin.com
HERZFELD & RUBIN, P.C.
125 Broad Street
New York, N.Y. 10004
Telephone (212) 471-8500 Facsimile (212) 344-3333
(*Admitted Pro Hac Vice*)

Attorneys for Defendant,
VOLKSWAGEN GROUP OF AMERICA, INC.,
VOLKSWAGEN AG and AUDI AG

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| ALI ASGHARI, DANIEL TRAN, YUNG KIM, ARA DERSARKISSIAN and KATRINA NOBLE, individually, and on behalf of a class of similarly situated individuals, | Case No. CV 13-02529-MMM (JEMx) |
|---|---|
| | **CLASS ACTION** |
| Plaintiffs, | |
| | Hon. Margaret M. Morrow |
| vs. | |
| | **VOLKSWAGEN GROUP OF AMERICA, INC., VOLKSWAGEN AG AND AUDI AG'S MEMORANDUM OF LAW IN OPPOSITION TO OBJECTOR MICHAEL F. GHOZLAND'S MOTION TO INTERVENE** |
| VOLKSWAGEN GROUP OF AMERICA, INC., VOLKSWAGEN AG and AUDI AG | |
| Defendants | |

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  PRELIMINARY FACTUAL STATEMENT**........................................ 1

**II. ARGUMENT** ............................................................................ 4

      A.    The Proposed Settlement Will Not Impair or Impede A Significant Protectable Interest.............................. 5

      B.    The Named Plaintiffs Adequately Represent the Interests of the Settlement Class........................................ 7

      C.    Ghozland's Intervention Motion is Untimely...................... 10

**III.  CONCLUSION** ...................................................................... 13

-i-

**VOLKSWAGEN GROUP OF AMERICA, INC., VOLKSWAGEN AG AND AUDI AG'S MEMORANDUM OF LAW IN OPPOSITION TO OBJECTOR MICHAEL F. GHOZLAND'S MOTION TO INTERVENE**

1

## TABLE OF AUTHORITIES

2  **Cases**

3  *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997)...............................................9

4  *Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) .............................................4, 7

5  *Bailey v. AK Steel Corp.*, 2008 U.S. Dist. LEXIS 5751 (S.D. Ohio Jan. 14, 2008) ...6

6  *California Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*,

7      309 F.3d 1113 (9th Cir. 2002).............................................................................10

8  *California ex rel. Lockyer v. United States*, 450 F.3d 436 (9th Cir. 2006) ................5

9  *Cohorst v. BRE Props.*, 2011 U.S. Dist. LEXIS 87263 (S.D. Cal. Aug. 5, 2011) .5, 6,

10     8, 9, 11

11  *Doe v. Cin-Lan, Inc.*, 2011 U.S. Dist. LEXIS 835 (E.D. Mich. Jan. 5, 2011) ............5

12  *Glass v. UBS Fin. Servs., Inc.*, 2007 U.S. Dist. LEXIS 8509 (N.D. Cal. Jan. 17,

13     2007, *aff'd* 331 F. App'x 452 (9th Cir. 2009).......................................................11

14  *Hofstetter v. Chase Home Fin., LLC*, 2011 U.S. Dist. LEXIS 129218 (N.D. Cal.

15     Nov. 8, 2011)........................................................................................................6

16  *In Re Basin Water Inc. Securities Litig.*, CV-2:07-08359, Dkt. 65............................1

17  *In re Charles Schwab Corp. Sec. Litig.*, 2011 U.S. Dist. LEXIS 18840 (N.D. Cal.

18     Feb. 11, 2011).................................................................................................5, 11

19  *In re Cmty. Bank of N. Virginia*, 418 F.3d 277 (3d Cir. 2005)...........................11, 12

20  *In re Literary Works*, 654 F.3d 242 (2d Cir. 2011) ...................................................9

21  *In re Nissan Radiator/Transmission Cooler Litig.*, 2013 U.S. Dist. LEXIS 116720

22     (S.D.N.Y. May 30, 2013).....................................................................................9

23  *Lane v. Facebook, Inc.*, 2009 U.S. Dist. LEXIS 103668 (N.D. Cal. Oct. 23, 2009) ..5

24  *Milligan v. Toyota Motor Sales, U.S.A., Inc.*, 2012 U.S. Dist. LEXIS 189782 (N.D.

25     Cal. Jan. 6, 2012)..............................................................................................8, 9

26  *Morazan v. Aramark Uniform & Career Apparel Grp.*, 2013 U.S. Dist. LEXIS

27     125623 (N.D. Cal. Sep. 3, 2013).......................................................................10

28  *NAACP v. New York*, 413 U.S. 345 (1973) ............................................................10

-ii-

*Northwest Forest Res. Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996) ..............10

*Perry v. Proposition 8 Official Proponents,* 587 F.3d 947 (9th Cir. 2009) ...............7

*SEC v. Lewis*, 2006 U.S. Dist. LEXIS 28694 (C.D. Cal. May 10, 2006) ..............4, 8

*Smith v. L.A. Unified Sch. Dist.*, 2014 U.S. Dist. LEXIS 6004 (C.D. Cal. Jan. 16, 2014).......................................................................................................5, 10

*Tobin v. Conopco, Inc.*, 2013 U.S. Dist. LEXIS 57422 (N.D. Cal. Apr. 22, 2013)....5

*United States v. Aerojet Gen. Corp.*, 606 F.3d 1142 (9th Cir. 2010) ........................4

*United States v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004) ...............4, 10, 11

*Yoshioka v. Charles Schwab Corp.*, 2011 U.S. Dist. LEXIS 147483 (N.D. Cal. Dec. 22, 2011)......................................................................................................8

**Treatises**

7C Wright, Miller & Kane (1986) ............................................................................7

**MEMORANDUM IN OPPOSITION TO MOTION TO INTERVENE**

## I.    PRELIMINARY FACTUAL STATEMENT

Defendants Volkswagen Group of America, Inc. ("VWGoA"), Volkswagen AG and Audi AG (collectively "Defendants") respectfully submit this Memorandum of Law in opposition to Objector Michael F. Ghozland's ("Ghozland") Motion to Intervene ("Motion") in this class action.  The purported reason for the Motion is to protect the interests of former owners and lessees of Class Vehicles who did not incur out-of-pocket expenses for a Service Adjustment by an authorized Audi dealer.  Ghozland also erroneously asserts that no class representative is a former owner or lessee of a Class Vehicle and that his interest is not adequately protected by the class representatives.

Mr. Ghozland has not been entirely candid with the Court.  He neglects to state that he is a practicing plaintiffs' attorney who previously worked in a class action law firm.  He also neglects to state that his counsel, Mr. Collins, was a former colleague of his at that firm.  *See In Re Basin Water Inc. Securities Litig.,* CV-2:07-08359, Dkt. 65.  Mr. Ghozland complains that because he did not incur out-of-pocket expense for a pre-Notice Service Adjustment, he receives no benefit as a former lessee/owner under the Settlement.  He seeks to intervene as purported "representative" of a so-called "sub-class" of former lessees or owners who were not charged by an Audi dealer for performance of a Service Adjustment, arguing they should receive compensation for alleged out-of-pocket payments for "extra" oil and diminution in value of the Class Vehicles.  He offers no proof of any defect in his or any Class Vehicle, nor does he offer proof that his or any other Class Vehicle consumed "excessive" amounts of oil.  He provides no indication of what would constitute "excessive" oil consumption, and no proof or even a quantification of any "economic damages" he claims to have sustained.

In their submissions, Ghozland and his counsel intimate that the objection, and this Motion, emanated from receipt of the Class Notice by mail "on or around February 5, 2015." Dkt. 164, ¶22; Dkt. 167-2, ¶4.  In fact, however, more than six months earlier on July 22, 2014, Attorney Collins contacted Class Counsel in this matter to discuss the proposed Settlement "on behalf of an individual in California who leased a 2009 Audi A4 with oil consumption issues." Mr. Ghozland, a California resident who leased a 2009 Audi A4, is presumably that "individual." Chase Dec., Exh., D.  Attorney Collins continued to communicate with Class Counsel regarding the proposed Settlement through the Fall of 2014. *Id*., Exh. D, during which time he was well aware of the terms of the proposed Settlement. Movant and his counsel, both attorneys, were undoubtedly monitoring the filings of this action on Pacer, including the filings in support of plaintiffs' motion for preliminary approval of the proposed Settlement.  They could have moved to intervene at that time and before the Court ruled on the motion for preliminary approval.  They chose not to.  In an email dated October 22, 2014, six days after this Court's October 16, 2014 Preliminary Approval Order, Attorney Collins requested that Class Counsel remove from the Settlement Class the purported "sub-class" which Mr. Ghozland now seeks to represent.  *Id.*  Thereafter, they chose to lie in wait for months until moving to intervene at the eleventh hour, a mere 45-days before the May 4, 2015 final fairness hearing, after allowing the Court to expend significant judicial resources in connection with the preliminary approval process, and defendants to incur the significant expense of Class Notice and creating/initiating the claims process.

Mr. Ghozland had ample opportunity to opt out of this proposed Settlement and pursue his own remedies. He chose not to opt out.  While he estimates his purported "sub-class" to comprise more than 100,000 of the 229,851 Settlement Class Members, only one other member has filed an objection based upon the

1    grounds stated by Ghozland.[1]  That means that even under Ghozland's estimate,

2    99.99998% of the "sub-class" members he seeks to exclude from the Settlement do

3    not join in his objection.

4          While Ghozland claims he should receive money for "extra" oil purchased on

5    account of excessive oil consumption, he provides no proof that he purchased any

6    "extra" oil, or that his vehicle suffered from "excessive" oil consumption.  Mr.

7    Ghozland neglects to disclose that in February and March 2013, approximately six

8    months before he sold his vehicle, a two part oil consumption test was performed by

9    an authorized Audi dealer and showed that his vehicle was consuming 0.21 quarts of

10   oil per 1,000 miles.  The Owner's Manual for his vehicle describes that under

11   normal conditions, the rate of oil consumption depends on a number of vehicular,

12   usage and environmental factors for which no standard rate can be specified, but

13   "[d]epending on the way the vehicle is driven and the operating conditions, oil

14   consumption can be up to 1 quart per 1,200 miles (1 litre/2,000 km)…" Declaration

15   of Robert Arturi dated April 13, 2015 ("Arturi Dec."), ¶¶4-8 and Exhs. A, B and C.

16   The oil consumption test showed that Ghozland's vehicle's rate of oil consumption

17   was far lower (almost 5 times lower) than the rate stated in his Owner's Manual. *Id.*

18         Mr. Ghozland also neglects to disclose that his vehicle actually received the

19   Service Adjustment referred to in the Settlement, at no cost to him, on February 21,

20   2013, about seven months before his sold his vehicle. See Arturi Dec., ¶¶3-5 and

21   Exh. A.  With the Service Adjustment having been performed, and the oil

22   consumption test having showed his vehicle to be consuming oil at a rate almost 5

23   times lower than the Owner's Manual rate, it strains credulity that Ghozland can

24   claim to have suffered "diminished value" on account of excessive oil consumption.

25   He submits no proof of diminished value and does not even disclose the amount for

26   which he sold his vehicle.

27

28

---

[1] Even Mr. Ghozland's wife Jennifer Ghozland, the co-owner of his vehicle, has not filed an objection.

1        Mr. Ghozland is also incorrect in his claim that former lessees/owners were

2    not represented because all of the named plaintiffs are current lessees/owners.

3    Three of the named plaintiffs, Ali Asghari, Yung Kim and Ara Dersarkissian, are

4    former lessees who no longer possess their Class Vehicles.  Moreover, Messrs.

5    Asghari, Kim and Dersarkissian did not incur out-of-pocket expense for a Service

6    Adjustment by an authorized Audi dealer.  These former lessees, and the other

7    plaintiffs, who are current owners/lessees, are clearly adequate representatives.  Mr.

8    Ghozland, on the other hand, would not be an appropriate representative based on

9    the facts discussed above.  Accordingly, the Motion should be denied.

10

11    **II.    ARGUMENT**

12        Pursuant to Fed. R. Civ. P. 24(a), a party seeking to intervene as a matter of

13    right must demonstrate an unconditional right to intervene by federal statute, or

14    demonstrate the following four elements: (1) a significant protectable interest

15    relating to the property or transaction that is the subject of the action; (2) the

16    disposition of the action may, as a practical matter, impair or impede the

17    intervenor's ability to protect his or her interest; (3) the application is timely; and (4)

18    the existing parties may not adequately represent the intervenor's interest. *United*

19    *States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010); *United States v.*

20    *Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).  The party seeking

21    intervention bears the burden of demonstrating that all four requirements have been

22    met.  *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004); *SEC v.*

23    *Lewis*, 2006 U.S. Dist. LEXIS 28694, *4 (C.D. Cal. May 10, 2006).  Failure to

24    satisfy any one of these four requirements is fatal to an attempt to intervene.

25    *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).  Proposed Intervenor

26    Ghozland has no unconditional right to intervene, and fails to demonstrate *all* four

27    factors necessary for intervention.

28

A. <u>The Proposed Settlement Will Not Impair or Impede A Significant</u>
<u>Protectable Interest</u>

  Even if the disposition of a lawsuit would affect a proposed intervenor's interests, those interests may not be impaired if other means exist to protect them. *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006); *Smith v. L.A. Unified Sch. Dist.*, 2014 U.S. Dist. LEXIS 6004, *33 (C.D. Cal. Jan. 16, 2014).  In the class action settlement context, intervention is unnecessary because the opt-out/objection procedure is sufficient to protect the interests of class members seeking intervention.  *Cohorst v. BRE Props.*, 2011 U.S. Dist. LEXIS 87263, *18 (S.D. Cal. Aug. 5, 2011) ("Fatal to her claim, however, she fails to identify how resolution of this action will impair or impede her ability to protect her interests. Roman is able to opt-out of the class and pursue her own damages action against Defendants.  Alternatively, Roman may raise any objections to the settlement at the time of the Final Hearing."); *Tobin v. Conopco, Inc.*, 2013 U.S. Dist. LEXIS 57422, at *4 (N.D. Cal. Apr. 22, 2013) (denying intervention and stating "[s]econd, if the Court ultimately were to approve a settlement, Ms. Astiana could opt out or object. Thus, her interests would be protected.  Therefore, Ms. Astiana has not satisfied all for requirements of Rule 24(a)."); *In re Charles Schwab Corp. Sec. Litig.*, 2011 U.S. Dist. LEXIS 18840, at *17 (N.D. Cal. Feb. 11, 2011) (finding an absence of impairment where settlement class member objected to the settlement and chose not to opt out of the settlement and stating "[h]is ability to protect his interests has not been impaired because the disposition he is facing was completely foreseeable."); *Lane v. Facebook, Inc.*, 2009 U.S. Dist. LEXIS 103668 , at *5 (N.D. Cal. Oct. 23, 2009) ("Proposed Intervenors, however, have failed to establish that their rights to raise these issues are not adequately protected through the process for submitting objections that will follow upon preliminary approval of the settlement agreement."); *Doe v. Cin-Lan, Inc.*, 2011 U.S. Dist. LEXIS 835, at *11-12 (E.D. Mich. Jan. 5, 2011) (holding that proposed intervenors have failed to establish an

1   impairment of a legally protected interest because they may "simply choose not to
2   join this action and they will not be bound by it," or, "should they choose to join this
3   settlement, but also wish to object to it, they may voice their concerns . . . . Thus,
4   even if Proposed Intervenors and the class members they represent wish to join the
5   settlement, instead of opting out, their interests will not be impaired if they are not
6   permitted to intervene."); *Cohorst v. BRE Props*., 2011 U.S. Dist. LEXIS 87342,
7   *13 (S.D. Cal. July 19, 2011) ("In denying intervention under similar circumstances,
8   other District Courts have explained: Proposed Intervenors may simply choose not
9   to join this action and will not be bound by it . . .  or instead join the settlement and
10  participate in the Fairness Hearing as an objector to safeguard the class member's
11  interests."); *Hofstetter v. Chase Home Fin., LLC*, 2011 U.S. Dist. LEXIS 129218,
12  *7-8 (N.D. Cal. Nov. 8, 2011) (denying intervention because proposed intervenor
13  had an opportunity to opt-out, which adequately safeguarded his rights and interests,
14  "but he chose to ignore this opportunity"); *Bailey v. AK Steel Corp*., 2008 U.S. Dist.
15  LEXIS 5751, *20 (S.D. Ohio Jan. 14, 2008) ("Movants cannot establish that their
16  ability to protect their interests will be impaired absent intervention. Movants can
17  fully protect their interests in this class action by invoking their right to object to the
18  proposed settlement under the procedures established by this Court.  The availability
19  of this procedure defeats Movants' ability to satisfy this factor.").

20  　　Mr. Ghozland had ample means of protecting his stated interests without
21  having to intervene.  He had the right to opt out of the Settlement, which he chose
22  not to do.  He also had the right to file an objection to the Settlement, which he has
23  done.  His objection will be considered by the Court and there is thus no impairment
24  of any significant protectable interest that would permit intervention.  The Motion
25  should be denied.
26  ///
27  ///
28  ///

**VOLKSWAGEN GROUP OF AMERICA, INC., VOLKSWAGEN AG AND AUDI AG'S MEMORANDUM OF LAW IN OPPOSITION TO OBJECTOR MICHAEL F. GHOZLAND'S MOTION TO INTERVENE**

B.     The Named Plaintiffs Adequately Represent the Interests of the Settlement Class

The Ninth Circuit "considers three factors in determining the adequacy of representation: (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). The most important factor in determining adequacy of representation is how the intervenor's interest compares with the interests of the existing parties. *Perry v. Proposition 8 Official Proponents,* 587 F.3d 947, 950 (9th Cir. 2009); *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003), *citing* 7C Wright, Miller & Kane, § 1909, at 318 (1986). "When an applicant for intervention and an existing party share the same ultimate objective, a presumption of adequacy of representation arises, and "the intervenor can rebut that presumption only with a 'compelling showing' to the contrary." *Perry v. Proposition 8 Official Proponents,* 587 F.3d 947, 950 (9th Cir. 2009); *see Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003).

Here, Ghozland erroneously asserts that the named plaintiffs cannot adequately represent former lessees or owners of Class Vehicles because they are all current lessees or owners. As stated above, three of the named plaintiffs are former lessees who, like Mr. Ghozland and the so-called "sub-class" he seeks to create, were not charged out-of-pocket by an Audi dealer for a Service Adjustment. Thus, they are similarly situated and share the same ultimate objective, obtaining the broadest possible relief for the entire Settlement Class of current and former lessees/owners considering the strengths/weaknesses of the claims and defenses, the risks of non-recovery, reduced recovery or non-certification if the litigation proceeds, and the substantial delay and expense of further litigation. The plaintiffs

-7-

are adequate representatives, and Ghozland has stated no facts to the contrary.  In any event, Ghozhand has failed to make the "compelling showing" required to rebut the presumption of adequacy.  *Id.  See also SEC v. Lewis*, 2006 U.S. Dist. LEXIS 28694, *6 (C.D. Cal. May 10, 2006).

Ghozland's intervention request boils down to a disagreement about the Settlement benefits.  As to former lessees or owners, the Settlement affords a 100% reimbursement of out-of-pocket expenses (parts and labor) charged by an authorized Audi dealer for a pre-Notice Service Adjustment.  As discussed in defendants' Memorandum in opposition to the objections and in support of final approval, these and the other Settlement benefits are fair, adequate and reasonable.  The fact that Ghozland already received a free Service Adjustment and desires different alleged relief does not render the Settlement inadequate and certainly does not justify his intervention.  *See Yoshioka v. Charles Schwab Corp*., 2011 U.S. Dist. LEXIS 147483, *46 (N.D. Cal. Dec. 22, 2011) ("Beyond these concerns, Mr. Garmong's remaining arguments amount to disagreements with Plaintiff over the merits of the settlement. ' Where parties share the same ultimate objective, differences in litigation strategy do not normally justify intervention.'"); *Cohorst v. BRE Props*., 2011 U.S. Dist. LEXIS 87342 (S.D. Cal. July 19, 2011) ("To the extent Roman is objecting to settlement terms . . . her objection is not a basis for intervention. 'When a proposed intervenor has vested (her) claims for intervention entirely over litigation strategy or legal tactics, courts have been hesitant to accord the applicant full-party status.'").

In *Milligan v. Toyota Motor Sales, U.S.A., Inc.,* 2012 U.S. Dist. LEXIS 189782, * 13-15 (N.D. Cal. Jan. 6, 2012), the court certified a settlement class consisting of both current and former owners/lessees, and held that the named plaintiffs, who were only current owners, were adequate representatives even though, like Ghozland's objection here, former owners who did not incur out-of-pocket repair costs did not benefit from the settlement.  *Id.* at *14-16.  The court

1    emphasized that the negotiations were conducted at arms-length, there was no

2    evidence of collusion, counsel for both plaintiffs and defendants were highly

3    qualified and experienced, and there was a shared overarching interest in recovering

4    from defendant for the alleged defect.  *Id.*  The court stated that fact that the

5    settlement does not countenance every class member's claims equally does not

6    suggest a lack of adequacy.  *See Id.* at *14.

7         In *In re Nissan Radiator/Transmission Cooler Litig.*, 2013 U.S. Dist. LEXIS

8    116720, (S.D.N.Y. May 30, 2013), the court similarly rejected an identical argument

9    and found adequacy of representation.  In that case, certain objectors contended

10   "that there was a conflict between the named plaintiffs and Class Members with

11   over 100,000 miles as of the date notice was sent because there are no named

12   plaintiffs that fall into that category, and the settlement provides no relief as to those

13   plaintiffs."  *Id.* at *55-6.  The court rejected the objectors' reliance on *Amchem*

14   *Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) and *In re Literary Works*, 654 F.3d 242

15   (2d Cir. 2011), finding that the "ingredients of conflict"—confined compensation

16   and limits on defendant's liabilities—were not present.

17        Here, the plaintiff-representatives are clearly qualified and have no conflicts

18   with the Settlement Class.  The Settlement was negotiated at arm's length with able

19   and experienced class action counsel representing the parties and with the aid of a

20   highly experienced and respected mediator who is a former California appellate

21   judge.

22        Lastly, contrary to Ghozland's unsupported contention, the fact that the

23   named plaintiffs have applied for a modest $2,500 incentive award for their efforts

24   in this litigation does not compromise their status as adequate representatives of the

25   Settlement Class.  *See Cohorst v. BRE Props.*, 2011 U.S. Dist. LEXIS 87342, *21

26   (S.D. Cal. July 19, 2011).

27

28

**VOLKSWAGEN GROUP OF AMERICA, INC., VOLKSWAGEN AG AND AUDI AG'S MEMORANDUM OF LAW IN OPPOSITION TO OBJECTOR MICHAEL F. GHOZLAND'S MOTION TO INTERVENE**

C.      Ghozland's Intervention Motion is Untimely

"Timeliness is to be determined from all the circumstances." *NAACP v. New York*, 413 U.S. 345, 366 (1973).  Three criteria are considered in determining whether an intervention motion is timely: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for any delay. *California Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002); *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 836-37 (9th Cir. 1996).  "The crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Smith v. L.A. Unified Sch. Dist.*, 2014 U.S. Dist. LEXIS 6004, *15 (C.D. Cal. Jan. 16, 2014).  In other words, a non-party must intervene as "soon as he knows or has reason to know that his interests might be adversely affected by the outcome of the litigation." *United States v. Alisal Water Corp.,* 370 F.3d 915, 923 (9th Cir. 2004); *California Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1120 (9th Cir. 2002).

As the above facts demonstrate, Ghozland and/or his counsel was aware of the Settlement terms at issue many months before this Motion was made.  They had ample opportunity to move to intervene prior to and after this Court entered its Preliminary Approval Order.  Instead, they unjustifiably lied in wait for months until filing this Motion a mere 45-days before the May 4, 2015 final fairness hearing, after the Court expended substantial resources in the preliminary approval process and defendants expended substantial resources mailing and publishing the Class Notices and setting up and initiating the claims process.  When, as here, a purported intervenor had notice and opportunity to intervene earlier but delayed intervention for a significant period of time, the motion is untimely. *See, e.g*., *Morazan v. Aramark Uniform & Career Apparel Grp.*, 2013 U.S. Dist. LEXIS 125623 (N.D. Cal. Sep. 3, 2013) (denying intervention for timeliness and stating "[m]ovants were

1   aware of the motion for preliminary approval but elected not to file their Motion to

2   Intervene prior to the preliminary approval hearing, nor did they appear in person at

3   the hearing.  Instead, Movants waited until *after* the hearing, *after* the Court invested

4   significant time and effort in reviewing the proposed settlement, *after* the parties

5   met and conferred and submitted additional documentation to address the Court's

6   concerns, and *after* the Preliminary Approval Order issued"); *Cohorst v. BRE*

7   *Props.,* 2011 U.S. Dist. LEXIS 87263, *12-13 (S.D. Cal. Aug. 5, 2011) (finding

8   intervention motion untimely even though it was filed within two weeks of the

9   court's preliminary approval order because the movant was aware of competing

10  class action at least six months prior to filing and took no action to intervene); *In re*

11  *Charles Schwab Corp. Sec. Litig.,* 2011 U.S. Dist. LEXIS 18840, *13 (N.D. Cal.

12  Feb. 11, 2011) (finding lack of timeliness because the settlement class member

13  knew the proposed settlement might conflict with his interests six months before

14  seeking intervention and stating that although class settlement notice "was only sent

15  out in November 2010 after the amendment was preliminarily approved . . . that

16  does not contravene the other facts in the record concerning Mr. Benson's clear

17  position that he felt the settlement was contrary to his interests before that time.").

18        Citing to *Glass v. UBS Fin. Servs., Inc*., 2007 U.S. Dist. LEXIS 8509 (N.D.

19  Cal. Jan. 17, 2007, *aff'd* 331 F. App'x 452 (9th Cir. 2009) and *In re Cmty. Bank of*

20  *N. Virginia*, 418 F.3d 277 (3d Cir. 2005), Ghozland claims that his motion is timely

21  because it was filed prior to the opt-out/objection deadline.  This contention is

22  entirely without merit because timeliness is determined by when the proposed

23  intervenor knew or should have known that his interests might be adversely

24  affected.  *See United States v. Alisal Water Corp.,* 370 F.3d 915, 923 (9th Cir.

25  2004).  The cases cited by Ghozland are inapposite because, unlike the case at bar,

26  the intervenors first learned of the need for intervention after receiving notice of the

27  settlement.  *See In re Cmty. Bank of N. Virginia*, 418 F.3d 277 (3d Cir. 2005) ("In

28  the present case, members of the nationwide class first learned of the proposed

1   settlement in early August 2003 when they received the Notice of Class Action

2   Settlement.").  Where, as here, the movant knew or should have known of the basis

3   for intervention well in advance of receipt of the Class Notice, the Motion is not

4   deemed timely simply because it was filed within the deadline for objections or opt-

5   outs.  *See In re Cmty. Bank of N. Virginia*, 622 F.3d 275, 313 (3d Cir. 2010)

6   (affirming denial of intervention based on untimeliness despite motion for

7   intervention being filed prior to the opt-out deadline since the intervenors were well

8   aware for a period of time that the settling matter might adversely affect their

9   interests).

10          The untimeliness of this Motion has severely prejudiced the parties.  Proposed

11   intervenor and his counsel knew full well in the Fall 2014, and prior to and at the

12   time of the Court's preliminary approval, that the proposed Settlement provided for

13   the Service Adjustment and Extended Warranty programs to go into effect on the

14   date the Class Notice was to be mailed (January 28, 2015), and that defendants

15   would be incurring the significant expense of effectuating repairs under those

16   programs.  Proposed intervenor and his counsel also knew that the settlement

17   website, settlement phone line and the claims administration process were to begin

18   on that same date, also at substantial expense to defendants.  They knew that the

19   parties and their counsel would be expending significant time, money and effort in

20   arranging for, setting up and implementing these and other aspects of the Settlement

21   Agreement.  Yet they chose to permit all of these events to occur, all of the time and

22   expenses to be incurred, and to delay the filing of their Motion until the very last

23   day of the deadline for filing objections - - a mere 45-days before the final fairness

24   hearing.  The significant prejudice resulting from this inordinate delay warrants

25   denial of the Motion.

26          Finally, we note that the movant has failed to "meet and confer" before filing

27   this Motion, in violation of the applicable local rules governing motion practice.

28

**VOLKSWAGEN GROUP OF AMERICA, INC., VOLKSWAGEN AG AND AUDI AG'S MEMORANDUM OF LAW IN OPPOSITION TO OBJECTOR MICHAEL F. GHOZLAND'S MOTION TO INTERVENE**

1

## III.   CONCLUSION

2    For the foregoing reasons, the Motion to Intervene should be denied.

3

4

Dated:  April 13, 2015                    HERZFELD & RUBIN PC

5

6                                      By:

7                                            _____/s/_____

8                                            Jeffrey L. Chase
                                             Michael B. Gallub
9                                            Attorneys for Defendants,
                                             Volkswagen Group of America, Inc.,
10                                           Volkswagen AG and Audi AG

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28