Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Ryan H. Wu (SBN 222323)
Ryan.Wu@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
**CAPSTONE LAW APC**
1840 Century Park East, Suite 450
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:     (310) 943-0396

Payam Shahian (SBN 228406)
PShahian@slpattorney.com
**STRATEGIC LEGAL PRACTICES APC**
1875 Century Park East, Suite 700
Los Angeles, California 90067
Telephone: (310) 277-1040
Facsimile:  (310) 943-3838

Attorneys for Plaintiffs

*[Additional Counsel Listed on Signature Pages]*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| ALI ASGHARI, DANIEL TRAN, YUNG KIM, ARA DERSARKISSIAN, and KATRINA NOBLE individually, and on behalf of a class of similarly situated individuals,<br><br>        Plaintiffs,<br><br>    vs.<br><br><br>VOLKSWAGEN GROUP OF AMERICA, INC., VOLKSWAGEN AG, AND AUDI AG,<br><br>       Defendants. | Case No.: CV13-02529-MMM-(JEMx)<br><br>**CLASS ACTION**<br><br>Hon. Margaret M. Morrow<br><br>**PLAINTIFFS' RESPONSE TO OBJECTIONS TO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND/OR MOTION FOR ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARDS**<br><br>Date:      May 4, 2015<br>Time:     10:00 a.m.<br>Place:    Courtroom 780<br><br>Complaint Filed:  May 1, 2012<br>Date of Transfer: April 10, 2013<br>Trial Date:    None set |

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................ 1

II.   ARGUMENT ............................................................................................... 3

      A.    Class Member Reactions Support Final Approval ............................. 3

      B.    Ghozland's Objections Should Be Overruled .................................... 4

            1.    Ghozland's Objection Is Procedurally Defective ..................... 5

            2.    The Settlement Need Not Provide Additional Benefits For Former
                  Class Vehicle Owners ............................................................... 6

                  a.    The Settlement's Treatment of Former Owners or Lessees
                        Does Not Render The Settlement Unfair ......................... 7

                  b.    The Settlement Need Not Compensate Class Members For
                        Diminution of Value ..................................................... 12

                  c.    The Court Should Overrule The Objection That the
                        Settlement Should Have Compensated Class Members for
                        Incidental or Consequential Damages ........................... 15

            3.    Ghozland's Adequacy Objections Must Be Overruled ........... 17

      C.    The Remaining Objections Should Be Overruled ............................ 19

            1.    Objections That Overlap With Ghozland's Must Be Overruled ........... 19

            2.    Objection to the Terms of the Limited Warranty Extension Should
                  Be Overruled ......................................................................... 20

            3.    Objections to Documentary Requirements for Obtaining
                  Settlement Benefits Should Be Overruled ............................. 22

            4.    The Objections to The Request for Attorneys' Fees Should Be
                  Overruled ............................................................................... 23

            5.    The Remaining Objections Should Be Overruled ................... 25

III.  CONCLUSION .......................................................................................... 26

# TABLE OF AUTHORITIES

**CASES**

*Aarons v. BMW of North Am.*, No. 11-7667-PSG, 2014 U.S. Dist. LEXIS
118442 (C.D. Cal. Apr. 29, 2014) .............................................................. 10, 14

*Acosta v. Trans Union, LLC*, 243 F.R.D. 377 (C.D. Cal. 2007) ........................................10

*Alin v. Honda Motor Co.*, No. 08-4825-KSH, 2012 WL 8751045 (D.N.J.
Apr. 13, 2012) ........................................................................... 18, 21

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997)............................................................10

*Banks v. Nissan N. Am.*, 301 F.R.D. 327 (N.D. Cal. 2013) ..................................................7

*Briehl v. General Motors Corp.*, 172 F.3d 623 (8th Cir. 1999) ........................................13

*Browne v. Am. Honda Motor Co.*, No. 09-06750-MMM, 2010 U.S. Dist.
LEXIS 14575 (C.D. Cal. July 29, 2010) .............................................................. 4, 16, 23

*Chamberlan v. Ford*, 402 F.3d 952 (9th Cir. 2005) ............................................................7

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010).....................3

*Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ...............................4

*Eisen v. Porsche Cars N. Am.*, No. 11-09405-CAS, 2014 U.S. Dist. LEXIS
14301 (C.D. Cal. Jan. 30, 2014) ....................................................................*passim*

*Garner v. State Farm Mut. Auto Ins.*, No. 08-1365-CW, 2010 U.S. Dist.
LEXIS 49477 (N.D. Cal. Apr. 22, 2010)............................................................3

*Glass v. USB Finan. Svcs.*, No. 06-cv-4068, 2007 WL 221862 (N.D. Cal.
Jan. 26, 2007) ........................................................................16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).........................................*passim*

*Henderson v. Volvo Cars of N. Am., LLC*, 2013 U.S. Dist. LEXIS 46291
(D.N.J. Mar. 22, 2013).............................................................. 12, 21

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ......................24

*In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) ..................................................5, 7

*In re General Motors Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55

F.3d 768 (3d Cir. 1995) ...................................................................................10

*In re Imprelis Herbicide Mktg.*, 296 F.R.D. 351 (E.D. Pa. 2013) .............................. 13, 17

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)...........................................9

*In re Netflix Privacy Litig.*, No. 11-cv-00379, 2013 WL 1120801 (N.D.

　　Cal. Mar. 18, 2013) ...............................................................................................17

*In re Nissan Radiator/Transmission Cooler Litig.*, No. 10-CV-7493-VB,

　　2013 U.S. Dist. LEXIS 116720, 2013 WL 4080946 (S.D.N.Y. May 30,

　　2013).......................................................................................................... 13, 14

*In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...............................4

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 994, 2015 U.S. App.

　　LEXIS 3093 (9th Cir. Feb. 27, 2015) ...................................................................24

*In re Toys 'R' Us FACTA Litig.*, 295 F.R.D. 438 (C.D. Cal. Jan. 17, 2014)................3, 24

*In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d

　　1057 (8th Cir. 2013)...............................................................................................18

*Kearney v. Hyundai Motor America*, 2013 U.S. Dist. LEXIS 91636 (C.D.

　　Cal. June 28, 2013) ...................................................................................................8

*Milligan v. Toyota Motor Sales, U.S.A.*, No. 09-05418-RS, 2012 U.S. Dist.

　　LEXIS 189782 (N.D. Cal. Jan. 6, 2012)..................................................*passim*

*O'Connor v. Boeing N. Am., Inc.*, 180 F.R.D. 359 (C.D. Cal. 1997) ..................................7

*O'Keefe v. Mercedes-Benz U.S.*, 214 F.R.D. 266 (E.D. Pa. 2003) ...................... 12, 13, 25

*Officers for Justice v. Civil Service Comm'n*, 668 F.2d 615 (9th Cir. 1982) ..............4, 25

*Petrovic v. Amoco Oil Corp.*, 200 F.3d 1140 (8th Cir. 1999) ............................................9

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)..........................................3

*Rupay v. Volkswager Grp. of Am. Inc.*, 2012 WL 10634428 (C.D. Cal.

　　Nov. 15, 2012)...........................................................................................................6

*Shaw v. Toshiba Am. Info Sys.*, 91 F. Supp. 2d 942 (E.D. Pa. 2000)................................10

*Simon v. Toshiba*, No. C-07-06202-MHP, 2010 WL 1757956, at *1 (N.D.

　　Cal. Apr. 30, 2010) .................................................................................................17

*Sugarman v. Ducati N. America, Inc.*, 2012 U.S. Dist. LEXIS 3961 (N.D. Cal. Jan 12, 2012) ............................................................21

*Thiedemann v. Mercedes–Benz USA, LLC*, 872 A.2d 783 (N.J. 2005) ............................14

*True v. Honda Motor Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010) ..................................10

*United States v. State of Oregon*, 913 F.2d 576 (9th Cir. 1990)...........................................4

*Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738 (E.D. Tex. 2007)................ 13, 14

*Wyatt v. Credicare, Inc.*, No. 04-03681-JF, 2005 WL 2780684 (N.D. Cal. Oct. 25, 2005)..................................................................17


OTHER AUTHORITIES

3 NEWBERG ON CLASS ACTIONS § 9:19 (5th ed.)..................................................15

# I.    INTRODUCTION

Plaintiffs and Class Counsel have achieved an excellent result for the Class and believe that the Settlement is fair, adequate and reasonable.  As discussed in the Motion for Final Approval, the proposed Settlement provides substantial benefits to Class Members, including a complementary Service Adjustment with none of the typical time restrictions—such as mileage or year limitations—that are commonly seen in other settlements.[1]  Additionally, Class Members who paid out-of-pocket for a Service Adjustment performed by an authorized Audi Dealer prior to the Notice date will have those expenses reimbursed.  Finally, Defendant Volkswagen Group of America ("VWGoA") will extend its applicable warranties to cover any engine repairs needed to correct excessive engine oil consumption in the Settlement Class Vehicles ("SCV").[2]

The response from Class Members so far has been overwhelmingly positive.  Out of more than 225,000 Class Notice recipients, only 15 objected and 441 opted out—rates that compare favorably with other settlements involving automobile defects.  Among these objectors is Michael Ghozland, a class action attorney represented by his former colleague and occasional co-counsel, Sean K. Collins.  Ghozland fails to demonstrate that he owned or leased an SCV, thereby not even qualifying as an objector.  Instead, as purported proof of ownership/lesseeship, Ghozland relies on a repair order.  Yet, as an attorney, Ghozland certainly knows that a repair order with his name on it does not constitute evidence of ownership/lesseeship.  Indeed, the Class Notice (and Settlement Agreement) clearly and explicitly state that a Class Member must provide documentary proof of ownership, such as a purchase agreement or a registration, to establish his or her membership in the Settlement Class.  But Ghozland has ignored these unambiguous

---

[1] Class Members  need only satisfy the very simple and liberal requirement that the appointment for the Service Adjustment be made with an Audi dealer by July 2016.

[2] With respect to excessive oil consumption, VWGoA will extend the New Vehicle Limited Warranties for Settlement Class Vehicles from 4 years/50,000 miles to 8 years/80,000 miles (whichever occurs first) from the In-Service Date of the SCV, or 1 year/12,000 miles from the date the Service Adjustment (whichever is later).

instructions.  Moreover, the Class Notice was mailed to his wife Jennifer Ghozland, a class action attorney herself, who has not objected, and without the lease agreement confirming ownership, it is unclear whether Mr. Ghozland has her authority to object. Moreover, his declaration omits critical information, such as his vehicle having already obtained a Service Adjustment.  The entire objection appears to be a professional shakedown devised by him and Collins, who first contacted Class Counsel in July 2014.

Along with these procedural infirmities, the Objection lacks substantive merit. Ghozland's primary objection is that some former owners/lessees would not receive any benefit.  But a settlement need not benefit the entire class equally, and numerous courts in this district approve settlements that confer monetary relief to qualifying former owners/lessees not eligible to obtain prospective remedies, such as warranty extensions or repairs.  Faced with this insurmountable body of case law, Ghozland stoops to distorting facts of those cases, including baldly misrepresenting that a settlement (approved by this very Court) *excluded* former owners when in fact they were expressly *included*.

Moreover, Ghozland's preferred solutions—such as the diminution of value of the automobile upon resale and reimbursement for additional oil purportedly purchased by Class Members—are both impracticable and would have been aggressively opposed by Volkswagen, endangering class certification.  Moreover, a diminution-of-value remedy is entirely inappropriate here given that two Plaintiffs, Ali Asghari and Ara Dersarkissian, sold their SCVs at an amount *greater* than the lienholder value, and Ghozland himself has not provided any evidence for such a claim.[3]  And Ghozland's contention that the Class Representatives were not typical and therefore did not represent former owners/lessees' interests is factually incorrect, as three Class Representatives are former owners/lessees.

As for the remaining objections, some overlapped with Ghozland's, while objections to the extended warranty term were based on the mistaken belief that the

---

[3] Ghozland merely states that he purchased his vehicle in March 2012, after his lease term expired and then sold it in October 2013.  (*See* Ghozland Decl. ¶ 5.) Conspicuously absent from his declaration, however, is any testimony concerning the prices at which he bought and sold the vehicle.

objectors were excluded (when in fact they would be covered under the 1-year/12,000-mile from the Service Adjustment provision).  Others simply lashed out at the attorney fee request without any substantive ground.  Notably, no Class Member lodged a specific objection to the fee request, despite having ample opportunity to review the fee motion prior to filing an objection.  Both the proposed Settlement and the fee request are reasonable and should be approved.

## II.    ARGUMENT

### A.    Class Member Reactions Support Final Approval

In deciding whether to approve a class action settlement, the court may "gauge the reaction of other class members . . . [by] evaluat[ing] the number of requests for exclusions as well as the objections submitted." *In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 450 (C.D. Cal. 2014).  Out of the approximately 225,000 recipients of Class Notices, including Jennifer Ghozland,[4] only 15 objected, and 441 opted out.  (Declaration of Jordan Lurie ["Lurie Decl."] ¶ 2 & n.1.)  The 441 exclusions represent a miniscule 0.2% of the overall Class Notice recipients supporting approval.  *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (finding 0 objections and 16 opt-outs out of 329 class members [4.86%] "strongly support[] settlement"); *Garner v. State Farm Mut. Auto Ins.*, No. 08-1365-CW, 2010 U.S. Dist. LEXIS 49477, *15 (N.D. Cal. Apr. 22, 2010) (finding an opt-out rate of 0.4% supported settlement).  "The fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Likewise, the 15 objections represent an infinitesimal 0.0066% of recipients, demonstrating a positive reaction to the Settlement. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (affirming finding of favorable class reaction given only

---

[4] 229,851 notices were mailed, and 9,722 were undeliverable without forwarding addresses.  Of those, 4,892 were ultimately re-mailed after a skip trace, resulting in approximately 225,000 notices being sent.  (Lurie Decl. ¶ 2 n.1.)

54 objections [0.14%] were received after 376,301 class notices mailed); *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming finding of favorable class reaction when "only 45 of the approximately 90,000 notified class members [0.05%] objected."). "By any standard, the lack of objection of the Class Members favors approval of the Settlement." *In re Omnivision Tech., Inc*., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (finding strong positive class reaction where only 3 objections received out of 57,630 notices (0.005%), very close to objection rate here).

The reaction here also compares favorably to other automotive settlements approved by California district courts. *See*, *e.g*., *Eisen v. Porsche Cars N. Am*., 2014 U.S. Dist. LEXIS 14301, *15 (C.D. Cal. Jan. 30, 2014) ("Although 235,152 class notices were sent, 243 class members have asked to be excluded, and only 53 have filed objections to the settlement."); *Milligan v. Toyota Motor Sales, U.S.A*., No. 09-05418-RS, 2012 U.S. Dist. LEXIS 189782, *25 (N.D. Cal. Jan. 6, 2012) (finding favorable reaction where 364 individuals opted out [0.06%] and 67 filed objections [0.01%] following mailing of 613,960 notices); *Browne v. Am. Honda Motor Co*., No. 09-06750-MMM, 2010 U.S. Dist. LEXIS 14575, *49 (C.D. Cal. July 29, 2010) (finding favorable class reaction where, after mailing 740,000 notices, 480 (0.65%) opted out and 117 (0.16%) objected).

## B.    Ghozland's Objections Should Be Overruled

In deciding whether to approve the parties' proposed Settlement, the threshold inquiry is whether a settlement is fair, reasonable and the result of an adequate arm's-length compromise of the contested issues. *See Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). Thus, it is the settlement, "taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice v. Civil Service Comm'n*, 688 F.3d 615, 628 (9th Cir. 1982). In challenging the reasonableness of a class action settlement, the objectors bear the burden of proving any substantive assertion they raise. *United States v. State of Oregon*, 913 F.2d 576, 581 (9th Cir. 1990)

1  ("In this circuit, we have usually imposed the burden [of proof] on the party objecting to a

2  class action settlement.") (citation omitted).  Because Objector Ghozland has submitted a

3  detailed Objection and seeks to intervene, Plaintiffs address his objection first.

4  **1.   Ghozland's Objection Is Procedurally Defective**

5  At the outset, Ghozland, an attorney himself, fails to comply with the instructions

6  on the Class Notice to show ownership.  The Class Notice states, in relevant part:

7  > To object, you must, no later than [] send a letter to the Court with copies to
>  the [Counsel] listed below, and to the Claim Administrator at the address
8  > contained in this Notice, saying that you are objecting to the Settlement in
>  *Ali Asghari et al. v. Volkswagen Group of America, Inc., et al.,* Case No.
9  > CV13-02529, and your objection must include your full name, current City
>  and State of residence, telephone number, the model year and VIN of your
10 > vehicle and **proof that you own(ed) or lease(d) it,** a statement of all your
>  factual and legal grounds for objecting, any documents and/or briefs
11 > supporting your objection, a statement of whether you intend to appear at
>  the Fairness Hearing, and your signature.

12

13 (*See* Ex. 5 to Shahian Decl. Supp. Mot. for Prelim. Appr. (Dkt. No. 153-2) at 73; *see also*

14 Settlement Agreement (Dock No. 155 at 22) § V.1(b) (Such proof consists of "a true copy

15 of a vehicle title, registration, or license receipt.")  By failing to provide proof that he

16 owned/leased the vehicle, Ghozland fails to comply with the Preliminary Approval Order,

17 which states that objectors should follow the "procedures and requirements" in the Notice

18 and Settlement Agreement. (Order Granting Prelim. Appr. (Dkt. No. 156) at 5 ¶ 16.)

19 This Court should find Ghozland waived his objection.  *See In re Deepwater*

20 *Horizon*, 739 F.3d 790, 809 (5th Cir. 2014) (finding district court "plainly acted within its

21 discretion in finding that the [objectors] waived their objections by disobeying the

22 reasonable requirements of the Preliminary Approval Order [requiring proof of class

23 membership]").  In *Deepwater Horizon*, the court struck the objections of individuals who

24 failed to proffer "written proof of class membership . . . such as proof of residency,

25 ownership of property and the location thereof . . . ."  *Id.*  Likewise, Ghozland failed to

26 provide minimal proof of ownership in his objection.  As Ghozland is a class action

27 attorney himself, there is no reasonable excuse for his noncompliance.

28 Indeed, the omission may have been deliberate.  It turns out Michael Ghozland was

1   not a recipient of the Class Notice; it was sent to his wife, Jennifer Ghozland, a class

2   action attorney.  (Lurie Decl. ¶ 18; Ex. 16.)  It is not clear whether Mrs. Ghozland is the

3   sole owner of the SCV in question, or perhaps, the vehicle is jointly owned.[5]  Of course,

4   this is a matter that would have been clarified had Mr. Ghozland complied with the

5   requirement of providing proof of ownership.  In any event, Mrs. Ghozland has not

6   objected, and there is no indication that Michael Ghozland has her permission to object on

7   her behalf or has standing to object himself—putting aside his noncompliance with the

8   Court's preliminary approval order.  Ghozland also omitted the material fact that a Service

9   Adjustment was performed, apparently free-of-charge, on his (or his wife's) vehicle.

10  (Declaration of Robert A. Arturi Supp. Defs.' Responses ["Auturi Decl."], ¶¶ 2-5.)

### 2.   The Settlement Need Not Provide Additional Benefits For Former Class Vehicle Owners

11
12         Ghozland's primary objection is the contention that "the Settlement provides no

13  benefits for the Sub-Class" of owners and lessees of the Settlement Class Vehicles.

14  (Ghozland Obj. at 6:11-12.)  Ghozland then posits the Settlement should have included

15  benefits for diminution of value of the cars at delivery and resale, and for incidental and

16  consequential damages, including for out-of-pocket expenses for "supplemental oil

17  purchases" or related repairs at other facilities.  (*Id*. at 6:22-7:5.)

18         Ghozland never explains how he intends to prove these speculative damages in a

19  class-wide proceeding, as oil is a maintenance items and requires replacement even in

20  those vehicles that do not suffer from excessive oil consumption, or vehicles that

21  consumed excessive oil for reasons unrelated to a defect (*e.g.*, driving habits).  Moreover,

22  Ghozland does not provide any class-wide support for his diminution-in-value theory,

23  which would have been vigorously opposed by Volkswagen, and as explained below has

24  been rejected by many court thereby endangering class certification.

25

26         [5] For example, using "or" in a vehicle registration for co-owners reflects a joint
    tenancy such that each owner has the right to dispose of title and interest; alternatively,
27  using "and" in the registration means disposition of title and interest requires all co-owners
    to provide signatures.  *See Rupay v. VWGoA Inc.*, 2012 WL 10634428, at *7 (C.D. Cal.
28  Nov. 15, 2012) (citing Cal. Mot. Veh. Code § 5600.5(c)).

### a. The Settlement's Treatment of Former Owners or Lessees Does Not Render The Settlement Unfair

There is no "subclass" of former owners or lessees; they are part of the Settlement Class. As preliminarily approved by this Court, the Settlement Class includes "All persons and entities who purchased or leased a Settlement Class Vehicle." (Settlement Agreement § I.E.) This definition is "precise, objective, and presently ascertainable . . . [making it] administratively feasible for the court to determine whether a particular individual is or is not a member of the proposed class." *O'Connor v. Boeing N. Am., Inc.*, 180 F.R.D. 359, 367 (C.D. Cal. 1997).

Moreover, this Class is not overbroad, nor does it create an intra-class conflict, as Ghozland contends. Former owners/lessees are included in the Settlement Class because they too were individuals who may have been affected by the defect. There is no error in including former owners/lessees in the Class. *See Banks v. Nissan N. Am.*, 301 F.R.D. 327, 334 (N.D. Cal. 2013) (rejecting argument that class that includes current and former car owners creates an intra-class conflict because former owners have same claims). *Banks* also observed that the Ninth Circuit in *Chamberlan v. Ford*, 402 F.3d 952 (9th Cir. 2005), affirmed a class of former and current automobile owners, which undermines the notion that "conflict between class members is sufficient to defeat class certification." *Id.*

Although former and current owners/lessees will receive different benefits under the Settlement, that alone is not reason to divide them into subclasses. *See Deepwater Horizon*, 739 F.3d at 813 ("Although the creation of subclass is sometimes necessary under Rule 23(a)(4) to avoid a 'fundamental conflict,' there is no need to create subclasses to accommodate every instance of 'differently weighed interests.'") (citation omitted). This is because while "each class member naturally derives different amounts of utility from any class-wide settlement based on his or her unique circumstances, [] this does not put all such class members in fundamental conflict with one another." *Id.* (quotation omitted). Former owners are not in conflict with current owners under this Settlement. Rather, as in *Deepwater Horizon*, they simply have less utility for the benefits of this Settlement by virtue of no longer owning the SCV and otherwise not having incurred out-

1    of-pocket repairs cost for a service adjustment, which is perfectly appropriate.

2         Courts frequently approve settlement classes having both current and former

3    owners/ lessees automotive defect cases with similar remedies as those here.  (*See* RJN

4    Exs. 1-20.)  Faced with this overwhelming case law rejecting the same type of objection,

5    Ghozland resorts to bald misrepresentations, falsely suggesting that a number of these

6    cases excluded former owners when they did not.  For instance, Ghozland stressed that the

7    parties in *Browne v. Honda*—in a settlement approved by this Court—limited their class

8    to "residents of the United States, the Commonwealth of Puerto Rico, U.S. Virgin Islands

9    and Guam who currently own or lease specific Honda vehicles."  (Obj. at 10:17-18.)  But

10   this quote is completely fabricated.[6]  The *Browne* settlement agreement actually states:

11              Class Members shall mean all residents of the United States,
                Commonwealth of Puerto Rico, U.S. Virgin Islands and Guam who
12              currently own or lease, **or previously owned or leased**, a Class Vehicle.

13   (RJN, Ex. 6 [*Browne* Settlement Agreement] § I.8 at 5 (emphasis added).)  Contrary to

14   Ghozland's representation that the *Browne* parties precluded former owners/lessees from

15   the settlement class, former owners/lessees were in fact specifically included and entitled

16   to reimbursement for certain repair costs.  (*See also* RJN Ex. 14 [*Keegan v. American*

17   *Honda Motor Co., Inc.*, No. 10-9508-MMM-AJWx (C.D. Cal.), Settlement Agreement] §

18   1.24 at 9 ["'Settlement Class' means all residents [] who currently own or lease, or

19   previously owned or leased, a Settlement Class Vehicle."]).

20        Ghozland engages in the same type of deception in describing *Eisen*.  (Obj. at

21   10:27-11:1.)  In fact, *Eisen*'s settlement class is defined as "all persons in the United

22   States, who currently owns or who **previously owned or leased** a Class Vehicle."  (RJN

23   Ex. 10 [*Eisen* Settlement Agreement] § I.19 at 5 (emphasis added).)[7]  These gross

25   ───────────────
     [6] Ghozland shamelessly repeats this lie in his objection.  (*See* Obj. at 11:11-12.)

26   [7] Only in *Kearney* were former owners/lessees excluded from the settlement class,
     but that was because the settlement there provides no monetary benefit whatsoever for
27   former owners/lessees.  Rather, *Kearney* offered a full repair of the alleged defect.  *See*
     *Kearney v. Hyundai Motor America*, 2013 U.S. Dist. LEXIS 91636, at *17 (C.D. Cal.
28   June 28, 2013).  In contrast, former owners who have concrete damages—out-of-pocket

1  misrepresentations to the Court tarnish Ghozland's credibility and fatally undercut his

2  contention that the Settlement unfairly included former owners/lessees.

3       Likewise, the Court should reject Ghozland's complaint that the Settlement is

4  unfair and unreasonable because many former owners will not be able to participate in the

5  benefits. "There is no rule that settlements must benefit all class members equally." *Eisen*,

6  2014 U.S. Dist. LEXIS 14301, at *17 (citing *Petrovic v. Amoco Oil Corp*., 200 F.3d 1140,

7  1146 (8th Cir. 1999) (internal punctuation marks omitted)). Here, Settlement *fully*

8  compensates former owners for out-of-pocket expenses in obtaining a Service

9  Adjustment.  (Settlement Agreement § II.A.)  This remedy directly benefits former

10  owners who have established concrete, rather than speculative, harm. *See Milligan v.*

11  *Toyota*, 2012 U.S. Dist. LEXIS 189782, *27 (overruling objections that a settlement that

12  limited former owners to "reimbursement for repairs paid for out-of-pocket" was unfair by

13  finding that parties have no obligation to compensate class members for speculative

14  "diminution in value" remedy and other incidental damages).

15       That the Settlement structures benefits in a way that will confer greater relief to

16  some members does not make it unreasonable or unfair, even where other members will

17  end up not receiving any benefit. *See In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454,

18  461-63 (9th Cir. 2000) (approving settlement allocation plan that would leave some class

19  members without settlement payments because they "could never get damages should

20  they proceed to trial").  And courts in this district have overruled objections from former

21  car owners complaining about the lack of benefits of a proposed settlement. *See Milligan*,

22  2012 U.S. Dist. LEXIS 189782, *27 (finding settlement fair and reasonable even though

23  "the settlement provides no benefit to those who lost or sold their vehicle—even if they

24  can document the [alleged engine control module] failure and the sale or trade-in price").

25       Ghozland's reliance on inapposite case law is similarly unavailing.  Because this

26  Settlement *does* compensate former owners who have proof of out-of-pocket repair costs

27

28  repair costs for service adjustments—will be compensated under this Settlement.

(for Service Adjustments from Audi dealers),[8] but does not benefit former owners who have only speculative damages (like diminution of value), it is distinguishable from the settlement in *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 388 (C.D. Cal. 2007), where the proposed involving the Fair Credit Reporting Act "partitioned a class so as to provide relief to one segment and to deny it ***completely*** to another." (Emphasis added.)  Further, *Acosta* concerned the economic value of a settlement that "pales in comparison to Plaintiffs' potential recovery in litigation" given the strength of the plaintiff's case. *Id*. at 393.  In contrast, as explained in the Motion for Final Approval, at 17:16-20:19, Plaintiffs' case here is not nearly so strong, and their existing challenges would be exacerbated if they were to pursue the speculative damages that Ghozland seeks. *See Aarons v. BMW of North Am.*, No. 11-7667-PSG, 2014 U.S. Dist. LEXIS 118442, *27 (C.D. Cal. Apr. 29, 2014) ("even if Plaintiffs were able to establish liability, they might have difficulty adequately establishing monetary damages on a class-wide basis.").

Other cases cited by Ghozland are likewise distinguishable.[9]  In *True v. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1059, 067 (C.D. Cal. 2010), which invited objections

---

[8] The requirement that reimbursement for a Service Adjustment be limited to Class Members who paid Audie dealers for Service Adjustments is reasonable, as Audi dealers have the appropriate tools to diagnose, and the instructions to perform, this technical service.  Moreover, no other Class Member lodged an objection based on paying for a Service Adjustment other than at an Audi dealer.

[9] *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997), quoted extensively by Ghozland, involves a diverse asbestos class where claimants "were exposed to different products from different sources over different time periods." *Shaw v. Toshiba Am. Info Sys.*, 91 F. Supp. 2d 942, 957 (E.D. Pa. 2000) (distinguishing *Amchem*).  Where the loss "flows from a single source," such as "the purchase of computers with an alleged[] defect[]," the intraclass conflict at issue in *Amchem* does not come into play. *Id*. at 958; *see also Hanlon*, 150 F.3d at 1021 (distinguishing *Amchem*, because unlike in *Amchem*, where there were conflicting categories of harm, both future and present, in *Hanlon*, all class members suffered the sam harm, "an allegedly defective rear latchgate which requires repair or commensurate compensation").  Here, as in *Shaw* and *Hanlon*, all Class Members allege loss based on the purchase of an SCV that contained the alleged design defect causing the oil consumption problem.[9]  There is no conflict between Class Members.  And *In re General Motors Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 808 (3d Cir. 1995), like *True v. Honda*, addresses the problem of a coupon settlement not at issue here.

1    from a "coalition of twenty-five state Attorneys General," the proposed settlement created

2    a favored subclass consisting of people who simply "moved to complain." They neither

3    possessed "different legal claims" nor "suffered any greater damages" than other class

4    members who would receive a coupon in lieu of cash. *Id.* In contrast, while former

5    owners obviously cannot obtain prospective relief (*i.e.*, Service Adjustments and warranty

6    extension) because they do not own the SCV, the Settlement makes no distinction

7    between current and former owners/lessees in obtaining benefits for past harm (*i.e.*, out-

8    of-pocket reimbursement). Both must meet the same requirements to obtain

9    reimbursement. (*See* Settlement Agreement § II.A.)

10       Ultimately, what Ghozland decries are "differences related to damages," and such

11   differences "do[] not necessarily defeat class certification, but must be considered in the

12   larger context of the class's interests . . . [and] [t]he settlement cannot be expected to

13   countenance every class members' claims exactly equally." *Milligan,* 2012 U.S. Dist.

14   LEXIS 189782, *14 (finding adequacy and rejecting contention of intra-class conflict

15   even where former class owners who did not pay out-of-pocket "will not derive any

16   benefit" from the proposed settlement).

17       In fact, courts typically state that if former owners are unhappy with a proposed

18   settlement, these class members "could have simply opted out of the settlement." *Id.* at

19   *27; *see also Hanlon*, 150 F.3d at 1027 ("No objector stepped forward and suggested that

20   his or her personal claim was being sacrificed for the greater good—and if any thought

21   that was the case, they had the right to opt-out of the class."). Considering that *his own*

22   *attorney* elected to opt out, Ghozland's objection rings hollow. (*See* Ex. F to Lurie Decl

23   In Support of Plaintiffs' Opposition to Motion to Intervene.)

24       Finally, Ghozland fails to demonstrate that he experienced any of the problems that

25   form the basis of his objection. Although he attempts to align his experience with a

26   theoretical group of former owners who were harmed (*id.* at 6:15-17)—ostensibly to

27   manufacture standing to make his objection–Ghozland fails to disclose that ***a Service***

28   ***Adjustment was already performed*** on his vehicle, and after the service adjustment, ***there***

*is no evidence that the vehicle in question continued to suffer from excessive oil consumption*. (*See* Arturi Decl., ¶¶6-8.)  Because Ghozland's own oil diagnostic tests results showed no continuing harm (Ghozland Decl. ¶ 17), it is disputable that he has experienced any problem that gives him standing to complain about the resale value of his vehicle. *See O'Keefe v. Mercedes-Benz U.S.*, 214 F.R.D. 266, 296 (E.D. Pa. 2003) (overruling objection by objector who did not suffer harm, as her vehicle "only used synthetic motor oil and is not at risk of the alleged defect at issue in this case").  Indeed, "generalized theoretical objections" of this type cannot "cast doubt on the fair and reasonable nature of the settlement."  *Henderson v. Volvo Cars of N. Am., LLC*, 2013 U.S. Dist. LEXIS 46291, at \*27 and n.9 (D.N.J. Mar. 22, 2013) (observing that a couple objecting to the reimbursement provisions never paid for the repairs).

In short, Ghozland's general objection that the Settlement's treatment of former owners/lessees is unfair should be overruled.

### b. The Settlement Need Not Compensate Class Members For Diminution of Value

Ghozland also objects on the ground that the Settlement did not compensate former owners/lessees for diminution of value, either at delivery or upon resale.  This objection should be overruled on several independent grounds.  First, that the Settlement did not contain Ghozland's preferred terms does not render it unfair or inadequate.  To the contrary, Ghozland ignores the risks of further litigation that led to this compromise, as detailed in the Motion for Final Approval.  *See Hanlon*, 150 F.3d at 1027 ("That the settlement could have been better… does not mean that the settlement presented was not fair, reasonable or adequate.  Settlement is the offspring of compromise").

Second, Ghozland fails to substantiate his diminution of value claims.  While he states that he "sold his vehicle to a used car dealer" in 2013 (*see* Ghozland Decl. ¶ 18), he did not provide any information regarding its resale value and whether the resale value was attributable to the oil consumption problem (that should have been resolved by the

Service Adjustment).  Bare assertions of diminution of value are not accepted by courts.[10]
*See In re Imprelis Herbicide Mktg.*, 296 F.R.D. 351, 368 (E.D. Pa. 2013) (rejecting objection that settlement failed to fairly compensate former owners because objectors showed only speculation, and no evidence, that they had suffered loss in property value).

Third, Plaintiffs' personal experience flatly refutes Ghozland's position.  Plaintiff Ara Dersarkissian, who had leased his SCV and never obtained a Service Adjustment, actually gained $1,596.68 in profit upon selling his vehicle to CarMax since the resale value of his vehicle exceeded the lienholder payoff.  (Supp. Decl. Dersarkissian ¶¶ 6-7.)  Similarly, Plaintiff Ali Asghari, who also leased his SCV and like Ghozland received a Service Adjustment under warranty, netted a gain of approximately $2,500 upon selling his vehicle to an Audi dealer. (Supp. Asghari Decl. ¶¶ 6-7.)  Given these facts, "Class Counsel is not required to pursue dead ends."  *O'Keefe*, 214 F.R.D. at 299 (overruling an objection based on diminution of value).

Fourth, had the parties sought diminution of value on a class-wide basis, they would likely face obstacles certifying the class, even for settlement purposes, as "courts have rejected abstract claims for diminution-in-value damages allegations of actual or attempted sale at a diminished price." *In re Nissan Radiator/Transmission Cooler Litig.*, No. 10-CV-7493-VB, 2013 U.S. Dist. LEXIS 116720, 2013 WL 4080946, at *14 (S.D.N.Y. May 30, 2013).  For instance, in *Briehl v. GM Corp.*, 172 F.3d 623, 628-29 (8th Cir. 1999), the court found that unsubstantiated allegations of diminished value based on alleged car defect "are simply too speculative to allow this case to go forward."  Because plaintiffs would "have a difficult time establishing any claim for diminution of value," "it was not unreasonable for class counsel to focus their efforts on obtaining monetary benefits for class members who had actually suffered out-of-pocket costs in repair charges." *Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 749 (E.D. Tex. 2007).

---

[10] Underscoring the paucity of any evidence supporting diminution of value, Ghozland feebly identifies a Facebook page dedicated to the oil consumption defect as his lone piece of support.  (Objection at 7 n.6.)

1    Fifth, many courts, including in this district, have overruled the exact same
2   objections, rejecting the contention that a settlement is unfair because it does not
3   compensate former owners/lessees for diminution of value. *See Eisen*, 2014 U.S. Dist.
4   LEXIS 14301, at *23 ("These objectors have not taken into account the difficulties of
5   establishing class-wide diminution in value damages . . . ."); *Vaughn*, 627 F. Supp. 2d at
6   749 ("It does not make the settlement unfair or unreasonable to  that the class has to
7   release speculative claims for diminution of value"); *In re Nissan*, 2013 U.S. Dist. LEXIS
8   116720, at *42 (finding class counsel reasonably excluded diminution of value claims
9   because they "present additional challenges because proving them requires individualized
10   inquiry"); *Milligan*, 2012 U.S. Dist. LEXIS 189782, *27 (overruling objection and
11   observing, "diminution in value cases face significant obstacles regarding proof).[11]

12    The two cases that Ghozland claims provided for diminution-of-value, *Aarons* and
13   *Sadowska*, are both distinguishable.  First, both involved CVT transmission system
14   failures that can cost up to $9,000 to repair and rendered the vehicles inoperable and are
15   far more than the repair costs incurred by the class members at issue here.[12]  *See Aarons*,
16   2014 U.S. Dist. LEXIS 118442, at *4 ($7,000 to $9,000 for repairs); RJN, Ex. 9,
17   *Sawdoska v. Volkswagen*, No. 2:11-cv-00665-BRO-AGR, Dkt. 85-2 (Amended
18   Settlement Agreement).  Second, in *Aarons* and *Sadowska*, the class vehicles were much
19   older than the SCVs at issue here.  *Aarons* involved 2001-2006 and 2004-2008 vehicles;
20   *Sadowska* involved 2002-2006 vehicles. Third, here, neither Defendant nor any objector
21   has pointed to evidence of Class Members here who sold their vehicles, as oppose to

---

22   [11] *See also Thiedemann v. Mercedes–Benz USA, LLC*, 872 A.2d 783, 795 (N.J.
23   2005) (granting summary judgment because the "argument . . . that there is a future
      hypothetical diminution in value in the [Mercedes] E–320 due to a fuel gauge that at one
24   time did not read properly a full tank of gasoline, is too speculative to satisfy the . . .
25   requirement of a demonstration of a quantifiable or otherwise measurable loss").

26   [12] In *Aarons*, diminution of value is limited only to those vehicles that were sold for
      under $4,000 due to transmission failures. *Aarons*, 2014 U.S. Dist. LEXIS 118442, at *9.
27   In *Sadowska*, the diminution in value remedy is provided to owners who "sold or traded
      their vehicles at a loss because of the diagnosed need for a CVT transmission
28   replacement." *Sadowska*, at *7.  Neither provided remedies for speculative loss of value.

1  spending thousands of dollars to repair it.[13]  Considering these differences, *Aarons* and

2  *Sadowska* are entirely distinguishable, because in those cases, it is likely that some class

3  members, confronted with paying for very expensive repairs on older vehicles that were

4  rendered un-drivable, chose to sell their vehicles at a loss, as oppose to repairing the

5  defect, particularly when the cost of repair would exceed the sale value of the vehicle.

6       "Although some class settlements have provided compensation for diminished

7  value, courts have ***rejected the notion*** that class action settlements ***must*** provide

8  compensation for diminished value." *Eisen*, 2014 U.S. Dist. LEXIS 14301, at *23

9  (emphasis added).  Ultimately, "the opt-out remedy available here is [] sufficient to protect

10  those class members who are dissatisfied with the terms of settlement." *Id*. at *20.

### c. The Court Should Overrule The Objection That the Settlement Should Have Compensated Class Members for Incidental or Consequential Damages

13       Ghozland also contends that the Settlement should have compensated Class

14  Members for "supplemental oil purchases at their dealerships or other third party repair

15  facilities and/or take other remedial measures related to the defects."  (Objection at 6:26-

16  7:1.)  But the Settlement cannot be found unfair or unreasonable simply because the

17  Parties opted not to compensate Class Members for incidental or consequential damages.

18  *See Milligan*, 2012 U.S. Dist. LEXIS 189782, *27 ("The settlement also does not provide

19  compensatory damages for those class members who suffered incidental losses. . . .

20  Objectors who raised these concerns could have simply opted out of the Settlement.").

21       Moreover, compensating Class Members for extra oil purchases would be highly

22  impractical to administer.  Defendants will insist—reasonably so—that only Class

23  Members who can prove their extra oil purchases were made due to the oil consumption

24  problem may be compensated.  *See* 3 Newberg on Class Actions § 9:19 (5th ed.)

25  ("Proof of claim forms are generally used following a settlement or judgment of liability

26  in the class's favor.").  Not only would the Class Member need to show that oil was

27   

28      [13] The 8-years/80,000-mile extended warranty will cover the youngest vehicles repair costs until the year 2017 and the oldest vehicles repair cost until the year 2019.

purchased during a period in between the oil change schedule set forth in the owner's manual, but also that this oil was used in their cars, and the additional oil was added due to the defect alleged, not other factors (*e.g.*, driving behavior). Class Members will also need to demonstrate that the receipt was for "extra oil"—that is, for oil purchased in excess of the expected oil amount for that vehicle, as oppose to being related to maintenance.

Further, oil usage is highly individualized, with driving habits and load conditions affecting how much oil a vehicle consumes. (*See* Arturi Decl. ¶ 7.) Thus, even in the rare case where a Class Member may able to proffer receipts showing that "extra" oil was *used*—it does not preclude that this oil was purchased as a result of the Class Members' driving habits, weather conditions, load, or as part of the vehicle's regular maintenance schedule, rather than the oil consumption defect. It would be tremendously difficult to determine which claims are valid.[14]  Moreover, the settlement remedies provided here primarily attempt to repair and provide reimbursement for the alleged defect. *See Keegan*, at 31 ("[T]he settlement here is designed to compensate class members for tire wear caused by the alleged defect, not to overcompensate them by paying labor and the entire cost of replacement tires, since it is clear that class members would eventually have to had to pay to have tires replaced regardless of any defect in the vehicle."). Lastly, Defendants would have claimed that its express warranty expressly excluded consequential damages such as providing class members with reimbursement for additional oil. (*See, e.g.*, Lurie Decl. ¶ 17, Ex. 15 [2009 Audi USA Warranty & Maintenance Booklet] at 8.)

It is therefore not surprising that Plaintiffs successfully negotiated compensation for costs expended on actual repairs, which are concrete, provable costs. *See Simon v.*

---

[14] That some Class Members may not be fully compensated for their damages is not grounds for finding a settlement unfair. *See Browne*, 2010 U.S. Dist. LEXIS 145475, at *62 ("While the proposed settlement does not perfectly compensate every member of the class, it is unlikely that any settlement of the claims of a class of more than 740,000 members would achieve such a result."); *Glass v. USB Finan. Svcs.*, No. 06-cv-4068, 2007 WL 221862, *6 (N.D. Cal. Jan. 26, 2007) ("Settlements by their very nature are not intended to provide full compensation for the claimed losses and consequently cannot be calculated with the same precision as actual damages").

1    *Toshiba*, No. C-07-06202-MHP, 2010 WL 1757956, at *1 (N.D. Cal. Apr. 30, 2010)

2    (finding settlement agreement that provided relief to class members, following sufficient

3    proof that they incurred out-of-pocket expenses, was reasonable); *Imprelis*, 296 F.R.D. at

4    368 (finding settlement reasonable where parties used "concrete measures of damage"

5    rather than speculative measures advanced by objectors).

6         Neither the objectors nor the court should "substitute its own judgment for that of

7    the parties who were ones engaging in the negotiations." *In re Netflix Privacy Litig.*, No.

8    11-cv-00379, 2013 WL 1120801, at *12 (N.D. Cal. Mar. 18, 2013).  Therefore,

9    Ghozland's objections should be overruled.

10                    **3.      Ghozland's Adequacy Objections Must Be Overruled**

11        Ghozland's objection to Plaintiffs' adequacy is driven by his mistaken belief that

12   none of the Plaintiffs is a former owner/lessee.  (*See* Obj. at 8:25-9:1 ("[N]ot a single

13   named Plaintiff is a former owner or lessee . . . .").)  In fact, three Plaintiffs are former

14   owners/lessees, which is sufficient to turn away Ghozland's adequacy challenge.

15        Plaintiff Asghari, who sold his vehicle with a net gain, received engine repairs,

16   including a Service Adjustment, during his lease.  (Supp. Asghari Decl. ¶¶ 6-7.)  Plaintiff

17   Dersarkissian, who sold his car with a net gain, did not obtain a Service Adjustment.

18   (Supp. Dersarkissian Decl. ¶¶ 6-7.)  Plaintiff Kim, a former lessee who did not receive a

19   Service Adjustment, returned his vehicle at the end of his lease.  (Supp. Kim Decl. ¶¶ 4-5.)

20        These former owners faithfully represented the Class and evaluated the

21   Settlement's benefits on behalf of all Class Members' support.  This supports their

22   adequacy, as explained in *Eisen*:

23                   The fairness and reasonableness of the settlement is underscored by the
                     fact that each of the named plaintiffs fall within **the used owner category**.
24                   Thus, there is no basis that the representative plaintiffs will benefit at the
                     expense of absent class members who are owners of used vehicles.  The
25                   reality is that the representative plaintiffs **will receive less** than many other
                     class members with valid claims.

26   *See Eisen,* 2014 U.S. Dist. LEXIS 14301, at *18 (emphasis added); *see also Wyatt v.*

27   *Credicare, Inc.*, No. 04-03681-JF, 2005 WL 2780684, at *4 (N.D. Cal. Oct. 25, 2005)

28

1  (finding that, even though plaintiff himself suffered no damages, plaintiff's "interest in

2  establishing that Defendants' conduct violated [the law] is not diminished by the type or

3  amount of damages available for recovery").

4  Indeed, although former owners Asghari, Dersarkissian and Kim experienced oil

5  consumption problems and are not being reimbursed for oil they purchased, they

6  discharged their duty to the Class by considering the benefits to the Class *as a whole* in

7  assenting and agreeing to the proposed Settlement.  (Supp. Asghari Decl. ¶¶ 7, 9; Supp.

8  Dersarkissian Decl. ¶¶ 8-9; Kim Decl. ¶¶ 7-8.)  Like the *Eisen* plaintiffs, the fact that

9  Plaintiffs approved Settlement that provided less benefit to themselves, while benefiting

10  more the Class as a whole, *supports* Plaintiffs' adequacy.  Conversely, Plaintiffs' decision

11  not to pursue certain claims, *e.g.*, incidental or consequential costs, does not render them

12  atypical or inadequate.  *See In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab.*

13  *Litig.*, 716 F.3d 1057, 1064 (8th Cir. 2013) (rejecting objectors' challenge to plaintiffs'

14  failure to pursue claim for replacement costs that was available to them); *Alin v. Honda*,

15  2012 WL 8751045, at *9 (D.N.J. 2012) (if these "objections were taken to their logical

16  conclusion, they would require all class actions to be packed with named plaintiffs

17  accounting for all sorts of possible distinctions between class members, because a

18  subsequent settlement would be thwarted if one of those generally minor distinctions

19  became a part of the settlement terms.")

20  And to put to rest any doubt as to representation, Plaintiffs Daniel Tran and Katrina

21  Noble are *current* owners of SCVs.  As Ms. Noble was one of the individuals who paid

22  out-of-pocket for the Service Adjustment, she also represents the interests of all Class

23  Members seeking reimbursement of these repair costs.  (Fourth Amended Complaint ¶

24  36.)  Although the law does not require it and a single class representative like Ms. Noble

25  or Mr. Asghari is sufficient to represent the entire class,[15] the Plaintiffs, taken together,

---

[15] *See Alin v. Honda Motor Co.*, 2012 WL 8751045 (D.N.J. Apr. 13, 2012) (overruling objection to class representative's adequacy for being covered by a warranty while failing to obtain reimbursement for a sub-class with non-warranty members).

1   cover the permutations of the Class membership, consisting of both former and current

2   owners, those who have had Service Adjustments performed and those who have not, and

3   those who have paid out-of-pocket for Service Adjustments and those who have not.

4         **C.**    **The Remaining Objections Should Be Overruled**

5       None of the remaining objections calls into question the fairness, adequacy and

6   reasonableness of the Settlement, or otherwise discloses any material basis to withhold

7   approval. *See Keegan v. American Honda Motor Co*., No. 10-09508-MMM, at \*\*50-51

8   (C.D. Cal. Jan. 21, 2014) (Dkt. No. 171) (RJN Ex. 13) (district court must evaluate

9   whether objectors raise "serious challenges to the fairness of the settlement.").

10        **1.  Objections That Overlap With Ghozland's Must Be Overruled**

11       Several of the Objectors raise the same objections as Ghozland.  First, several Class

12   Members object because the Settlement failed to compensate for diminution of value of

13   their cars.  Aside from the previously stated problems with diminution of value, none of

14   these objectors substantiate any claim for diminution.  Indeed, *none* state that he or she

15   sold an SCV, or even obtained a price quote.  (*See* Lurie Decl.: Ex. 13 [Garg Objection],

16   Ex. 11 [Salem Objection], Ex. 12 [Knott Objection], Ex. 15 [Ritchey Objection].)  Each

17   raises a merely theoretical concern, and like Ghozland, should have their objections

18   overruled.[16]  And while Plaintiffs sympathize with the plights of Class Members like Mr.

19   Garg, who describe both his experience of the oil consumption problem and his effort to

20   obtain repairs, his problems with oil consumption are now apparently resolved, and his

21   vehicle will nevertheless be covered by the extended warranty.

22       Finally, five objectors challenge the Settlement for not reimbursing Class Members

23   for extra oil purchases.  (*See* Lurie Decl.: Ex. 3 [King Obj.], Ex. 12 [Knott Obj.], Ex. 13

24   [Garg Obj.] Ex. 10 [Oniyiah Objection], Ex. 14 [Jordan Objection[17]].)  As explained

25

26       [16] Ms. Ritchey asserts that Audi will not accept a return for a refund.  That the
Settlement does not make such an extraordinary remedy available does not make it unfair.

27

       [17] Objector Jordan did not supply any information that evinces that he owned or

28   leased a SCV.  His objection should therefore be disregarded.

above, given the difficulties of causation and proof, as well as in administering such reimbursements, Plaintiffs reasonably believed that compensating for concrete, verifiable damages—*i.e.*, out-of-pocket costs for the Service Adjustment—is fair and reasonable.[18]

Again, the Settlement need not obtain 100% of the damages sought by Plaintiffs to be fair and reasonable. *See Hanlon*, 150 F.3d at 1026 (possibility of a "better" settlement does not mean that settlement is not fair, adequate or reasonable). The Settlement directly addresses a problem, acknowledged by these Objectors, by ensuring that all SCVs can receive a Service Adjustment, free of charge and without a diagnostic test. Class Members will have the warranty coverage extended to cover any subsequent problems. And all Class Members will be fully reimbursed for concrete, verifiable damages—out-of-pocket costs of the Service Adjustment. This Settlement provides excellent relief and is not unfair because Class Members are not compensated for highly speculative damages.

### 2. Objection to the Terms of the Limited Warranty Extension Should Be Overruled

Four Class Members object to the Settlement's warranty terms. (*See* Supp. Lurie Decl.; Ex. 3 [Anthony Cirillo Objection]; Ex. 9 [Lars H. Boettger Objection]; Ex. 16 [William B. Hammett Objection]; Ex. 8 [Deborah Bliss Objection].) Cirillo obtained a Service Adjustment in 2013, and his vehicle appears to be outside of the extended warranty coverage. (*See* Cirillo Obj.) If a Service Adjustment does not fix the problem with this vehicle—and to the extent that potential engine damage may arise—Cirillo had the option of opting out to pursue his unique claims.

Both Boettger and Hammett raise similar objections to the 80,000-mile/8-year limitation, each believing that he will not be covered by the extended warranty. These objectors are mistaken. Boettger's SCV would fall under the warranty provision covering "one year or 12,000 miles (whichever occurs first) from the date of the Service

---

[18] Objector Salem also wants to be compensated for his time spent taking his SCV to obtain repairs, asserting that "[m]y time is worth money and the extra money I had to expend must be reimbursed." (Ex. 11 [Salem Obj.].) Class Counsel is aware of no settlement that compensates class members for such amorphous incidental costs, so this objection should be overruled as well.

Adjustment" (Settlement Agreement § II.C), as his vehicle appears eligible to receive a Service Adjustment. Based on Hammett's letter, his SCV appears to be eligible for a Service Adjustment under this Settlement, and he would likewise be covered by the same warranty provision that would cover Boettger. That provision was negotiated by Plaintiffs to extend warranty coverage to older vehicles that have yet to receive a Service Adjustment. That is, so long as the SCV is eligible to receive a Service Adjustment and receives one pursuant to the Settlement, the vehicle is covered by the warranty for an additional 12,000 miles/one year, no matter the vehicle's mileage.

The broader objection that the 80,000-mile/8-year warranty extension is insufficient should be overruled, as "negotiating a cut-off at some point was necessary." *In re Nissan*, 2013 U.S. Dist. LEXIS 116720, *9; *see Henderson v. Volvo Cars of North America*, LLC, No. 09-4146, 2013 U.S. Dist. LEXIS 46291 (D.N.J. Mar. 22, 2013) (approving settlement providing an 8-year/100,000-mile period for reimbursement and extended warranty for defective transmissions, and rejecting objectors' arguments "that the 100,000 miles cut-off is arbitrary, that they had to replace their transmissions after 100,000 miles, and that generally, transmissions often experience issues after 100,000 miles"); *Sugarman v. Ducati N. America, Inc.*, 2012 U.S. Dist. LEXIS 3961, *12 (N.D. Cal. Jan 12, 2012) (finding settlement fair, reasonable and adequate over the objections of class members who wanted a longer extended warranty period); *Alin v. Honda Motor Co.*, No. 08-4825, 2012 U.S. Dist. LEXIS 188223, *44 (D.N.J. Apr. 13, 2012) ("Honda cannot act as a perpetual insurer for all compressor breakdowns, and [the parties] ultimately settled on a sliding scale that ends at eight years and 96,000 miles. It was reasonable to exclude older, more traveled vehicles from coverage, and these objectors are free to opt out of the settlement and pursue new litigation if they so desire").

Finally, Ms. Bliss wants the Settlement modified to include additional language elaborating on what constitutes excessive oil consumption, including what kind of engine repairs would rectify the problem before she takes her vehicle to the dealer under the extended warranty program. (Ex. 8 [Bliss Obj.].) However, the Settlement terms require

1   Ms. Bliss to take her vehicle to the dealer under the extended warranty program to allow

2   the dealer, who has the technical expertise to conduct further testing, to determine if any

3   additional repair is needed for her vehicle.  *See Sadowska v. VWGoA*, 2013 WL 9600948,

4   fn. 7 (C.D. Cal. 2013) (overruling objection that "requiring that a member of the class

5   prove the failure before the repair is made" under the extended warranty made the

6   settlement unfair and unreasonable and finding that "Audi dealerships are capable of

7   diagnosis and repair" under the terms of the extended warranty.); *In re Toyota Motor*

8   *Corp. Unintended Acceleration Marketing, Sales Practices and Product Liability*

9   *Litigation*, 790 F. Supp. 2d 1152, 1174 (C.D. Cal. 2011) ("[A]lleged futility" does "not

10  excuse compliance with the contractual obligation to present the vehicle for repair under

11  an express written warranty.").  Accordingly, requiring that Ms. Bliss take her vehicle to

12  the dealer under the extended warranty program to allow the technicians to determine

13  what types of repairs, if any, are needed to correct oil consumption, is fair and reasonable.

### 3.    Objections to Documentary Requirements for Obtaining Settlement Benefits Should Be Overruled

15      Two objectors object to the term requiring Class Members to show compliance

16  with the oil maintenance schedule set forth in the Warranty Maintenance Booklet and

17  Owner's Manual before obtaining a Service Adjustment.  (Ex. 11 [Salem Obj.], Ex. 9

18  [Boettger Obj.].)  First, neither Salem nor Boettger was actually rejected based on

19  insufficient records.  Rather, both objections appear to be entirely theoretical.  (*See* Ex. 11

20  [Salem Obj.] ("It may be that I only went to Audi's scheduled maintenance each year for

21  the first two years.  I hadn't gone to Audi for a third, is that tough luck?"); Ex. 9 [Boettger

22  Obj.] ("For my car the documentation for fulfilling these requirements most likely can't be

23  given and I would be excluded.")

24      Second, both objections reflect a misunderstanding of the Settlement terms.  The

25  Settlement simply requires that Class Member present "documentary proof (in the form of

26  service or maintenance records and/or invoices) of compliance with the oil and oil filter

27

28

1    maintenance requirements and schedule[19] set forth in the Warranty and Maintenance

2    Booklet and Owner's Manual."  (Settlement Agreement §II.B.)  A Class Member would

3    not be restricted to only records of services performed by an Audi dealer or be expected to

4    possess records of compliance from a previous owner.

5        Third, "[c]ourts frequently approve settlements that require class members to

6    submit receipts or other documentation; they find that such a requirement is reasonable

7    and fair, given the defendant's need to avoid fraudulent claims."  *Keegan*, No. 10-09508,

8    at *32 (RJN Ex. 13); *see also Browne*, 2010 U.S. Dist. LEXIS 145475, at *11 (approving

9    a settlement that required class members to submit a receipt or other documentation of

10   out-of-pocket costs to the claims administrator).  Here, the evidence of compliance with

11   the oil and oil filter requirements is intended to eliminate the possibility that an oil

12   consumption problem is caused by owner/lessee neglect.  That is a reasonable request, and

13   the liberal language (which does not specify the amount of proof needed) is not unduly

14   burdensome.  As in *Keegan*, these objections "do not raise serious concerns regarding the

15   fairness of the settlement."  *Keegan*, at *32.

### 4.    The Objections to The Request for Attorneys' Fees Should Be Overruled

16

17       Class Members have had ample time to scrutinize Plaintiffs' Motion for

18   Attorneys' Fees, filed on February 27, 2015, three weeks before the objection deadline.

19   Yet only four Class Members objected, each without any specific ground.  (*See* Lurie

20   Decl.; Ex. 14 [Jordan Obj.], Ex. 6 [Koehn Objection], Ex. 7 [John E. Voris and Karen

21   Voris Objection], Ex. 4 [Whynot Objection].)  None of the objections takes issue with

22   Plaintiffs' methodology or the submitted lodestar; rather, each of these objections broadly

23   asserts that the requested fees are "excessive" without any further elaboration.  Whynot

24   and the Vorises are simply grinding ideological axes.  Whynot professes not to have any

25   issue with his SCV, and is calling on "Defense Counsel to step up and resist the excessive

26   awards to Class Counsel."  (Ex. 4 [Whynot Obj.].)  The Vorises, who declare that they are

27

28   [19] With a permissible variance of 10% of each required oil and oil filter maintenance mileage interval.  (Settlement Agreement § II.B, n.1.)

1   "very happy" with the SCV, decry "a country by and for lawyers," and demand that 10%

2   of the fees be given to a food bank.  (Ex. 7 [Voris Obj.].)

3       Both the Vorises and Whynot are joined by Charles T. Koehn in taking issue with

4   the disparity between the class representative awards and the fee awards.  But, as the

5   Court knows, class representative awards are typically "modest," and are awarded "both

6   as an inducement to participate in the suit and as compensation for time spent in litigation

7   activities."  *In re Toys 'R' Us FACTA Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. Jan. 17,

8   2014).  And to cap attorneys' fees at some ratio of the class representative award would

9   contravene well-settled law.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d

10  935, 941-942 (9th Cir. 2011) (authorizing only two methods for calculating fees, the

11  percentage-of-the-recovery or the lodestar method).

12      In fact, on the same day that Plaintiffs filed the Motion for Attorneys' Fees, the

13  Ninth Circuit issued an important opinion that reaffirmed several principles relevant to the

14  fee request.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 994, 2015 U.S. App.

15  LEXIS 3093 (9th Cir. Feb. 27, 2015).  The *Online DVD-Rental* court affirmed an attorney

16  fee award based on the percentage approach, even though benefits were not in the form of

17  cash, but rather gift cards.  *Id.* at **37-40 & n.11.  Furthermore, the Ninth Circuit panel

18  reaffirmed that the fee award may be calculated "as a percentage of the total settlement

19  fund…"[20]  *Id.* at *41.  That is, "the reasonableness of attorneys' fees is not measured by

20  the choice of the denominator."  *Id.* (citation omitted)).  Thus, the fee request can be

21  properly measured by what the Settlement makes available to the Class, rather than be

22  limited to the net recovery.  This measure is particularly apt here given that what is made

23  available to the Class is ascertainable (*see* Johns  Decl. ¶ 18 in support of Motion for

---

24  [20] For example, the settlement benefits here, without even taking into account the

25  costs of Notice administration and the benefits provided under the extended warranty,
    are greater than $26 million.  (*See* Declaration of Colin Johns in support of Motion for

26  Attorneys' Fees ["Johns Decl."] ¶ 3 (valuing benefit to Class at $23,071,151) and

27  Settlement Agreement § VIII.C (attorney fees and costs in the amount of $2.4
    million).)  Accordingly, Plaintiff's fee and cost request of $2.4 million is well below the

28  25% benchmark established in the Ninth Circuit.

Attorneys' Fees).[21]  Thus, these Objectors' baseless objections should be overruled.[22]

### 5.      The Remaining Objections Should Be Overruled

Objector Knott raises a number of different objections, but he appears to not have suffered any problem associated with the oil consumption issue.  (Ex. 12 [Knott Obj.], at 1 ("Fortunately, my vehicle has been well below [the reasonable oil consumption amount] . . .").)  Aside from not having suffered any harm, his vague objections that the "oil consumption" is not well defined and that "phrase 'adjustment' sounds fishy" are simply semantic nitpicking, while his complaint about a lack of an oil dipstick is an automobile design issue that cannot be addressed by a settlement.  Finally, his objection to providing information regarding prior objections is also without merit, as it is reasonable to separate professional objectors from other class members.  *See O'Keefe*, 214 F.R.D. at 295 n. 26 ("Federal courts are increasing weary of professional objectors.").

Onyiah's objection that the variance be adjusted to 20% should be overruled, as the bargained-for variance rate of 10% is lenient and accommodates Class Members who did not strictly follow the maintenance schedule while excluding those whose oil consumption problem may have been self-inflicted.  In sum, "the proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators."  *Officers for Justice*, 688 F.2d at 625.  Thus, these objections, which essentially seek the inclusion of the objectors' own preferred terms, should be overruled.

///

///

///

///

---

[21] While Class Members will have until July 28, 2016 to *schedule* a Service Adjustment, there is no time restriction on when it should be performed.

[22] Class Counsel have expended considerable time since filing the Motion for Attorneys' Fees in responding to Class Member inquiries and reviewing and responding to objections, as well as preparing the Opposition to Ghozland's Motion to Intervene.

## III.   CONCLUSION

Accordingly, the settlement is fair and reasonable and Plaintiffs urge this Court to overrule the submitted objections and finally approve the proposed Settlement.

Dated:  April 13, 2015                          By: /s/ Jordan L. Lurie

Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
**Capstone Law APC**
1840 Century Park East, Suite 450
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396

Payam Shahian (SBN 228406)
PShahian@slpattorney.com
Karen E. Nakon (SBN 278423)
KNakon@slpattorney.com
**Strategic Legal Practices APC**
1875 Century Park East, Suite 700
Los Angeles, California 90067
Telephone: (310) 277-1040
Facsimile: (310) 943-3838

Dara Tabesh (SBN 230434)
dara.tabesh@ecotechlaw.com
**EcoTech Law Group, P.C**.
333 First Street, Suite C
San Francisco, CA 94105
Telephone: (415) 503-9164
Facsimile: (415) 651-8639

Larry W. Lee (SBN 228175)
lwlee@diversitylaw.com
**Diversity Law Group, APC**
550 S. Hope Street, Suite 2655
Los Angeles, CA 90071
Telephone: (213) 488-6555
Facsimile: (213) 488-6554

Edward W. Choi (SBN 211334)
edward.choi@calaw.biz
**Law Offices of Choi & Associates**
3435 Wilshire Boulevard, Suite 2410
Los Angeles, CA 90010
Telephone: (213) 381-1515
Facsimile: (213) 233-4409

Hovanes Margarian (SBN 246359)
hovanes@margarianlaw.com
**Law Offices of Hovanes Margarian**
13425 Ventura Boulevard, Suite 303

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Sherman Oaks, CA 91423
Telephone: (818) 553-1000
Facsimile: (818) 553-1005

*Attorneys for Plaintiffs*